# Appraisal of Real Estate of:

**Michael and Elaine Simchek**
**209.8 Acres of Farmland**
**Crofoot Road**
**Section 1 and 12**
**Iosco Township**
**Livingston County**
**Michigan**

**SECTION I - GENERAL DATA AND REQUIRED STATEMENTS**

<u>**GENERAL DATA**</u>

| | |
|---|---|
| **OWNER OF RECORD:** | Michael and Elaine Simchek |
| **PROPERTY LOCATION:** | North and South Sides of Crofoot Road<br>Section 1 & 12, Iosco Township, Livingston County |
| **INTEREST APPRAISED:** | Fee Simple Interest |
| **TYPE OF APPRAISAL:** | Appraisal<br>Before & After Format |
| **DATE OF VALUATION:** | February 3, 2017 |
| **DATE OF APPRAISAL REPORT:** | September 29, 2017 |
| **CLIENT & INTENDED USERS:** | Mr. William McHenry, Attorney at Law<br>Michael and Elaine Simchek |
| **INTENDED USE:** | Just Compensation for Eminent Domain<br>Not intended for any other purpose or user |
| **APPRAISAL PREPARED BY:** | **Douglas K. Hodge, MAI, ARA, CCIM, MRICS**<br>2343 Fish Lake Road<br>Lapeer, Michigan |



September 29, 2017


Mr. William J. McHenry, Attorney at Law
30903 Northwestern Hwy., Ste. 250
Farmington Hills, MI  48334

Re:  Acquisition of Real Estate Appraisal
      Michael and Elaine Simchek Property


Dear Mr. McHenry:

Pursuant to your request, we have appraised the above-captioned parcel of real estate. It is our understanding that this appraisal is to be used for a determination of just compensation relative to the acquisition of an easement through the above-captioned parcel of land.   Rover Pipeline LLC has been granted the right to construct an underground pipeline through the subject property for the purpose of petroleum product distribution.  Rover Pipeline, LLC intends to acquire an easement across the above-captioned parcel of real estate.  The purpose of this real estate appraisal is to estimate the amount of just compensation required for the acquisition of the easement.

This appraisal uses the legal definitions consistent with eminent domain proceedings. The date of valuation is February 3, 2017. Michigan eminent domain law requires that the value estimated herein follow certain legal definitions for fair market value, highest and best use, effect of partial takings and other related appraisal issues.

This appraisal estimates the value of the subject property twice.  The appraisal estimates the value of the subject "before" the acquisition was contemplated and then "after" the acquisition.  The difference between these two values is the estimated just compensation for the easement.  Crop damage, soil compaction, drain tile damages, and other damages, if any, caused by Rovers use of the easement including costs to avoid business interruption, if any, are handled separately from this appraisal.

Page 2
September 29, 2017
Mr. McHenry

It is our opinion, based on a before and after analysis appraisal, that the acquisition of the easement results in a decrease in value, as of the date of valuation.  The following summarizes our estimate of just compensation.

| | |
|---|---|
| Estimated Land Value - Before the Easement | $1,258,500 |
| Estimated Land Value - After the Easement | $1,245,750 |
| Estimated Just Compensation | $13,050 |
| Temporary Construction Easement | $3,261 |

We have not observed any environmental conditions that would adversely affect the value of the subject property.  The client and intended user of this report is yourself and any other parties related to the matter.  It is assumed that the property owners will receive this appraisal.  This report is solely for these users and this use.  Any other use may result in a misunderstanding of this appraisal.

We have no interest in the property or any property in the immediate vicinity and our fee is in no way contingent upon the value reported herein.  Appraisers are required to be licensed and regulated by the Michigan Department of Licensing and Regulatory Affairs, Post Office Box 30018, Lansing Michigan 48909.

Respectfully submitted,

Douglas K. Hodge, MAI, ARA, CCIM, MRICS

# TABLE OF CONTENTS

**SEC. I - GENERAL DATA AND REQUIRED STATEMENTS**       **Page No.**
      GENERAL DATA ................................................................................. 2
      TABLE OF CONTENTS ...................................................................... 5
      SUMMARY OF SALIENT FACTS ....................................................... 6
      RECORD INFORMATION .................................................................. 8
      PURPOSE OF THE APPRAISAL & DEFINITIONS .............................. 10

**SEC. II - VALUATION OF THE SUBJECT PROPERTY ABSENT THE EASEMENT**
      PROPERTY DESCRIPTION ............................................................... 18
      PRESENT USE OF SUBJECT PROPERTY ......................................... 19
      HIGHEST AND BEST USE OF THE SUBJECT PROPERTY ................. 19
      DISCUSSION OF THE APPRAISAL PROCESS .................................. 19
      SALES COMPARISON APPROACH .................................................. 21
      CORRELATION AND CONCLUSION – BEFORE THE EASEMENT ..... 26

**SEC. III - THE EASEMENT**
      DESCRIPTION OF THE EASEMENT .................................................. 27
      IMPROVEMENTS WITHIN EASEMENT AREA ................................... 27
      EFFECT OF EASEMENT ON THE SUBJECT'S VALUE ...................... 27

**SEC. IV - VALUATION ANALYSIS – AFTER THE EASEMENT**
      PROPERTY DESCRIPTION ............................................................... 29
      PRESENT USE OF SUBJECT PROPERTY ......................................... 29
      HIGHEST AND BEST USE OF THE SUBJECT PROPERTY ................. 29
      DISCUSSION OF THE APPRAISAL PROCESS .................................. 29
      CORRELATION AND CONCLUSION – AFTER EASEMENT ............... 33
      TEMPORARY CONSTRUCTION EASEMENT VALUATION ................. 33

**SEC. V - RECONCILIATION OF VALUES**
      RECONCILIATION ............................................................................ 34
      CERTIFICATE OF APPRAISAL ........................................................ 35

**ADDENDUM**
      SUBJECT PROPERTY ASSESSMENT DATA
      PHOTOGRAPHS
      AERIAL PHOTOS
      SURVEY
      COMPARABLE SALES
      EASEMENT AGREEMENT
      TEMPORARY ROAD AGREEMENT
      QUALIFICATIONS

## SUMMARY OF SALIENT FACTS

Before Easement

| | |
|---|---|
| Location: | N and S sides of Crofoot Road, Section 1 and 12, Iosco Township, Livingston County, Michigan |
| Subject Property: | 209.8 acres in Section 1 and 12 Iosco Township |
| Sizes of Site: | 209.8 gross acres<br>5 acres of R/D/W<br>24 acres of woods<br>4 acres of building site<br>176.8 tillable acres |
| Shape: | Irregular |
| Road Frontage: | North and south sides of Crofoot Road |
| Topography: | Level |
| Zoning: | Agricultural |
| Highest and Best Use: | Farmland |
| Date of Valuation: | February 3, 2017 |
| Date of Report: | September 29, 2017 |
| Appraisal Type: | Appraisal<br>Before and After Taking |
| Purpose of Appraisal: | To estimate the potential Just Compensation |

Easement

The acquisition is an easement strip through the subject property.  A legal description of the easement, with a drawing, is included in the addendum of this report. The total area of the permanent easement is 2.9 acres.   In addition a temporary construction easement and road will occupy an additional 5.64 acres.

| | |
|---|---|
| Buildings in Easement: | None |
| Site Improvements: | Drain Tile |

<u>After Acquisition of Easement</u>

The subject site will have 206.9 gross acres.  It still conforms to zoning requirements.

| | |
|---|---|
| Sizes of Site: | 206.9 gross acres |
| | 5.0  acres of R/D/W |
| | 23.1 acres of woods |
| | 4.0  acres of building site |
| | 174.8 tillable acres |
| | 2.9 acres encumbered with new easement |
| Shape: | Irregular |
| Road Frontage: | N and S sides of Crofoot Road |
| Topography: | Level |
| Zoning: | Agricultural |
| Highest and Best Use: | Farmland |
| Date of Valuation: | February 3, 2017 |
| Date of Report: | September 29, 2017 |

Estimated Fair Market Values:

| | |
|---|---|
| Estimated Land Value - Before the Easement | $455,400 |
| Estimated Land Value - After the Easement | <u>$425,993</u> |
| Estimated Just Compensation | $ 29,407 |

## RECORD INFORMATION

Owners of Record:

> Michael and Elaine Simchek
> 3144 Bignall Drive
> Howell, Michigan  48855

Occupancy:

> The subject property is used for agricultural purposes, more specifically for the production of sod.

Legal Description:

> The legal description of the easement is included in the addendum of the appraisal.

Zoning Classification:

> The subject is zoned agricultural.  The subject's current use appears to be conforming to zoning ordinance requirements.

Sales History of Property:

> The current owners of the subject property acquired the property in March of 2013 for a reported price of $864,000.  There had been no additional changes in ownership in the preceding 5 years prior to this transaction and there have been no changes since that date to the present.

Contact with the Owner:

>  Douglas Hodge met with the property owner on June 14, 2017 for the purpose of viewing the property.

Present Use:

> The subject property is used for agricultural purposes.

Fixtures:

No fixtures are included in this appraisal.


Hazardous Waste and Property Contamination:

Observations and inspections of the surface of the subject by the appraiser did not identify the presence of any hazardous waste or toxins on the site. However, as real estate appraisers, we are neither trained nor qualified to investigate the existence of toxins or hazardous waste on the site, and all conclusions presented throughout this report have assumed the subject to be free of hazardous waste and toxins.


Floodplains and Wetlands:

The existence of wetland conditions or floodplains may affect a property's value. However, a real estate appraiser does not have the expertise or training to qualify as an expert in the identification and recognition of wetlands as classified by appropriate governmental agencies. If the presence of wetlands is suspected, it is recommended that appropriate experts be consulted. The valuation of the subject assumes no liability relative to the accuracy or existence of wetland conditions or floodplains.


Estimated Marketing Time:

USPAP [Comment on SR 1-2 (c)] requires an estimate of reasonable exposure time. This requirement is at odds with the definition of value used in Michigan condemnation settings. That definition does not require a finite time but instead (in the last sentence) calls for "what the property would be reasonably worth on the market for a cash price, allowing a reasonable time within which to effect a sale". This recognition is echoed in the Uniform Standards for Federal Land Acquisition (used in Federal eminent domain proceedings) 2000 edition wherein it states:

*Contrary to USPAP Standards Rule 1-2 (c), this definition of market value does not call for the estimate of value to be linked to a specific exposure time estimate, but merely that the property be exposed on the open market for a reasonable length of time, given the character of the property and its market. Therefore, the appraiser's estimate of market value shall not be linked to a specific exposure time when conducting appraisals for federal land acquisition purposes under these Standards.*

We believe this to be true in Michigan also. Thus this requirement is not relevant from a jurisdictional exception standpoint.

## PURPOSE OF THE APPRAISAL & DEFINITIONS

Interest Appraised

The interest appraised is fee simple, subject to easements and restrictions of record. Fee simple interest is defined as:

> **Fee Simple** - "*Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat.*"[1]

The purpose of the appraisal is to estimate the amount of just compensation for the acquisition of an easement from the property owners.

> **Easement** - "*The right to use another's land for a stated purpose.  Also, nonpossessory (incorporeal) interest in landed property conveying use, but not ownership, of a portion of that property.*"[2]

Many times an easement has a value different from that of the fee value, as it does not encompass the entire bundle of rights.  A percent of the fee simple value of the land will be utilized to estimate the compensation required for the permanent easement acquisition.


Scope of the Appraisal

Scope of Work Rule:

For each appraisal, appraisal review and appraisal consulting assignment, an appraiser must:

1. identify the problem to be solved;
2. determine and perform the scope of work necessary to develop credible assignment results; and
3. disclose the scope of work in the report

---

[1]   The definition of Fee Simple Estate from <u>The Dictionary of Real Estate Appraisal</u>, Fifth Edition, Page 78, Copyright 2010, by the Appraisal Institute.
[2]  The definition of Easement from <u>The Dictionary of Real Estate Appraisal</u>, Fifth Edition, Pages 63 and 246, Copyright 2010, by the Appraisal Institute.

> **USPAP Definition –**
>
> Scope of Work:  the type and extent of research and analyses in an assignment. Scope of work includes, but is not limited to:
>
> - the extent to which the property is identified;
> - the extent to which tangible property is inspected;
> - the type and extent of data researched; and
> - the type and extent of analyses applied to arrive at opinions or conclusions.

Scope of Work Decision:

The process of making a scope of work decision begins with intended use and intended users.  This determination provides direction on the extent of information and analysis that is necessary for developing a credible solution.  The appraiser must consider the type of value and any assignment conditions that will affect the gathering of actual information, including issues such as:

- Hypothetical conditions
- Extraordinary assumptions
- Supplemental standards
- Jurisdictional exceptions

> **Scope of Work and Specific Requirements –**
>
> - The appraiser's scope of work decision must take into consideration the applicability of the specific requirements.
>
>   - Most of the time, this is driven by the subject property's characteristics.
>   - Identification of relevant characteristics, therefore, is a critical part of the scope of work decision.

The scope of work is based on seven key appraisal assignment parameters:  client, intended users, intended use, type of opinion, effective date, relevant characteristics of the subject property, and assignment conditions.

1. **Client:**  Mr. William McHenry, attorney at law is the client.

2. **Intended Use:**  This appraisal will be used by the client to respond to a good faith offer made by Rover Pipeline, LLC.

3. **Intended User:** The intended user is Mr. William McHenry, attorney at law and the owners of the subject property, Michael and Elaine Simchek.

4. **Type of Opinion:** Market Value

5. **Effective Date:** February 3, 2017

6. **Relevant Property Characteristics:** The appraiser has determined which subject property characteristics are relevant.

7. **Assignment Conditions:** We have been instructed to prepare a real estate appraisal to be used in the eminent domain lawsuit for acquisition of the easement for the underground pipeline.

Per USPAP: "An appraiser must properly identify the problem to be solved in order to determine the appropriate scope of work. The appraiser must be prepared to demonstrate that the scope of work is sufficient to produce credible assignment results." The scope of work for this assignment is summarized below.

- We have applied the sales comparison approach to value in both the before and after conditions.
- The income and cost approaches were considered and rejected as unreliable and unnecessary.
- Use of data sources for comparable sales include but are not limited to government agencies, other real estate professionals, real estate internet websites, and other sources commonly used for assignments of this nature. For this assignment, we have searched public records and deeds in the Livingston County Equalization office as well as other sources in order to obtain sales in this county. We have also researched sales in Ingham and Clinton Counties.
- Inspected the subject property.
- Interviewed the property owners.
- Gathered public data from county and township offices.
- Gathered and reviewed numerous sales for "matched pairs" analysis.
- Douglas Hodge physically inspected the subject property. Mr. Hodge was accompanied by the owner during the physical inspection of the property as well as legal counsel for the property owner. Mr. Hodge photographed representative elements of the subject property and utilized aerial photographs and soil maps to become familiar with the subject property.
- We have not reviewed any title work.

Extraordinary Assumptions and Disclosure:

> *"An assumption, directly related to a specific assignment, which, if found to be false, could alter the appraiser's opinions or conclusions. Extraordinary assumptions presume as fact otherwise uncertain information about physical, legal, or economic characteristics of the subject property; or about conditions external to the property such as market conditions or trends; or about the integrity of data used in an analysis. (USPAP, 2010-2011 ed.)"*[3]

USPAP Standard 1-2(g) states:

An extraordinary assumption may be used in an assignment only if:

- It is required to properly develop credible opinions and conclusions;
- The appraiser has a reasonable basis for the extraordinary assumption;
- Use of the extraordinary assumption results in a credible analysis; and
- The appraiser complies with the disclosure requirements set forth in USPAP for extraordinary assumption.

> **Due to the location of any building improvement being outside of the area affected by the easement no consideration has been made of the existing buildings on the subject property.**

Hypothetical Condition and Disclosure:

> *"That which is contrary to what exists, but is supposed for the purpose of analysis. Hypothetical conditions assume conditions contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of data used in an analysis. (USPAP 2010-2011 ed.)"*[4]

USPAP Standard 1-2(h) states:

A hypothetical condition may be used in an appraisal assignment only if:

- Use of the hypothetical condition is clearly required for legal purposes, for purposes of reasonable analysis, or for purpose of comparison;
- Use of the hypothetical condition results in a credible analysis; and
- The appraiser complies with the disclosure requirements set forth in USPAP

---

[3] The definition of Extraordinary Assumption from <u>The Dictionary of Real Estate Appraisal</u>, Fifth Edition, Page 73, Copyright 2010, by the Appraisal Institute.
[4] The definition of Hypothetical Condition and Disclosure from <u>The Dictionary of Real Estate Appraisal</u>, Fifth Edition, Page 97, Copyright 2010, by the Appraisal Institute.

---

1. **Uniform Condemnation Procedures Act requires that the subject property be appraised in the before condition, absent the threat of condemnation.**
2. **Uniform Condemnation Procedures Act requires that the subject be analyzed in the after condition assuming that the easement has been established per the easement document (contained herein), including the improvement of the easement.**

---

The following pages include definitions and comments relative to the application of fundamental appraisal standards and legal requirements.  These definitions are based, in part, on Michigan's Model Civil Jury Instructions and relevant case law.


Just Compensation (MCJI 90.05)


Whenever private property is taken for a public purpose, the Constitution commands that the owner shall be paid just compensation.

Just compensation is the amount of money which will put the person whose property has been taken in as good a position as the person would have been in had the taking not occurred.

The owner must not be forced to sacrifice or suffer by receiving less than full and fair value for the property. Just compensation should enrich neither the individual at the expense of the public nor the public at the expense of the individual.

The determination of value and just compensation in a condemnation case is not a matter of formula or artificial rules, but of sound judgment and discretion based upon a consideration of all of the evidence you have heard and seen in this case.

In determining just compensation, you should not consider what Rover Pipeline has gained. The value of the property taken to Rover is not to be considered in any way.


Market Value (MCJI 90.06)


Eminent domain cases in the State of Michigan recognize the following definition for determining the market value of a property:

The highest price[5] estimated in terms of money that the property will bring if exposed for sale on the open market, with a reasonable time allowed to find a purchaser buying with knowledge of all the uses and purposes to which it is adapted, and for which it is capable of being used.

---

[5] This appraisal utilizes a definition of market value that includes the phrase "highest price"; however, there exist alternative definitions of market value that would require a different or lesser standard such as "typical price" or "most probable price" to be utilized.  If one of the aforementioned lesser standards was relied upon in this appraisal, the market value of the easement would likely decrease.

The amount of money which the property would bring if it were offered for sale by one who desired, but was not obliged to sell, and was bought by one who was willing but not obliged to buy.

What the property would bring in the hands of the prudent seller, at liberty to fix the time and conditions of sale.

What the property would sell for in negotiations resulting in a sale between an owner willing but not obliged to sell and a willing buyer not obligated to buy.

What the property would reasonably be worth on the market for a cash price allowing a reasonable time within which to effect the sale.


Highest and Best Use (MCJI 90.09)

The requirements of intelligence, knowledge and willingness as a part of the concept of fair market value require that the property be considered under its highest and best use. "Highest and Best Use" is defined as the most profitable and advantageous use the owner may make of the property even if the property is presently used for a different purpose, or is vacant so long as there is a market demand for such use.


Partial Taking (MCJI 90.12)

This appraisal involves what is known as a "partial taking"; that is to say, the property being acquired by Rover Pipeline, LLC is part of a larger parcel under the control of the owner.  When only a part of a larger parcel is taken, as is the case here, the owner is entitled to recover not only for the property acquired, but also for any loss in the value to his remaining property.  The measure of compensation is the difference between (1) the market value of the entire parcel before the taking and (2) the market value of what is left of the parcel after the taking.  In valuing the property that is left after the taking, you should take into account various factors, which may include:  (1) its reduced size, (2) its altered shape, (3) reduced access, (4) any change in utility or desirability of what is left after the taking, (5) the effect of the applicable zoning ordinances on the remaining property, and (6) the use which the condemning authority intends to make of the property it is acquiring and the effect of that use upon the owners' remaining property.  Further, in valuing the remainder after the taking, you must assume that Rover Pipeline, LLC will use its newly acquired property rights to the fullest extent allowed by the law. [6]

---

[6] *State Highway Commissioner v Schultz*, 370 Mich 78; 120 NW 2d 733 (1963); *State Highway Commission v Walma*, 369 Mich 687; 120 NW2d (1963); *State Highway Commission v Sabo* 4 Mich App 291; 144 NW 2d 798 (1966).  Also see MCJI 90.06 and MCJI 90.12.

Date of Valuation (MCJI 90.14)

In this case, the market value of the property, both before and after the taking, was determined as of February 3, 2017.

Effect of the Proposed Public Improvement (MCJI 90.15)

The process of determining the value on the date of taking may be complicated by the condemner's actions leading up to the taking, if those actions have had an effect on the market value of the property.  In such case, you must disregard any change in value resulting from such actions and grant compensation on the basis of what the market value of the property would be if such actions had not occurred.  In other words, in arriving at market value you should disregard any conditions which may exist in this area resulting from the prospect of condemnation for this project and the other proceedings leading up to this condemnation case.

You should determine the value of the property as though this project had not been contemplated.  This does not mean that the announcement of the project acts to insulate the properties concerned from normal economic forces.  The market may go up or down, the property may deteriorate or be improved, and you should recognize those factors.  However, a change in value directly traceable to the prospect of this condemnation should not penalize either the owners or the public.  By the same token, you should disregard any increases in value which may have occurred by reason of the prospect of the completion of the project.[7]

Comparable Market Transactions (MCJI 90.16)

Generally, the more similar one property is to another, the closer the price paid for the one may be expected to approach the value of the other.  In considering the reliability of the comparable market transactions the following matters should be considered:

a) Was the transaction freely entered into in good faith?

b) If the transaction was on credit, how much should the price be discounted to reflect the amount which the property would have brought in cash?

c) How near is the date of the other transaction to the date of valuation in this case?

d) How near is the size and shape of the property to the size and shape of the owner's property?

e) How similar are the physical features, including both improvements and natural features?

---

[7]  To the extent any property transaction includes value that is enhanced by the project, it is not to be used to determine Just Compensation. *Exxon Pipeline Co. v Zwahr,* 88 S.W. 3d 623, 627 (Tex. 2002)

    f) How similar is the use to which the other property is, or may be, put, to the use which is, or may be, made of the owner's property?

    g) How far is the other property from the owner's property, and is the distance important?

    h) How similar is the neighborhood of the other property to the neighborhood of the owner's property?

    i) Is the zoning classification the same on both properties?

You should also consider the extent to which the witness has taken into account whatever dissimilarities might exist. If you are not satisfied that the transactions being used as comparable are, in fact, comparable, then you may consider that fact in weighing his opinion.

You should bear in mind that comparable sales are not themselves direct evidence of value, but merely the basis on which the witnesses have formed their opinions of value.

## General Effects (Michigan Uniform Condemnation Procedures Act MCL 213.70(2))

The general effects of a project for which property is taken, whether actual or anticipated, that in varying degrees are experienced by the general public or by property owners from whom no property is taken, shall not be considered in determining just compensation. A special effect of the project on the owner's property that, standing alone, would constitute a taking of private property under Article X, Section 2 of the State Constitution of 1963 shall be considered in determining just compensation. To the extent that the detrimental effects of a project are considered to determine just compensation, they may be offset by consideration of the beneficial effects of the project.[8]

---

[8] *Michigan Department of Transportation v Tomkins*, 481 Mich 184, 749 NW 2d 716 (2008)

## SECTION II - VALUATION OF THE SUBJECT PROPERTY ABSENT THE EASEMENT

### PROPERTY DESCRIPTION

<u>Land</u>

|  | |
|---|---|
| Area: | 209.8 gross acres |
|  | 5.0 acres R/D/W |
|  | 24.0 acres woods |
|  | 4.0 acres building site |
|  | 176.8 tillable acres |
| Frontage: | North and south sides of Crofoot Road |
| Shape: | Irregular |
| Topography: | Level |
| Vegetation: | Crops, specifically mature sod |
| Soil type: | Soil map provided in addendum |
| Road Surface: | Crofoot road is gravel. |
| Utilities: | Electric |
| Easements: | General road and utility easements |

<u>Site Improvements</u>

Drain Tile

<u>Building Improvements</u>

None in easement area

## PRESENT USE OF SUBJECT PROPERTY

The subject is used for agricultural purposes, most specifically for the production of sod.


## HIGHEST AND BEST USE OF THE SUBJECT PROPERTY

The requirements of intelligence, knowledge and willingness as a part of the concept of fair market value require that the property be considered under its highest and best use. "Highest and Best Use" is defined as the most profitable and advantageous use the owner may make of the property even if the property is presently used for a different purpose, or is vacant so long as there is a market demand for such use.  Such use should be physically possible, legally permissible, financially feasible, and maximally productive.

The subject property is improved and used for agricultural purposes. The property is level, mostly cleared and has drain tile. Agricultural production is a typical use for land in this neighborhood.  It is our opinion that the subject property has a highest and best use as land to be used for agricultural purposes.


## DISCUSSION OF THE APPRAISAL PROCESS

The appraisal process systematically acquires, classifies, analyzes, and presents data necessary to estimate value.  The first step is defining the appraisal problem, i.e. real estate, effective date of value, the property rights being appraised, and the type of value being sought.  Second, the appraiser collects and analyzes data significantly influencing value (e.g., the subject's neighborhood, site, improvements, and highest and best use). Third, the three traditional approaches to value used (Cost, Sales Comparison, and Income Capitalization Approaches) are considered and reconciled.

The **Cost Approach** assumes the informed purchaser pays no more than the cost of producing a property with the same utility as the subject.  In this approach, the subject site is valued, as if vacant, by analyzing the sales of similar sites in the market.  The cost of reproducing the improvements is estimated based on the current cost of replacing the subject's utility with materials as similar as possible.  From this cost new, a deduction is estimated for an accrued physical deterioration, functional obsolescence (diminished utility), and external obsolescence (diminished linkages with surroundings). The estimated site value and the depreciated cost of the improvements are then combined to arrive at an indication of value.  Evidence for all three cost components (site value, cost new, and depreciation) is ideally extracted from the marketplace.

The **Sales Comparison Approach** assumes an informed purchaser pays no more for a property than the cost of acquiring an existing property with similar utility.  This approach involves the analysis and comparison of market transactions, i.e., prices paid for similar properties, prices asked by owners, and offers made by prospective purchasers.  For a market transaction to be an acceptable comparable, it must have the

same highest and best use as the subject property.  Adjustments are made to sale prices of comparable properties to account for interests appraised and cash equivalencies to arrive at adjusted base prices.  Units of comparison are found (i.e., price per square foot, price per apartment unit, or gross or net rent multiplier) and the units of comparison are then adjusted for their differences and correlated into an indication of value for the subject.

The **Income Capitalization Approach** is based on the assumption that there is a measurable relationship between the amount of income a property will earn and its value.  Several appraisal principles form the basis of this approach, but the principle of anticipation is particularly significant.  This principle asserts value is a function of the expectation of future benefits.  The Income Capitalization Approach is an appraisal technique in which the anticipated income of the subject is converted by a rate to a value.  The rate inherently considers risk, time, interest on the capital investment, and the recapture of the depreciating asset, as perceived by buyer and seller.  The appropriateness of this rate is critical; there are several techniques to develop it.

<u>Solution to Appraisal Problem</u>

The subject property is an agricultural parcel of land which is presently used for sod production.  We have determined that the sales comparison approach is the most appropriate method to apply to estimate a market value of the land. There have been a number of sales of vacant farmland in the area which can be used in direct comparison to the subject property for use in the sales comparison approach.  These properties have been researched and analyzed and adjustments have been considered and made to provide a reliable indication of value for the property.

The income approach will not be developed in this analysis. While cropland in this area is commonly rented for crop production purposes, research indicates that the competition for agricultural land makes the income approach much less reliable than the sales comparison approach. Further, our research indicates that many times other consideration, beyond base rent, is paid to the landowner. The use of the income approach could produce an unreliable indication of value.

The subject property is agricultural land.  Building improvements are only considered if impacted by the acquisition.   Consequently, the cost approach is not applicable in this assignment.

## SALES COMPARISON APPROACH

The property is being valued using the sales comparison approach.  This approach is defined as:

> *"The process of deriving a value indication for the subject property by comparing market information for similar properties with the property being appraised, identifying appropriate units of comparison, and making qualitative comparisons with or quantitative adjustments to the sale prices (or unit prices, as appropriate) of the comparable properties based on relevant, market-derived elements of comparison."[9]*

Sales comparison approach procedure:

> *"To apply the sales comparison approach, appraisers follow a systematic procedure:*
>
> 1. *Research the competitive market for information on properties that are similar to the subject property and that have recently sold, are listed for sale, or are under contract. Consider the characteristics of the properties such as property type, date of sale, size, physical condition location, and land use constraints. The goal is to find a set of comparable sales as similar as possible to the subject property to ensure they reflect the actions of similar buyers. Market analysis and highest and best use analysis set the stage for the selection of appropriate comparable sales.*
> 2. *Verify the information by confirming that the data obtained is factually accurate and that the transactions reflect arm's-length market considerations. Verification should elicit additional information about the property and the market so that comparisons are credible.*
> 3. *Select the most relevant units of comparison in the market (e.g., price per acre, price per square foot, price per front foot) and develop a comparative analysis for each unit. The appraiser's goal is to define and identify a unit of comparison that explains market behavior.*
> 4. *Look for differences between the comparable sale properties and the subject property using all appropriate elements of comparison. Then adjust the price of each sale property, reflecting how it differs, to equate it to the subject property or eliminate that property as a comparable.  This step typically involves using the most similar sale properties and then adjusting for any remaining differences. If a transaction does not reflect the actions of a buyer who would also be attracted to the subject property, the appraiser should be concerned about comparability.*

---

[9] The definition of the Sales Comparison Approach from <u>The Dictionary of Real Estate Appraisal</u>, Fifth Edition, Page 175, Copyright 2010 by The Appraisal Institute.

5. *Reconcile the various value indications produced from the analysis of comparables to a value bracket and then to a single value indication."[10]*

## The Elements of Comparison

The elements of comparison are those characteristics of properties and property transactions that may cause prices to vary between sales of properties.   The comparables used in this appraisal have been analyzed for the following elements of comparison:

1. Land Use (mix): We have considered each sale's physical characteristics to account for the differences in land use. In arriving at the adjustment for land use, each sale has been compared directly to the subject property.  Agricultural land frequently has a variety of classes (or uses) such as building site, cropland, wooded land, and road right-of-way and waste.  The sale property is compared to the subject based on land use.  This land use adjustment reflects the superior or inferior land use mix of each comparable sale in comparison to the subject property.

2. Market Conditions:  Market evidence indicates that agricultural property values have been increasing.  We have adjusted older sales upward 1% per month to reflect superior market conditions as of the date of valuation.

3. Property Rights Appraised:   All of the sale transactions were fee simple; therefore, no adjustment is necessary.

4. Cash Equivalency:  To the best of our knowledge all of the sales were made on conventional terms. Therefore no adjustments were necessary for terms of sale or cash equivalency.

5. Conditions of Sale:   To the best of our knowledge each was arms-length. Therefore no adjustments were necessary for conditions of sale.

6. Location:  Location of the comparable properties, as compared to the subject property can influence price.  The selection of the comparables has taken the location factor into consideration.

7. Size/Shape:  The overall size of a property and the shape of the property are considerations in the valuation of farmland.  While there is some difference in the sizes of the properties used in the analysis there is no indication that size is a significant factor in the value, therefore no adjustments will be made for this. Shape does not appear to have an impact on property values in this market area.

8. Drainage/Topography:   The drainage and topographical characteristics of a property are also important to consider. This takes into consideration the existence and extent of tile drainage, if any, and any other related factors as well

---

[10] Systematic procedure of Sales Comparison Approach from The Appraisal of Real Estate, Thirteenth Edition, Pages 301 and 302, Copyright 2008, by The Appraisal Institute.

as the overall topography of the property.  Generally level, well drained soils sell for a higher value and an adjustment is being made to those sales that are considered to have either inferior drainage or topography in comparison to the subject property.

9. <u>Building improvements</u>:  The building improvements on the subject property are outside of the easement area and are not being considered.  However, some of the sale properties have building improvements and the contributory value per acre has been considered as an adjustment for the improved sales.

<u>Summary of Comparable Sales</u>

Our research identified a number of sales of agricultural properties in Livingston County in recent years.  The sales ranged from a low of $3,470 per acre to a high of $5,625 per acre. We have purposely selected the highest priced sales for comparison to the subject. Price paid per acre is the most frequently used unit of comparison.

The information for each of the sales utilized in the analysis is provided in the addenda section of this report.  The following land mix grid outlines the adjustments made for differences in land use followed by an adjustment grid that utilizes the previously discussed elements of comparison.

*Michael and Elaine Simchek*
*Section 1 & 12, Iosco Township*
*Livingston County, MI*

**LAND MIX ADJUSTMENT SHEET - BEFORE**

| SALE # | 793 | | | Subject Property | | |
|---|---|---|---|---|---|---|
| CATEGORY | ACRES | VALUE/ ACRE | TOTAL | ACRES | VALUE/ ACRE | TOTAL |
| CROPLAND | 25.25 | $3,845.00 | $97,086.25 | 176.8 | $3,845.00 | $679,796.00 |
| BUILDING SITE | 1.25 | $3,845.00 | $4,806.25 | 4 | $3,845.00 | $15,380.00 |
| REC/ TIMBER | 11 | $2,884.00 | $31,724.00 | 24 | $2,884.00 | $69,216.00 |
| ROADS/ WASTE | 1 | $0.00 | $0.00 | 5 | $0.00 | $0.00 |
| TOTAL | 38.5 | $3,470.56 | $133,616.50 | 209.8 | $3,643.43 | $764,392.00 |
| LAND MIX ADJ. FOR SALE # | 793 | | $172.87 | | | |

| SALE # | 792 | | | Subject Property | | |
|---|---|---|---|---|---|---|
| CATEGORY | ACRES | VALUE/ ACRE | TOTAL | ACRES | VALUE/ ACRE | TOTAL |
| CROPLAND | 22.75 | $5,250.00 | $119,437.50 | 176.8 | $5,250.00 | $928,200.00 |
| BUILDING SITE | 1.25 | $5,250.00 | $6,562.50 | 4 | $5,250.00 | $21,000.00 |
| REC/ TIMBER | 4.5 | $3,937.50 | $17,718.75 | 24 | $3,937.50 | $94,500.00 |
| ROADS/ WASTE | 1.5 | $0.00 | $0.00 | 5 | $0.00 | $0.00 |
| TOTAL | 30 | $4,790.63 | $143,718.75 | 209.8 | $4,974.74 | $1,043,700.00 |
| LAND MIX ADJ. FOR SALE # | 792 | | $184.11 | | | |

| SALE # | 791 | | | Subject Property | | |
|---|---|---|---|---|---|---|
| CATEGORY | ACRES | VALUE/ ACRE | TOTAL | ACRES | VALUE/ ACRE | TOTAL |
| CROPLAND | 7 | $4,889.00 | $34,223.00 | 176.8 | $4,889.00 | $864,375.20 |
| BUILDING SITE | 0 | $4,889.00 | $0.00 | 4 | $4,889.00 | $19,556.00 |
| REC/ TIMBER | 17.8 | $3,667.00 | $65,272.60 | 24 | $3,667.00 | $88,008.00 |
| ROADS/ WASTE | 0.2 | $0.00 | $0.00 | 5 | $0.00 | $0.00 |
| TOTAL | 25 | $3,979.82 | $99,495.60 | 209.8 | $4,632.69 | $971,939.20 |
| LAND MIX ADJ. FOR SALE # | 791 | | $652.87 | | | |

| SALE # | 790 | | | Subject Property | | |
|---|---|---|---|---|---|---|
| CATEGORY | ACRES | VALUE/ ACRE | TOTAL | ACRES | VALUE/ ACRE | TOTAL |
| CROPLAND | 38 | $4,460.00 | $169,480.00 | 176.8 | $4,460.00 | $788,528.00 |
| BUILDING SITE | 1.8 | $4,460.00 | $8,028.00 | 4 | $4,460.00 | $17,840.00 |
| REC/ TIMBER | 13.5 | $3,345.00 | $45,157.50 | 24 | $3,345.00 | $80,280.00 |
| ROADS/ WASTE | 0.7 | $0.00 | $0.00 | 5 | $0.00 | $0.00 |
| TOTAL | 54 | $4,123.44 | $222,665.50 | 209.8 | $4,226.16 | $886,648.00 |
| LAND MIX ADJ. FOR SALE # | 790 | | $102.72 | | | |

| SALE # | 789 | | | Subject Property | | |
|---|---|---|---|---|---|---|
| CATEGORY | ACRES | VALUE/ ACRE | TOTAL | ACRES | VALUE/ ACRE | TOTAL |
| CROPLAND | 23 | $6,452.41 | $148,405.43 | 176.8 | $6,452.41 | $1,140,786.09 |
| BUILDING SITE | 0 | $6,452.41 | $0.00 | 4 | $6,452.41 | $25,809.64 |
| REC/ TIMBER | 23.06 | $4,839.31 | $111,594.49 | 24 | $4,839.31 | $116,143.44 |
| ROADS/ WASTE | 0.16 | $0.00 | $0.00 | 5 | $0.00 | $0.00 |
| TOTAL | 46.22 | $5,625.27 | $259,999.92 | 209.8 | $6,114.10 | $1,282,739.17 |
| LAND MIX ADJ. FOR SALE # | 789 | | $488.84 | | | |

| SALE # | 794 | | | Subject Property | | |
|---|---|---|---|---|---|---|
| CATEGORY | ACRES | VALUE/ ACRE | TOTAL | ACRES | VALUE/ ACRE | TOTAL |
| CROPLAND | 75.17 | $5,321.27 | $399,999.87 | 176.8 | $5,321.27 | $940,800.54 |
| BUILDING SITE | 0 | $5,321.27 | $0.00 | 4 | $5,321.27 | $21,285.08 |
| REC/ TIMBER | 0 | $3,990.95 | $0.00 | 24 | $3,990.95 | $95,782.80 |
| ROADS/ WASTE | 2.75 | $0.00 | $0.00 | 5 | $0.00 | $0.00 |
| TOTAL | 77.92 | $5,133.47 | $399,999.87 | 209.8 | $5,042.27 | $1,057,868.42 |
| LAND MIX ADJ. FOR SALE # | 794 | | ($91.20) | | | |

24

## SALES COMPARISON APPROACH - BEFORE

| SALE NO. | Subject | 793 | 792 | 791 | 790 | 789 | 794 |
|---|---|---|---|---|---|---|---|
| SALE DATE | | Dec-16 | Dec-16 | Mar-17 | Mar-17 | Jun-17 | Dec-14 |
| EFF. SIZE | 209.8 | 38.50 | 30.00 | 25.00 | 54.00 | 46.22 | 77.92 |
| SALE PRICE | | $155,000.00 | $210,000.00 | $99,500.00 | $249,900.00 | $260,000.00 | $400,000.00 |
| SALE PRICE/ACRE | | $4,025.97 | $7,000.00 | $3,980.00 | $4,627.78 | $5,625.27 | $5,133.47 |
| LAND MIX ADJ. | | $172.87 | $184.11 | $652.87 | $102.72 | $488.84 | ($91.20) |
| ADJ. SALE PRICE | | $4,198.84 | $7,184.11 | $4,632.87 | $4,730.50 | $6,114.11 | $5,042.27 |
| **TIME ADJUSTMENT** | | | | | | | |
| | | Current | Current | Current | Current | Current | 2014 |
| TIME/DATE SALE | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TIME ADJ. PRICE | | $4,198.84 | $7,184.11 | $4,632.87 | $4,730.50 | $6,114.11 | $5,042.27 |
| **OTHER ADJUSTMENTS** | | | | | | | |
| PROPERTY RIGHTS | | Fee simple | Fee simple | Fee simple | Fee simple | Fee simple | Fee simple |
| ADJUSTMENT | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| CASH EQUIV. | | Cash | Cash | Cash | Cash | Cash | Cash |
| ADJUSTMENT | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SALE CONDITIONS | | Normal | Normal | Normal | Normal | Normal | Normal |
| ADJUSTMENT | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| LOCATION | Iosco Twp. | Howell Twp. | Conway | Handy | Handy | Ociola | Conway |
| ADJUSTMENT | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SIZE/SHAPE | 209.8/Irregular | Smaller | Smaller | Smaller | Smaller | Smaller | Similar |
| ADJUSTMENT | Irregular fields | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOPOGRAPHY/DRAINAGE | Nearly level | GR/adequate | GR/Adequate | Nearly level/Adequate | GR/Adequate | Nearly level | Nearly level |
| ADJUSTMENT | | $420.00 | $700.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| BUILDINGS | None | Improved | Improved | None | Improved | None | None |
| ADJUSTMENT | | ($555.00) | ($2,200.00) | $0.00 | ($500.00) | $0.00 | $0.00 |
| NET ADJUSTMENTS | | ($135.00) | ($1,500.00) | $0.00 | ($500.00) | $0.00 | $0.00 |
| ADJ. PRICE | | $4,063.84 | $5,684.11 | $4,632.87 | $4,230.50 | $6,114.11 | $5,042.27 |

| | |
|---|---|
| MAXIMUM | $6,114.11 |
| MINIMUM | $4,063.84 |
| MEAN | $4,961.28 |
| STD. DEVIATION | $742.22 |

Conclusion of Sales Comparison Approach

After taking into consideration the adjustments required and the various items of similarity and dissimilarity between the comparable sale properties cited and the subject property, the values indicated for the subject property are in a range from a minimum value of $4,064 per acre to a maximum value of $6,114 per acre.  The comparable sales utilized are the best sales available and it is our opinion that after adjustment all provide a relatively reliable range of indication of value for the subject property.  We have chosen to utilize a value at the upper end of the range of values in accordance with the definition of market value used in this report.  Therefore, it is our opinion that the land value of the subject property utilizing the sales comparison approach is $6,600 per acre.

209.8 acres @ $6,000/acre = $1,258,800


**CORRELATION AND CONCLUSION – BEFORE THE EASEMENT**

Estimated Land Value - Before the Easement:          $1,258,800


Based on the available information, it is our opinion that the subject land has a value of $1,258,800 as of February 3, 2017, before the acquisition of the easement.

## SECTION III - THE EASEMENT

## DESCRIPTION OF THE EASEMENT

The easement document and sketch are included in the addendum.

## IMPROVEMENTS WITHIN EASEMENT AREA

There are no improvements in the easement area.

## EFFECT OF EASEMENT ON THE SUBJECT'S VALUE

This appraisal involves what is known as a "partial taking"; that is to say, the property being acquired by Rover is part of a larger parcel under the control of the owner. When only a part of a larger parcel is taken, as is the case here, the owner is entitled to recover not only for the property acquired, but also for any loss in the value to his remaining property. **The measure of compensation is the difference between (1) the market value of the entire parcel before the taking and (2) the market value of what is left of the parcel after the taking.** In valuing the property that is left after the taking, you should take into account various factors, which may include: (1) its reduced size, (2) its altered shape, (3) reduced access, (4) any change in utility or desirability of what is left after the taking, (5) the effect of the applicable zoning ordinances on the remaining property, and (6) the use which the condemning authority intends to make of the property it is acquiring and the effect of that use upon the owners' remaining property. Further, in valuing the remainder after the taking, you must assume that Rover Pipeline will use its newly acquired property rights to the fullest extent allowed by the law. [11]

The easement acquisition did not alter the subject's size, shape, accessibility, or the effect of applicable zoning ordinances on the remaining property. However it is our opinion that the acquisition has reduced the value of the land within the easement. The easement provides Rover with permanent rights to access the easement area to construct, maintain, and upgrade the pipeline. The easement also prohibits new structures and improvements within the easement and grants the right to Rover to control trees and other vegetation.

The easement requires Rover to compensate the property owners for crop loss and damages, and requires Rover to restore the subject property after construction. Crop loss, soil damage, drain tile damage and other damages suffered during construction, maintenance and reconstruction are not considered in this appraisal. It would be impossible to accurately predict those losses as of the date of valuation. The easement requires Rover to compensate the property owner for those losses and other experts

---

[11] *See footnote 6.*

have been retained to provide an estimate of these losses.  This appraisal does not consider costs to avoid business interruption.  Those costs are addressed by others.

The easement will also result in a pipeline being installed across the subject property. While the objective evidence indicates that placement of a pipeline on rural property does not significantly affect property values, property owners claim that there is such an effect. In order to give owners the benefit of the doubt and insure that eminent domain valuation principles are applied we have assumed that the installation of the pipeline has some impact on the subject property.

## SECTION IV - VALUATION ANALYSIS – AFTER EASEMENT

## PROPERTY DESCRIPTION

The subject property remains as described in the before case. The only difference is that a pipeline will be installed crossing the subject property.

## PRESENT USE OF SUBJECT PROPERTY

The subject property is used for agricultural purposes.

## HIGHEST AND BEST USE OF THE SUBJECT PROPERTY

The requirements of intelligence, knowledge and willingness as a part of the concept of fair market value require that the property be considered under its highest and best use. "Highest and Best Use" is defined as the most profitable and advantageous use the owner may make of the property even if the property is presently used for a different purpose, or is vacant so long as there is a market demand for such use.  Such use should be physically possible, legally permissible, financially feasible, and maximally productive.

The existence of the pipeline and easement do not cause a change in the subject's highest and best use.

## DISCUSSION OF THE APPRAISAL PROCESS

The purpose and goal of this appraisal is to estimate the amount of compensation owed to the property owner as a result of the acquisition of the easement.  The measure of compensation is the difference between (1) the market value of the entire parcel before the taking and (2) the market value of what is left of the parcel after the taking.

Crop Damage, Soil Compaction and other Damages – Paid by Rover

The easement requires Rover to compensate the property owners for crop loss, and other damages, if any, and requires Rover to restore the subject property after construction.  Crop loss, soil damage, drain tile damage and other damages suffered during construction, maintenance and reconstruction, if any, are not considered in this appraisal.  It would be impossible to accurately predict those losses as of the date of valuation.  This appraisal does not consider costs to avoid business interruption.  Those costs are addressed by others.

Our research indicates that several factors impact agricultural value more than the existence of a pipeline.  Market participants indicate that location, proximity to other property owned or farmed by the buyer, buyer and seller relationship, competition for the property, asking price, size, shape, drains, access, drain tile and soil quality generally influence price more than the existence of an easement. As a result, the potential impact of the easement on the subject property is likely to be less significant than several other factors.

Market prices have been increasing, however has more recently stabilized in the agricultural market. This is due to decreasing crop prices, and lessened competition for farm land.

General Statement

Issues expressed by the property owners generally fall into two categories – temporary and permanent.  Many of the concerns raised are related to the construction phase of the project.  We believe the construction phase to be a difficult, albeit temporary, issue for the owners and farmers.   Construction requires several large vehicles and equipment to traverse the subject property. Construction may result in lost crops, soil compaction and drain tile damage.  However, all of these concerns are addressed in the easement. Rover Pipeline is responsible for paying the property owner for all of these losses.

The easement provides access only to the area within the easement area to reconstruct, modify, upgrade, improve, maintain, operate, inspect, replace, repair, and patrol unless the parties come to a mutual agreement or in the case of imminent threat. The easement requires Rover to pay for all crop damage, restoration of the property and damages for all future use of their easement.   Therefore, many of the potential future access issues are covered by the easement. It should be noted that a temporary construction easement is also being obtained crossing the subject property.  This will be addressed separately.

Future use of the easement is a concern to property owners. Given the nature of the easement it is unlikely that there will be ongoing or substantial interference with property rights by Rover.

Permanent Loss of Building and other above-ground improvements

The easement restricts the construction of new buildings and other above-ground improvements within the easement area.   I have been instructed to consider the impact of the taking to the fullest extent allowed by law.  Therefore, I have considered the area within the easement to be restricted from all buildings and other above-ground improvements.

It is unlikely, whether permitted by or not, that residential home construction would occur within the easement area. The easement is 50 feet wide and the pipeline will be located on the centerline of the easement.

The loss of building rights within the easement is minimized by two factors.  First, the highest and best use of the subject is as agricultural land and buildings are obstructions to farming.  Therefore, it is unlikely that a building would be constructed in farmland. Secondly, residential development in the subject area is limited. There is limited demand for new residential development and the soils of the subject property also place some limitations on the potential for future development. The highest and best use for the subject property is agricultural land.

Nonetheless, the property owners have lost the right to build within the easement. This loss results in a loss in value.  However, this loss is not significant.

<u>Damages to Remainder</u>

It is our opinion that the impact of the easement is limited to the area within the easement.  We have considered all other issues and have determined that there are no damages to the remainder, except to consider the temporary construction easement and the temporary road that is to be installed for access.

The Uniform Condemnation Procedures Act requires that appraisers value a partial taking by comparing the "before" value of a property to its "after" value. Just Compensation requires the following:

> *The determination of value and just compensation in a condemnation case is not a matter of formula or artificial rules, but of sound judgment and discretion based upon a consideration of all of the evidence you have heard and seen in this case.*

> *In determining just compensation, you should not consider what Rover Pipeline has gained. The value of the property taken to Rover and to its customers is not to be considered in any way.[12]*

<u>Correlation and Conclusion – After Value</u>

We have considered all of the known factors that influence the subject's value after the imposition of the Rover easement.  We have arrived at the following conclusions:

- As of the date of valuation the demand for agricultural property is moderate.
- Market participants indicate that location, proximity to other property owned or farmed by the buyer, buyer/seller relationship, competition for the property, asking price, size, shape, drains, access, drain tile and

---

[12] See footnote 7.

soil quality generally influence price more than the existence of easements.

- The easement requires Rover to compensate the property owners for actual crop loss and other damages identified in the easement. Additionally the easement requires Rover to restore the property after construction. To include these items in this appraisal would be 1) speculative and 2) redundant.
- Costs to avoid business interruption and related issues are addressed by others.

Notwithstanding losses suffered during construction, which are handled separately from this appraisal, the market value of the subject property is affected by the easement. After extensive research and analysis, it is our opinion that the easement results in a 75% loss of the value of the land encumbered by the easement. There are solid reasons for not selecting a factor of 0% or 100%. The decrease in land value must be somewhere between. It is our opinion that a loss of 75% of the value is supportable and reasonable. Given that farming practices may continue on the land over, or encumbered by, pipeline easements would indicate that something less than 100% would be appropriate. There is the possibility however, that the operator may not be comfortable with farming directly over the pipeline therefore some diminution in the value is considered appropriate to apply.

Based on all of the available data it is our opinion that the value of the land within the permanent easement area is reduced in value by 75%. Property value has been estimated at $6,000 per acre. A 75% loss results in decreasing the value of the land within the easement to $1,500 per acre.

Summary of Sales Comparison – After Easement

Estimated Land Value of Subject - After Easement
| | |
|---|---|
| 206.9 acres at $6,000 per acre (unencumbered land) | $1,241,400 |
| 2.9 acres at $1,500 per acre (encumbered land) | $4,350 |
| Sub-total | $1,245,750 |

| | |
|---|---|
| Estimated Land Value After | $1,245,750 |

## CORRELATION AND CONCLUSION – AFTER EASEMENT

Based on the available information, it is our opinion that the subject land has a value of $1,245,750 encumbered by the Rover Pipeline easement as of February 3, 2017.

## TEMPORARY CONSTRUCTION EASEMENT VALUATION

In completing the construction of the pipeline crossing the subject property an area along the permanent easement will be required for construction purposes.  This are varies from a width of 8 feet along the existing transmission line easement crossing the southern portion of the subject property to a width of between 50 and 80 feet in the northern portion of the subject property.  A total area of 5.64 acres is estimated to be affected by the construction easement.

By nature, a construction easement is temporary in nature, however, may have lasting impacts on a property for a period that extends beyond the actual construction period. In the case of farmland issues such as soil disturbance, compaction and loss of ability to produce a crop for a period of time results.  In this particular case, the owner of the subject property will be restricted from planting or harvesting a crop of sod for a period of at least two years as a result of the construction easement.

The principal method employed in the valuation of a temporary construction easement is based on the loss of income during the construction period.  This is best measured by using typical cash rental rates for similar property types.  As a sod farm, the subject property is considered to produce a specialty crop and rental rates for highly specialized crops such as sod tend to be higher than rental rates for more typical crops such as corn and soybeans.  As a result, a rental rate of $300 per acre for the two years that is likely to be impacted by the construction easement is considered appropriate to apply. In order to estimate the just compensation due the property owner as a result, the present value of the loss of income is calculated.  In this case the income loss is:

5.64 acres at $300 per acre = $1,692 annually

The next step in the process is to calculate the present value of the loss of $1,692 for the next two years.  In order to do this a discount rate is necessary to apply. Capitalization rates for farmland typically are in the range of 1.5% to 3.5%.  In this case a 2.5% discount rate is used to determine the present value of the income lost during the term of the temporary construction easement and temporary road area.  This results in a present value of $3,261.

## SECTION V - RECONCILIATION OF VALUES

## RECONCILIATION

| | |
|---|---|
| Estimated Land Value – Before the Easement | $1,258,800 |
| Estimated Land Value – With the Easement | $1,245,750 |
| Total Estimated Just Compensation | $ 13,050 |
| Temporary Construction Easement | $3,261 |
| Total Compensation Due | $16,311 |

## CERTIFICATE OF APPRAISAL

I certify that to the best of my knowledge and belief:

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, unbiased professional analysis, opinions, and conclusions.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- I have performed no other appraisals or provided any other services in the three years prior to completing this appraisal.

- I have no bias with respect to the property that is the subject of this report or to the parties involved in this assignment.

- My engagement in this assignment was not contingent upon developing or reporting predetermined results.

- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or occurrence of a subsequent event directly related to the intended use of the appraisal.

- My analysis, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice*, and Title XI of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA).

- I have made a personal inspection of the property that is the subject of this report.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and the Standards of Professional Appraisal Practice of the American Society of Farm Managers and Rural Appraisers and the Appraisal Institute.

- In Michigan, appraisers are required to be licensed/certified and are now regulated by the Michigan Department of Licensing and Regulatory Affairs P.O. Box 30018, Lansing, MI 48909.  Douglas K. Hodge certified general appraiser #1201001482.

- I hereby certify that I am competent to complete the appraisal assignment.  The reader is referred to appraiser's qualifications contained in the Addendum.

The appraisal assignment was not based on a requested minimum valuation, a specific valuation, or the approval of a loan.

It is my opinion that the amount of compensation required for:

**MICHAEL and ELAINE SIMCHEK**
**SECTION 1 & 12, IOSCO TOWNSHIP, LIVINGSTON COUNTY, MI**

is:

**$16,311**

Respectfully submitted,

Douglas K. Hodge, MAI, ARA, CCIM, MRICS
License Number 1201-001482

**A D D E N D U M**



**CROFOOT RD** FOWLERVILLE, MI 48836 (Property Address)

Parcel Number: 4709-01-400-001

**Property Owner:** SIMCHECK, MICHAEL & ELAINE

*Summary Information*
> Assessed Value: $101,500 | Taxable Value: $88,328     > Property Tax information found

No Images Found

## Owner and Taxpayer Information

| Owner | SIMCHECK, MICHAEL & ELAINE 3144 BIGNALL DR HOWELL, MI 48855 | Taxpayer | SEE OWNER INFORMATION |
|---|---|---|---|

## General Information for Tax Year 2017

| Property Class | AG-VACANT | Unit | 4709 IOSCO TOWNSHIP |
|---|---|---|---|
| School District | HOWELL | Assessed Value | $101,500 |
| MAP # | 1 | Taxable Value | $88,328 |
| USER NUMBER IDX | 0 | State Equalized Value | $101,500 |
| USER ALPHA 1 | No Data to Display | Date of Last Name Change | 02/03/2017 |
| USER ALPHA 3 | No Data to Display | Notes | Not Available |
| Historical District | No | Census Block Group | No Data to Display |
| USER ALPHA 2 | No Data to Display | Exemption | No Data to Display |

### Principal Residence Exemption Information

| Homestead Date | No Data to Display | |
|---|---|---|

| Qualified Agricultural | June 1st | Final |
|---|---|---|
| 2017 | 100.0000 % | 100.0000 % |

### Previous Year Information

| Year | MBOR Assessed | Final SEV | Final Taxable |
|---|---|---|---|
| 2016 | $101,300 | $101,300 | $87,541 |
| 2015 | $87,799 | $87,799 | $87,280 |
| 2014 | $85,906 | $85,906 | $85,906 |

## Land Information

| Zoning Code | AR | Total Acres | 80.000 |
|---|---|---|---|
| Land Value | $183,400 | Land Improvements | $0 |
| Renaissance Zone | No | Renaissance Zone Expiration Date | No Data to Display |
| ECF Neighborhood | AGRICULTURAL | Mortgage Code | No Data to Display |
| Lot Dimensions/Comments | No Data to Display | Neighborhood Enterprise Zone | No |

| Lot(s) | Frontage | Depth |
|---|---|---|
| No lots found. | | |
| **Total Frontage: 0.00 ft** | | **Average Depth: 0.00 ft** |

## Legal Description

SEC 1 T2N R3E COMM N88°35'57"W 539.62 FT FROM SE COR SEC 1, N 67° 25'37"W ON C.L CROFOOT RD, 430.34 FT, CONT N 67°01'14"W 385.39 FT, CONT N 63°41'39"W 471.48 FT, N 26°18'21"E 634.30 FT, N 0°02' 53"E 1575.60 FT TO E/W 1/4 LINE, TH S 88°E ON E/W 1/4 LINE, 1434.48 FT TO E 1/4 COR, S0°10'22"W 238.25 FT, TH S0°02'10"W 2406.91 FT TO POB

## Land Division Act Information

| Date of Last Split/Combine | No Data to Display | Number of Splits Left | Not Available |
|---|---|---|---|
| Date Form Filed | No Data to Display | Unallocated Div.s of Parent | 0 |
| Date Created | No Data to Display | Unallocated Div.s Transferred | 0 |
| Acreage of Parent | 0.00 | Rights Were Transferred | No |

A
1

Record Details | Iosco Township | AccessMyGov.com

| Split Number | 0 | | Courtesy Split | No |
| Parent Parcel | No Data to Display | | | |

### Sale History

| Sale Date | Sale Price | Instrument | Grantor | Grantee | Terms of Sale | Liber/Page | Comments |
|---|---|---|---|---|---|---|---|
| 12/16/2016 | $0.00 | Q/C | MASF PROPERTIES LLC | SIMCHECK, MICHAEL & ELAINE | FAMILY SALE | 2016R-038958 | |
| 05/29/2013 | $868,000.00 | LC | CENTRAL MICHIGAN HOLDINGS, LLC | MASF PROPERTIES LLC | ARM'S LENGTH | 2013R-023392 | WD 2016R-038957 |
| 06/11/2003 | $1.00 | Q/C | SCEPKA, GEORGE MICHAEL & DIANE | CENTRAL MICHIGAN HOLDINGS, LLC | OTHER | 4105 0310 | QC MCL 21.27 EXEMPT FROM UNC |

### Building Information - 3420 sq ft Utility Building (Agricultural)

| Type | Utility Building | Class | S |
|---|---|---|---|
| Floor Area | 3,420 sq ft | Estimated TCV | $15,428 |
| Perimeter | 256 ft | Height | 0 ft |
| Year Built | Not Available | Quality | Average |
| Percent Complete | 100% | Heat | Space Heaters, Rad. |
| Physical Percent Good | 45% | Functional Percent Good | 70% |
| Economic Percent Good | 100% | Effective Age | 35 yrs |

### Building Information - 2268 sq ft Utility Shed, Lean-To (Agricultural)

| Type | Utility Shed, Lean-To | Class | D,Pole |
|---|---|---|---|
| Floor Area | 2,268 sq ft | Estimated TCV | $3,632 |
| Perimeter | 192 ft | Height | 0 ft |
| Year Built | Not Available | Quality | Low Cost |
| Percent Complete | 100% | Heat | No Heating/Cooling |
| Physical Percent Good | 45% | Functional Percent Good | 70% |
| Economic Percent Good | 100% | Effective Age | 35 yrs |

**Disclaimer: BS&A Software provides AccessMyGov.com as a way for municipalities to display information online and is not responsible for the content or accuracy of the data herein. This data is provided for reference only and WITHOUT WARRANTY of any kind, expressed or inferred. Please contact your local municipality if you believe there are errors in the data.

Copyright © 2017 BS&A Software, Inc.

Record Details | Iosco Township | AccessMyGov.com                                    Page 1 of 2

---

**CROFOOT**  HOWELL, MI 48843   (Property Address)

Parcel Number: 4709-12-200-002

**Property Owner:** SIMCHECK, MICHAEL & ELAINE

*Summary Information*

> Assessed Value: $24,600 | Taxable Value: $21,265     > Property Tax information found

No Images Found

---

**Parcel is Vacant**

## Owner and Taxpayer Information

| Owner | SIMCHECK, MICHAEL & ELAINE | Taxpayer | SEE OWNER INFORMATION |
|---|---|---|---|
| | 3144 BIGNALL DR | | |
| | HOWELL, MI 48855 | | |

## General Information for Tax Year 2017

| Property Class | AG-VACANT | Unit | 4709 IOSCO TOWNSHIP |
|---|---|---|---|
| School District | HOWELL | Assessed Value | $24,600 |
| MAP # | 12 | Taxable Value | $21,265 |
| USER NUMBER IDX | 0 | State Equalized Value | $24,600 |
| USER ALPHA 1 | No Data to Display | Date of Last Name Change | 02/03/2017 |
| USER ALPHA 3 | No Data to Display | Notes | Not Available |
| Historical District | No | Census Block Group | No Data to Display |
| USER ALPHA 2 | AG USE 2004 | Exemption | No Data to Display |

## Principal Residence Exemption Information

Homestead Date                06/27/2013

| Qualified Agricultural | June 1st | Final |
|---|---|---|
| 2017 | 100.0000 % | 100.0000 % |

## Previous Year Information

| Year | MBOR Assessed | Final SEV | Final Taxable |
|---|---|---|---|
| 2016 | $24,600 | $24,600 | $21,076 |
| 2015 | $21,013 | $21,013 | $21,013 |
| 2014 | $25,625 | $25,625 | $25,625 |

## Land Information

| Zoning Code | AR | Total Acres | 20.500 |
|---|---|---|---|
| Land Value | $49,200 | Land Improvements | $0 |
| Renaissance Zone | No | Renaissance Zone Expiration Date | No Data to Display |
| ECF Neighborhood | AGRICULTURAL | Mortgage Code | No Data to Display |
| Lot Dimensions/Comments | No Data to Display | Neighborhood Enterprise Zone | No |

| Lot(s) | | Frontage | | Depth |
|---|---|---|---|---|
| No lots found. | | | | |
| | | Total Frontage: 0.00 ft | Average Depth: 0.00 ft | |

## Legal Description

SEC 12 T2N R3E BEG NW COR SEC 7 T2N R4E MARION TWP, TH S 1067.68 FT ALG IOSCO-MARION TWP LN, TH N88*W 359.14 FT, TH N25*W 1335.7 FT TH N 132.8 FT, TH S88*E 936.67 FT TO NE COR SEC 12, TH S 255.13 FT ALG E SEC LN TO POB 20.54 AC M/L SUBJ TO ESMT

## Land Division Act Information

| Date of Last Split/Combine | No Data to Display | Number of Splits Left | Not Available |
|---|---|---|---|
| Date Form Filed | No Data to Display | Unallocated Div.s of Parent | 0 |
| Date Created | No Data to Display | Unallocated Div.s Transferred | 0 |

A
3

| Acreage of Parent | 0.00 | Rights Were Transferred | No |
| Split Number | 0 | Courtesy Split | No |
| Parent Parcel | No Data to Display | | |

## Sale History

| Sale Date | Sale Price | Instrument | Grantor | Grantee | Terms of Sale | Liber/Page | Comments |
|-----------|-----------|------------|---------|---------|---------------|------------|----------|
| 12/16/2016 | $0.00 | Q/C | MASF PROPERTIES LLC | SIMCHECK, MICHAEL & ELAINE | FAMILY SALE | 2016R-038958 | |
| 05/29/2013 | $0.00 | LC | CENTRAL MICHIGAN HOLDINGS LLC | MASF PROPERTIES LLC | ARM'S LENGTH | 2013R-023392 | WD 2016R-038957 |
| 02/23/2004 | $154,000.00 | WD | SCEPKA, JOSEPH M & MARY P | CENTRAL MICHIGAN HOLDINGS LLC | FAMILY SALE | 4422 0770 | AG USE SALE FILED 2/04 |

**Disclaimer: BS&A Software provides AccessMyGov.com as a way for municipalities to display information online and is not responsible for the content or accuracy of the data herein. This data is provided for reference only and WITHOUT WARRANTY of any kind, expressed or inferred. Please contact your local municipality if you believe there are errors in the data.

Copyright © 2017 BS&A Software, Inc.

Record Details | Iosco Township | AccessMyGov.com

**LANGE** FOWLERVILLE, MI 48836   (Property Address)
Parcel Number: 4709-12-100-007

**Property Owner:** SIMCHECK, MICHAEL & ELAINE
*Summary Information*
> Residential Building Summary
  - Year Built: N/A
  - Full Baths: 1
  - Sq. Feet: 720

  - Bedrooms: 0
  - Half Baths: 0
  - Acres: 89.300

> Assessed Value: $120,600 | Taxable Value: $100,931
> Property Tax Information found

No Images Found

## Owner and Taxpayer Information

| Owner | SIMCHECK, MICHAEL & ELAINE<br>3144 BIGNALL DR<br>HOWELL, MI 48855 | Taxpayer | SEE OWNER INFORMATION |
|---|---|---|---|

## General Information for Tax Year 2017

| | | | |
|---|---|---|---|
| Property Class | AG-IMPROVED | Unit | 4709 IOSCO TOWNSHIP |
| School District | HOWELL | Assessed Value | $120,600 |
| MAP # | 12 | Taxable Value | $100,931 |
| USER NUMBER IDX | 0 | State Equalized Value | $120,600 |
| USER ALPHA 1 | 89.3 AC | Date of Last Name Change | 02/03/2017 |
| USER ALPHA 3 | No Data to Display | Notes | Not Available |
| Historical District | No | Census Block Group | No Data to Display |
| USER ALPHA 2 | AG USE 2004 | Exemption | No Data to Display |

### Principal Residence Exemption Information

| Homestead Date | No Data to Display | | |
|---|---|---|---|
| Qualified Agricultural | | June 1st | Final |
| 2017 | | 100.0000 % | 100.0000 % |

### Previous Year Information

| Year | MBOR Assessed | Final SEV | Final Taxable |
|---|---|---|---|
| 2016 | $120,000 | $120,000 | $100,031 |
| 2015 | $100,763 | $100,763 | $99,732 |
| 2014 | $98,162 | $98,162 | $98,162 |

## Land Information

| | | | |
|---|---|---|---|
| Zoning Code | AR | Total Acres | 89.300 |
| Land Value | $228,000 | Land Improvements | $0 |
| Renaissance Zone | No | Renaissance Zone Expiration Date | No Data to Display |
| ECF Neighborhood | AGRICULTURAL | Mortgage Code | No Data to Display |
| Lot Dimensions/Comments | No Data to Display | Neighborhood Enterprise Zone | No |

| Lot(s) | Frontage | Depth |
|---|---|---|
| No lots found. | | |

| Total Frontage: 0.00 ft | Average Depth: 0.00 ft |
|---|---|

## Legal Description

SEC 12 T2N R3E AND SEC 1 T2N R3E BEG N 88°35'57"W 539.62 FT FROM NE COR SEC 12, TH N88°35'37"W 757.33 FT TH S00°00'58"W 1321.44 FT, TH N 88°32'41"W 2602.33 FT, TH N 00°22'46"E 1252.94 FT, TH N34°01'E 123.98 FT, TH S 54°23'E 314.72 FT, TH S 31°58'31"E 299.82 FT, TH S 66°53'E 138.70 FT, TH S 6258'01"*E 145.81 FT, TH S 83°19'E 140 FT, TH S 75°36'47"E 44.78 FT, TH S51°52' 'E 78.35 FT, TH S83°05'E 104.11 FT, TH N 29°32'E 137 FT, TH N53°11'23"E 95.21 FT, TH S84°56'49"E 248.27 FT, TH N 78°49'41"E 9.40 FT, TH N00°11'00"E 1233.77FT TH ALONG C/L CROFOOT RD S63°41'39"E 1233.12FT TH S67°01'14"E 385.39 FT TH S67°25'37"E 430.34 FT TO POB SPLIT FROM 200-004 89.3 AC M/L ALSO INC COM NE COR SEC 12 TH N88°38'25"W 1296.67' TH S00°02'58"W 199.61' TO POB TH S00°02'58"W 1122.05' TH S88°35'30"E 548.54' TH N25°42'50"W 1260.36' TO POB

## Land Division Act Information

| Date of Last Split/Combine | No Data to Display | Number of Splits Left | Not Available |
|---|---|---|---|

Record Details | Iosco Township | AccessMyGov.com

| | |
|---|---|
| Date Form Filed | No Data to Display |
| Date Created | No Data to Display |
| Acreage of Parent | 0.00 |
| Split Number | 0 |
| Parent Parcel | No Data to Display |

| | |
|---|---|
| Unallocated Div.s of Parent | 0 |
| Unallocated Div.s Transferred | 0 |
| Rights Were Transferred | No |
| Courtesy Split | No |

## Sale History

| Sale Date | Sale Price | Instrument | Grantor | Grantee | Terms of Sale | Liber/Page | Comments |
|---|---|---|---|---|---|---|---|
| 12/16/2016 | $0.00 | Q/C | MASF PROPERTIES LLC | SIMCHECK, MICHAEL & ELAINE | FAMILY SALE | 2016R-038958 | |
| 05/29/2013 | $0.00 | LC | CENTRAL MICHIGAN HOLDINGS LLC | MASF PROPERTIES LLC | ARM'S LENGTH | 2013R-023392 | WD 2016R-038957 |
| 02/23/2004 | $154,000.00 | WD | SCEPKA, JOSEPH H & MARY A | CENTRAL MICHIGAN HOLDINGS LLC | FAMILY SALE | 4422 0770 | QU AG USE SALE FILED 2/04 |

## Building Information - 720 sq ft PRIOR 1997 (Residential)

### General

| | | | |
|---|---|---|---|
| Floor Area | 720 sq ft | Estimated TCV | $13,289 |
| Garage Area | 0 sq ft | Basement Area | 0 sq ft |
| Foundation Size | 720 sq ft | | |
| Year Built | Not Available | Year Remodeled | Not Available |
| Occupancy | Mobile Home | Class | CD |
| Effective Age | 20 yrs | Tri-Level | No |
| Percent Complete | 100% | Heat | Forced Air w/ Ducts |
| AC w/Separate Ducts | No | Wood Stove Add-on | No |
| Basement Rooms | 0 | Water | No Data to Display |
| 1st Floor Rooms | 0 | Sewer | No Data to Display |
| 2nd Floor Rooms | 0 | Style | PRIOR 1997 |
| Bedrooms | 0 | | |

### Exterior Information

| | | | |
|---|---|---|---|
| | | Stone Veneer | 0 sq ft |
| Brick Veneer | 0 sq ft | | |

### Basement Finish

| | | | |
|---|---|---|---|
| | | Recreation % Good | 0% |
| Recreation | 0 sq ft | Living Area % Good | 0% |
| Living Area | 0 sq ft | No Concrete Floor Area | 0 sq ft |
| Walk Out Doors | 0 | | |

### Basement Finish - Mobile Home Items

| | | | |
|---|---|---|---|
| | | Square Feet of Wall | 0 sq ft |
| Foundation Type | Concrete | | |
| Frost Free Footings | 0 Lineal Ft. | | |

### Plumbing Information

| | |
|---|---|
| 3 Fixture Bath | 1 |

**Disclaimer: BS&A Software provides AccessMyGov.com as a way for municipalities to display information online and is not responsible for the content or accuracy of the data herein. This data is provided for reference only and WITHOUT WARRANTY of any kind, expressed or inferred. Please contact your local municipality if you believe there are errors in the data.

Copyright © 2017 BS&A Software, Inc.

Record Details | Iosco Township | AccessMyGov.com



**LANGE** FOWLERVILLE, MI 48836  (Property Address)

Parcel Number: 4709-12-100-006

Property Owner: SIMCHECK, MICHAEL & ELAINE

Summary Information
> Assessed Value: $24,000 | Taxable Value: $20,563
> Property Tax Information found

No Images Found

**Parcel is Vacant**

**Owner and Taxpayer Information**

| Owner | SIMCHECK, MICHAEL & ELAINE<br>3144 BIGNALL DR<br>HOWELL, MI 48855 | Taxpayer | SEE OWNER INFORMATION |
|---|---|---|---|

**General Information for Tax Year 2017**

| | | | |
|---|---|---|---|
| Property Class | AG-VACANT | Unit | 4709 IOSCO TOWNSHIP |
| School District | HOWELL | Assessed Value | $24,000 |
| MAP # | 12 | Taxable Value | $20,563 |
| USER NUMBER IDX | 0 | State Equalized Value | $24,000 |
| USER ALPHA 1 | No Data to Display | Date of Last Name Change | 02/03/2017 |
| USER ALPHA 3 | No Data to Display | Notes | Not Available |
| USER ALPHA 2 | No | Census Block Group | No Data to Display |
| Historical District | AG USE 2004 | Exemption | No Data to Display |

**Principal Residence Exemption Information**

No Data to Display

| | June 1st | Final |
|---|---|---|
| Homestead Date | | |
| | 100.0000 % | 100.0000 % |
| Qualified Agricultural | | |
| 2017 | | |

**Previous Year Information**

| Year | MBOR Assessed | Final SEV | Final Taxable |
|---|---|---|---|
| | | | $20,380 |
| 2016 | $24,000 | $24,000 | $20,320 |
| 2015 | $20,500 | $20,500 | $20,000 |
| 2014 | $20,000 | $20,000 | |

**Land Information**

| | | | |
|---|---|---|---|
| | | Total Acres | 20.000 |
| Zoning Code | AR | Land Improvements | $0 |
| Land Value | $48,000 | Renaissance Zone Expiration Date | No Data to Display |
| Renaissance Zone | No | Mortgage Code | No Data to Display |
| ECF Neighborhood | AGRICULTURAL | Neighborhood Enterprise Zone | No |
| Lot Dimensions/Comments | No Data to Display | | |

| Lot(s) | Frontage | Depth |
|---|---|---|
| No lots found. | | |

Total Frontage: 0.00 ft     Average Depth: 0.00 ft

**Legal Description**

SEC 12 T2N R3E COMM C.L. LANGE RD, S 88*29'15"E 1308.89 FT, S 00*17'14"W 267.71 FT, S 89*12'03"E 268.81 FT FROM W 1/4 COR SEC 12 FOR POB, N 24*20'01"E 1718.24 FT, S 88*32'41"E 548.79 FT, S 08*57'16"E ON TRAVERSE LINES CREEK, 15.59 FT, CONT S 15*24'56"W 306.9 FT, CONT S 39*02'W 288.59 FT, CONT S 28*54'W 232.55 FT S 19*19'40"W 530.56 FT, S 26*10'54"W 356.30 FT TO C.L. LANGE RD, N 89*12'03"W 550.51 FT TO BEG, INCLUDES LAND LYING BETWEEN TRAVERSE LINE ELY TO C.L. CREEK, 20AC M/L

**Land Division Act Information**

| | | | |
|---|---|---|---|
| | | | Not Available |
| Date of Last Split/Combine | No Data to Display | Number of Splits Left | |

A
7

Page 2 of 2

Record Details | Iosco Township | AccessMyGov.com

| | | | |
|---|---|---|---|
| Date Form Filed | No Data to Display | Unallocated Div.s of Parent | 0 |
| Date Created | No Data to Display | Unallocated Div.s Transferred | 0 |
| Acreage of Parent | 0.00 | Rights Were Transferred | No |
| Split Number | 0 | Courtesy Split | No |
| Parent Parcel | No Data to Display | | |

### Sale History

| Sale Date | Sale Price | Instrument | Grantor | Grantee | Terms of Sale | Liber/Page | Comments |
|---|---|---|---|---|---|---|---|
| 12/16/2016 | $0.00 | Q/C | MASF PROPERTIES LLC | SIMCHECK, MICHAEL & ELAINE | FAMILY SALE | 2016R-038958 | WD 2016R-038957 |
| 05/29/2013 | $0.00 | LC | CENTRAL MICHIGAN HOLDINGS LLC | MASF PROPERTIES LLC | ARM'S LENGTH | 2013R-023392 | |
| 02/23/2004 | $154,000.00 | WD | SCEPKA, JOSEPH & MARY | CENTRAL MICHIGAN HOLDINGS LLC | FAMILY SALE | 4422 0770 | QU. AG USE SALE FILED 2/04 |

**Disclaimer: BS&A Software provides AccessMyGov.com as a way for municipalities to display information online and is not responsible for the content or accuracy of the data herein. This data is provided for reference only and WITHOUT WARRANTY of any kind, expressed or inferred. Please contact your local municipality if you believe there are errors in the data.

Copyright © 2017 BS&A Software, Inc.

/SiteSearch/SiteSearchDetails?SearchFocus=All+Records&Search...

8/4/2017

## SIMCHEK PROPERTY



**Wooded area on north end of property**



**Property south of Crofoot Road**

Photos taken June 14, 2017 by DKH



**Pond and drainage ditch on property**



**Subject property looking north from Crofoot Road**

Photos taken June 14, 2017 by DKH



**Subject property north of Crofoot Road**

## Aerial Map



map center: 42° 35' 0.89, -84° 2' 14.46

0ft          889ft          1778ft

**1-2N-3E**
**Livingston County**
**Michigan**

8/14/2017

Field borders provided by Farm Service Agency as of 5/21/2008.

A
12

**EXHIBIT A**
**LIVINGSTON COUNTY, MICHIGAN**
**SECTION 1, T-2-N, R-3-E**
**IOSCO TOWNSHIP, MICHIGAN MERIDIAN**

PROPERTY INFORMATION
(PARCEL TAX ID NO. 4709-01-400-001)

PROPERTY DESCRIPTION (PER LIBER 4105, PAGE 310 AND REF. #: 2013R-023392 L.C.R.)

PARCEL 4: PART OF THE SOUTHEAST 1/4 OF SECTION 1, TOWN 2 NORTH, RANGE 3 EAST, IOSCO TOWNSHIP, LIVINGSTON COUNTY, MICHIGAN, DESCRIBED AS: BEGINNING AT THE SOUTHEAST CORNER OF SECTION 1; THENCE NORTH 88 DEGREES 35 MINUTES 57 SECONDS WEST 539.62 FEET TO A POINT IN THE CENTERLINE OF CROFOOT ROAD; THENCE NORTH 67 DEGREES 25 MINUTES 37 SECONDS WEST ALONG SAID CENTERLINE 430.34 FEET; THENCE NORTH 67 DEGREES 01 MINUTES 14 SECONDS WEST 385.39 FEET; THENCE NORTH 63 DEGREES 41 MINUTES 39 SECONDS WEST 471.48 FEET; THENCE NORTH 26 DEGREES 18 MINUTES 21 SECONDS EAST 634.30 FEET; THENCE NORTH 0 DEGREES 02 MINUTES 53 SECONDS EAST 1,575.60 FEET TO A POINT ON THE EAST/WEST 1/4 LINE OF SECTION 1; THENCE SOUTH 88 DEGREES 31 MINUTES 43 SECONDS EAST ALONG SAID EAST/WEST 1/4 LINE 1,434.48 FEET TO THE EAST 1/4 CORNER OF SECTION 1; THENCE SOUTH 0 DEGREES 10 MINUTES 22 SECONDS WEST 238.25 FEET ALONG THE EAST LINE OF SECTION TO THE WEST 1/4 CORNER OF SECTION 6, TOWN 2 NORTH, RANGE 4 EAST, MARION TOWNSHIP, LIVINGSTON COUNTY, MICHIGAN; THENCE CONTINUING ALONG SAID EAST LINE OF SECTION 1 SOUTH 00 DEGREES 02 MINUTES 10 SECONDS WEST 2,406.91 FEET TO THE POINT OF BEGINNING.



**NOTES:**

1. ALL BEARINGS ARE GRID BEARINGS AND ARE BASED ON UTM ZONE 17 NORTH, HAD-83. ALL DISTANCES ARE REPRESENTED IN GRID VALUES, MEASURED IN U.S. SURVEY FEET, AND ARE BASED ON SAID HORIZONTAL DATUM.

2. RECORD INFORMATION SHOWN HEREON ARE BASED UPON A PUBLIC RECORDS SEARCH PROVIDED BY ROVER PIPELINE LLC

3. THIS PLAT OF EASEMENT IS BASED UPON OBSERVABLE FIELD EVIDENCE, PRIOR SURVEYS, AND DOCUMENTS OF RECORD, BUT DOES NOT CONSTITUTE A COMPLETE BOUNDARY SURVEY AND SHOULD NOT BE RELIED UPON AS SUCH.

4. FOR PERMANENT EASEMENT & TEMPORARY WORKSPACE CONFIGURATION SEE SHEET 2 OF 2.

| | | |
|---|---|---|
| CENTERLINE LENGTH: | 2358.03 FT | 142.91 RDS |
| PERMANENT EASEMENT: | 117601 SF | 2.71 AC |
| TEMPORARY WORKSPACE: | 201566 SF | 4.83 AC |
| ADDITIONAL TEMPORARY WORKSPACE: | 0 SF | 0.00 AC |

**ROVER PIPELINE LLC**

GULLETT & ASSOCIATES, INC.
7158 OFFICE CITY DRIVE   HOUSTON, TEXAS 77087
(713) 644-0219   www.gullettinc.com

ROVER PIPELINE LLC
HORIZONTAL ITEMS

PROPOSED 60' WIDE PERMANENT
R/W & EASEMENT
ACROSS
ELAINE AND MICHAEL SIMCHECK
LIVINGSTON COUNTY, MICHIGAN

| REV. | DESCRIPTION | BY | DATE |
|---|---|---|---|
| 0 | INITIAL RELEASE | KDH | 07/14/15 |
| 1 | REVISED PERMANENT EASEMENT | G&A | 09/08/15 |
| 2 | REVISED DRAWING | G&A | 10/24/15 |
| 3 | REVISED DRAWING | G&A | 01/15/16 |
| 4 | REVISED TEMPORARY WORKSPACE | G&A | 06/21/16 |
| 5 | REVISED TEMPORARY WORKSPACE | G&A | 09/24/16 |
| 6 | REVISED RECORDING INFORMATION | G&A | 01/26/17 |

| | |
|---|---|
| SCALE 1" = 600' | DRAWN BY: G&A |
| PROJ: ROVER-MARKET | CHECKED BY: S&A |

PROJ. No.
SHEET No. 1 OF 2

A

13



EXHIBIT A
LIVINGSTON COUNTY, MICHIGAN
SECTION 1, T-2-N, R-3-E
IOSCO TOWNSHIP, MICHIGAN MERIDIAN

DETAIL
PERMANENT EASEMENT &
TEMPORARY WORKSPACE
CONFIGURATION

ROVER PIPELINE LLC



**EXHIBIT A**
LIVINGSTON COUNTY, MICHIGAN
SECTION 1, T-2-N, R-3-E
IOSCO TOWNSHIP, MICHIGAN MERIDIAN

**EXHIBIT A**
**LIVINGSTON COUNTY, MICHIGAN**
**SECTION 1, T-2-N, R-3-E**
**IOSCO TOWNSHIP, MICHIGAN MERIDIAN**

PROPERTY INFORMATION
(PARCEL TAX ID NO. 4709-01-400-001)

PROPERTY DESCRIPTION (PER LIBER 4105, PAGE 310 AND REF. #: 2013R-023392 L.C.R.)

PARCEL 4: PART OF THE SOUTHEAST 1/4 OF SECTION 1, TOWN 2 NORTH, RANGE 3 EAST, IOSCO TOWNSHIP, LIVINGSTON COUNTY, MICHIGAN, DESCRIBED AS: BEGINNING AT THE SOUTHEAST CORNER OF SECTION 1; THENCE NORTH 88 DEGREES 35 MINUTES 57 SECONDS WEST 539.62 FEET TO A POINT IN THE CENTERLINE OF CROFOOT ROAD; THENCE NORTH 67 DEGREES 25 MINUTES 37 SECONDS WEST ALONG SAID CENTERLINE 430.34 FEET; THENCE NORTH 67 DEGREES 01 MINUTES 14 SECONDS WEST 385.39 FEET; THENCE NORTH 63 DEGREES 41 MINUTES 39 SECONDS WEST 471.48 FEET; THENCE NORTH 26 DEGREES 18 MINUTES 21 SECONDS EAST 634.30 FEET; THENCE NORTH 0 DEGREES 02 MINUTES 53 SECONDS EAST 1,575.60 FEET TO A POINT ON THE EAST/WEST 1/4 LINE OF SECTION 1; THENCE SOUTH 88 DEGREES 31 MINUTES 43 SECONDS EAST ALONG SAID EAST/WEST 1/4 LINE 1,434.48 FEET TO THE EAST 1/4 CORNER OF SECTION 1; THENCE SOUTH 0 DEGREES 10 MINUTES 22 SECONDS WEST 238.25 FEET ALONG THE EAST LINE OF SECTION TO THE WEST 1/4 CORNER OF SECTION 6, TOWN 2 NORTH, RANGE 4 EAST, MARION TOWNSHIP, LIVINGSTON COUNTY, MICHIGAN; THENCE CONTINUING ALONG SAID EAST LINE OF SECTION 1 SOUTH 00 DEGREES 02 MINUTES 10 SECONDS WEST 2,406.91 FEET TO THE POINT OF BEGINNING.

NOTES:

1. ALL BEARINGS ARE GRID BEARINGS AND ARE BASED ON UTM ZONE 17 NORTH, NAD-83. ALL DISTANCES ARE REPRESENTED IN GRID VALUES, MEASURED IN U.S. SURVEY FEET, AND ARE BASED ON SAID HORIZONTAL DATUM.

2. RECORD INFORMATION SHOWN HEREON ARE BASED UPON A PUBLIC RECORDS SEARCH PROVIDED BY ROVER PIPELINE LLC

3. THIS PLAT OF EASEMENT IS BASED UPON OBSERVABLE FIELD EVIDENCE, PRIOR SURVEYS, AND DOCUMENTS OF RECORD, BUT DOES NOT CONSTITUTE A COMPLETE BOUNDARY SURVEY AND SHOULD NOT BE RELIED UPON AS SUCH.

| REV. | DESCRIPTION | BY | DATE |
|------|-------------|-----|------|
| 1 | REVISED DRAWING | G&A | 03/14/18 |
| 2 | REVISED RECORDING INFORMATION | G&A | 01/26/17 |
| | | | |
| | | | |
| | | | |

**ROVER PIPELINE LLC**

GULLETT & ASSOCIATES, INC.
7455 OFFICE CITY DRIVE   HOUSTON, TEXAS 77087
(713) 644—3215   www.gulcollins.com

ROVER PIPELINE LLC
HOUSTON, TEXAS
PROPOSED 30' WIDE
TEMPORARY ACCESS ROAD
ACROSS
ELAINE AND MICHAEL SHICHECK
LIVINGSTON COUNTY, MICHIGAN

| SCALE: | N/A | DRAWN BY | G&A | FILE No. |
| PROJ. ROVER-MARKET | CHECKED BY: G&A | SHEET No.: 2 OF 2 |



EXHIBIT A
LIVINGSTON COUNTY, MICHIGAN
SECTION 1 & 12, T-2-N, R-3-E
IOSCO TOWNSHIP, MICHIGAN MERIDIAN

PROPERTY INFORMATION
(PARCEL TAX ID NO. 4709-12-100-007)

PROPERTY DESCRIPTION (PER LIBER 4422, PAGE 770 AND REF. #: 2013R-023392 L.C.R.)

PARCEL 2: PART OF SECTIONS 1 AND 12, TOWN 2 NORTH, RANGE 3 EAST, IOSCO TOWNSHIP, LIVINGSTON COUNTY, MICHIGAN, DESCRIBED AS: BEGINNING AT THE INTERSECTION OF THE NORTH LINE OF SECTION 12 AND THE CENTERLINE OF CROFOOT ROAD, SO-CALLED, WHICH IS NORTH 88 DEGREES 35 MINUTES 57 SECONDS WEST 539.62 FEET FROM THE NORTHEAST CORNER OF SECTION 12; THENCE NORTH 88 DEGREES 35 MINUTES 37 SECONDS WEST 757.33 FEET; THENCE SOUTH 00 DEGREES 00 MINUTES 58 SECONDS WEST 1,321.44 FEET; THENCE NORTH 88 DEGREES 41 SECONDS WEST 2,602.33 FEET; THENCE NORTH 00 DEGREES 22 MINUTES 46 SECONDS EAST 1,252.94 FEET; THENCE NORTH 34 DEGREES 01 MINUTES EAST 123.98 FEET; THENCE SOUTH 54 DEGREES 23 MINUTES EAST 314.72 FEET; THENCE SOUTH 31 DEGREES 58 MINUTES 31 SECONDS EAST 299.82 FEET; THENCE SOUTH 66 DEGREES 53 MINUTES EAST 138.70 FEET; THENCE SOUTH 62 DEGREES 58 MINUTES 01 SECONDS EAST 145.81 FEET; THENCE SOUTH 83 DEGREES 19 MINUTES EAST 140.0 FEET; THENCE SOUTH 75 DEGREES 36 MINUTES 47 SECONDS EAST 44.76 FEET; THENCE SOUTH 51 DEGREES 52 MINUTES EAST 78.35 FEET; THENCE SOUTH 83 DEGREES 05 MINUTES EAST 104.11 FEET; THENCE NORTH 29 DEGREES 32 MINUTES EAST 137.0 FEET; THENCE NORTH 53 DEGREES 11 MINUTES 23 SECONDS EAST 95.21 FEET; THENCE SOUTH 84 DEGREES 56 MINUTES 49 SECONDS EAST 248.27 FEET; THENCE NORTH 78 DEGREES 49 MINUTES 41 SECONDS EAST 9.40 FEET; THENCE NORTH 00 DEGREES 11 MINUTES 00 SECONDS EAST 1,233.77 FEET; THENCE ALONG THE CENTERLINE OF CROFOOT ROAD, SO-CALLED, SOUTH 63 DEGREES 41 MINUTES 39 SECONDS EAST 1,233.12 FEET; THENCE SOUTH 67 DEGREES 01 MINUTES 14 SECONDS EAST 385.39 FEET; THENCE SOUTH 67 DEGREES 25 MINUTES 37 SECONDS EAST 430.34 FEET TO THE POINT OF BEGINNING, AND THAT PART OF THE EAST 1/2 OF SECTION 12, TOWN 2 NORTH, RANGE 3 EAST, IOSCO TOWNSHIP, LIVINGSTON COUNTY, MICHIGAN, DESCRIBED AS: COMMENCING AT THE NORTHEAST CORNER OF SECTION 12; THENCE NORTH 88 DEGREES 35 MINUTES 25 SECONDS WEST 1,296.57 FEET TO AN IRON; THENCE SOUTH 00 DEGREES 02 MINUTES 58 SECONDS WEST 199.61 FEET TO AN IRON IN THE WESTERLY LINE OF THE DETROIT EDISON COMPANY'S TRANSMISSION LINE CORRIDOR AND THE POINT OF BEGINNING; THENCE CONTINUING SOUTH 00 DEGREES 02 MINUTES 58 SECONDS WEST 1,122.05 FEET TO AN IRON; THENCE SOUTH 88 DEGREES 35 MINUTES 30 SECONDS EAST 548.54 FEET TO AN IRON IN THE WESTERLY LINE OF THE DETROIT EDISON COMPANY'S TRANSMISSION LINE CORRIDOR; THENCE ALONG SAID WESTERLY LINE NORTH 25 DEGREES 42 MINUTES 50 SECONDS WEST 1,260.36 FEET TO THE POINT OF BEGINNING.

| | | | |
|---|---|---|---|
| CENTERLINE LENGTH: | 289.31 | FT | 17.53 RDS |
| PERMANENT EASEMENT: | 14466 | SF | 0.33 AC |
| TEMPORARY WORKSPACE: | 39482 | SF | 0.91 AC |
| ADDITIONAL TEMPORARY WORKSPACE: | 0 | SF | 0.00 AC |

NOTES:
1. ALL BEARINGS ARE GRID BEARINGS AND ARE BASED ON UTM ZONE 17 NORTH, NAD 83. ALL DISTANCES ARE REPRESENTED ON GRID VALUES, MEASURED IN U.S. SURVEY FEET, AND ARE BASED ON SAID HORIZONTAL DATUM.
2. RECORD INFORMATION SHOWN HEREON ARE BASED UPON A PUBLIC RECORDS SEARCH PROVIDED BY ROVER PIPELINE LLC.
3. THIS PLAT OF EASEMENT IS BASED UPON OBSERVABLE FIELD EVIDENCE, PRIOR SURVEYS, AND DOCUMENTS OF RECORD, BUT DOES NOT CONSTITUTE A COMPLETE BOUNDARY SURVEY AND SHOULD NOT BE RELIED UPON AS SUCH.
4. FOR PERMANENT EASEMENT & TEMPORARY WORKSPACE CONFIGURATION SEE SHEET 2 OF 2.

| REV. | DESCRIPTION | BY | DATE |
|---|---|---|---|
| 0 | INITIAL RELEASE | KGH | 07/14/15 |
| 1 | REVISED PERMANENT EASEMENT | G&A | 03/28/16 |
| 2 | REVISED DRAWING | G&A | 5/5/2016 |
| 3 | REVISED RECORDING INFORMATION | G&A | 03/25/16 |
| 4 | REVISED TEMPORARY WORKSPACE | GTA | 06/13/16 |
| 5 | REVISED TEMPORARY WORKSPACE | G&A | 08/12/16 |

ROVER PIPELINE LLC

GULLETT & ASSOCIATES, INC.
7156 OFFICE CITY DRIVE, HOUSTON, TEXAS 77087
(713) 644-3219   www.gullettinc.com

ROVER PIPELINE LLC
PROPOSED 50' WIDE PERMANENT R/W & EASEMENT ACROSS
CENTRAL MICHIGAN HOLDINGS, LLC AND M.A.S.F. PROPERTIES, LLC
LIVINGSTON COUNTY, MICHIGAN

| SCALE: 1" = 800' | DRAWN BY: G&A | PROJ NO: |
|---|---|---|
| PROJ: ROVER-MARKET | CHECKED BY G&A | SHEET NO: 1 OF 2 |



EXHIBIT A
LIVINGSTON COUNTY, MICHIGAN
SECTION 1 & 12, T-2-N, R-3-E
IOSCO TOWNSHIP, MICHIGAN MERIDIAN

DETAIL
PERMANENT EASEMENT &
TEMPORARY WORKSPACE
CONFIGURATION

GRAPHIC SCALE

(IN FEET)
1 INCH = 200 FT

ROVER PIPELINE LLC

GULLETT & ASSOCIATES, INC.

**Index # 793**

**Database # 793**

**Improved Sale**

## Sale Analysis

| | | | | | |
|---|---|---|---|---|---|
| Grantor | Filkins | Sales Price | 155,000 | Property Type | Agricultural |
| Grantee | Mills | Other Contrib. | | Primary Land Use | Agricultural |
| Deeded Acres | 38.5 | Net Sale Price | 155,000 | Tax Parcel | 4706-02-400-005 |
| Sale Date/DOM | 12/29/2016 / | $/Deeded Acre | 4,025.97 | Topography | Undulating/GR |
| Prior Sale Date | | Financing | | | |
| Prior CEV Price | | % Fin. Adj. | | | |
| Analysis Code | | CEV Price | 155,000 | | |
| Source | MLS/Equi/Insp | SCA Unit Type | | | |
| Motivation | Normal | Eff. Unit Size | | | |
| Highest & Best Use | Agricultural | SCA $/Unit | | | |
| Address | | Multiplier Unit | | | |
| City | | Multiplier No. | | | |
| County/County Code | Livingston/093 | Legal Access | | | |
| State/Zip | MI/ | Physical Access | | | |
| Region/Area/Zone | // | View | | Tax ID/Recording | 2017R-001415 |
| Location | 2-Howell | Utilities | Rural | Sec/Twp/Rge | 2/3N/4E |
| Legal Description: See Attached | | | | | |

## Land-Mix Analysis

| Land Use | Ratio | Acres | $/Acre | Unit Size | Unit Type | $/Unit | | Total Unit Value |
|---|---|---|---|---|---|---|---|---|
| Cropland | 100 % | 25.25 Ac | 3,845 | | | X $ | = $ | 97,086 |
| Roads & Waste | 0 % | 1 Ac | 0 | | | X $ | = $ | 0 |
| Woods | 75 % | 11 Ac | 2,883.75 | | | X $ | = $ | 31,721 |
| Bldg Site | 100 % | 1.25 Ac | 3,845 | | | X $ | = $ | 4,806 |
| | % | Ac | | | | X $ | = $ | |
| | % | Ac | | | | X $ | = $ | |
| | % | Ac | | | | X $ | = $ | |
| | % | Ac | | | | X $ | = $ | |
| | % | Ac | | | | X $ | = $ | |
| | % | Ac | | | | X $ | = $ | |
| **Totals** | | 38.5 Ac | 3,470.49 | | | X $ | = $ | 133,613 |
| **CEV Price $ 155,000** | | - Land Contribution $ 133,613 | | = Improvement Contribution $ 21,387 | | | | |

## Income Analysis

Income Estimate Basis: Cash   Share   Owner/Operator

| Income Source Actual Estimated | Units | Unit Measure | Stabilized Yield | Total Production | | Cash/Share/Owner Income | |
|---|---|---|---|---|---|---|---|
| | | | | Stabilized $/Unit | Gross Income | Share % | Income $ |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Improvements   Improvements Included in Land Rent   /mo   /yr

Stabilized Gross Income = $

| Expense Items: | Expenses (cont): | Expenses (cont): |
|---|---|---|
| Real Estate Tax $ | $ | $ |
| Insurance $ | $ | $ |
| Maintenance $ | $ | $ |
| Management $ | $ | $ |

Total Expenses  / Stabilized G.I.   = Expense Ratio  %   Total Expenses = $

Net Income  / CEV Price 155,000   = Cap Rate  %   Net Income = $

A
19

## Improvement Analysis

| Type | Size | Utility | Cond | Effective Age | RCN/Unit | RCN | % Phys | % Funct | % Extern | Total Imp Contrib | Contrib $/Unit |
|------|------|---------|------|---------------|----------|-----|--------|---------|----------|-------------------|----------------|
| Misc | 9,354 | Fair | Fair | 35 | 19.05 | 178,194 | 88.00 | | | 21,383 | 2.29 |

Physical Depreciation 88%   Functional Obsolescence 0%   External obsolescence 0%   Total Depreciation 88%

Total RCN $178,194   Total Improvement Contribution $21,383   Improvement as % of Price 14%

## Comments

38.5 acre agricultural parcel with a barn, milk house, and two agricultural use utility buildings. Buildings has minimal contributing value to overall parcel and were lumped together in the building analysis. Property is located approximately 3 miles north of Howell, Michigan in a mixed residential/agricultural/recreational use area. No noted adverse neighborhood conditions at time of inspection from roadway. Buildings are in the southwest corner of the parcel.

PHOTO OF COMPARABLE SALE #793
PHOTOS TAKEN 8/22/2017 BY D. HODGE



LOOKING EASTERLY FROM CENTER OF PARCEL



BARNS/OUTBUILDINGS IN SW CORNER OF PARCEL

## Aerial Map



map center: 42° 40' 42.63, -83° 56' 37.89

0ft        259ft        518ft

**2-3N-4E**
**Livingston County**
**Michigan**

8/25/2017

Field borders provided by Farm Service Agency as of 5/21/2008.

A
22

## Soils Map





| | |
|---|---|
| State: | **Michigan** |
| County: | Livingston |
| Location: | 2-3N-4E |
| Township: | Howell |
| Acres: | 38.5 |
| Date: | 8/25/2017 |



 

Soils data provided by USDA and NRCS.

©2017 AgriData, Inc.

**Area Symbol: MI093, Soil Area Version: 14**

| Code | Soil Description | Acres | Percent of field | Non-Irr Class Legend | Non-Irr Class *c | Alfalfa hay | Bromegrass alfalfa hay | Corn | Corn silage | Oats | Soybeans | Winter wheat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| By | Brookston loam, 0 to 2 percent slopes | 9.82 | 25.5% | | IIw | | | | | | | |
| CvB | Conover loam, 2 to 6 percent slopes | 8.16 | 21.2% | | IIw | | | | | | | |
| MoB | Miami loam, 2 to 6 percent slopes | 5.67 | 14.7% | | IIe | 4.8 | | 120 | 19 | 95 | 35 | 60 |
| MIB | Metamora sandy loam, 0 to 4 percent slopes | 4.13 | 10.7% | | IIe | 4.8 | 3.5 | 125 | 20 | 100 | 40 | 60 |
| OmB | Owosso-Miami sandy loams, 2 to 6 percent slopes | 3.35 | 8.7% | | IIe | 3.5 | | 115 | 19 | 95 | 35 | 55 |
| Cc | Carlisle muck, 0 to 2 percent slopes | 2.97 | 7.7% | | Vw | | | | | | | |
| MoC | Miami loam, 6 to 12 percent slopes | 2.92 | 7.6% | | IIIe | 4.8 | | 120 | 19 | 95 | 35 | 60 |
| BrB | Boyer loamy sand, 2 to 6 percent slopes | 0.66 | 1.7% | | IIIs | 3.8 | 2.7 | 80 | 14 | 60 | 30 | 35 |
| HIB | Hillsdale sandy loam, 2 to 6 percent slopes | 0.56 | 1.5% | | IIe | 4 | | 105 | 18 | 85 | 30 | 45 |
| BrC | Boyer loamy sand, 6 to 12 percent slopes | 0.26 | 0.7% | | IIIe | 3.4 | 2.4 | 75 | 12 | 55 | 26 | 32 |
| | **Weighted Average** | | | | | 2 | 0.4 | 53.6 | 8.6 | 42.8 | 16.3 | 26.1 |

*c: Using Capabilities Class Dominant Condition Aggregation Method

Soils data provided by USDA and NRCS.

LIVINGSTON COUNTY TREASURER'S CERTIFICATE

I hereby certify that there are no TAX LIENS OR TITLES held by the State or any individual against the within description, and all TAXES are same as paid for five years previous to the date of this instrument or appear on the records in this office except as stated.

Jennifer M. Nash, Treasurer

2016   Taxes not examined Certificate # 05157

2017R-001415
RECORDED ON
01/13/2017 8:16:17 AM
BRANDON DENBY
REGISTER OF DEEDS
LIVINGSTON COUNTY, MI 48843
RECORDING: 26.00
REMON: 4.00
PAGES: 2

STATE OF MICHIGAN
Livingston County
01/13/2017
2017R-001415

REAL ESTATE TRANSFER TAX
$170.50 CO
$1162.50 ST
TTX# 6168464

### TRUSTEE DEED

The Grantor, BEVERLY J. CHESNEY, Trustee of the KENNETH F. FILKINS LIVING TRUST, dated June 6, 2000, whose address is 2396 Byron Road, Howell, MI 48855, conveys, grants, bargains, remises, releases, and confirms to JOHN E. MILLS, whose address is 1750 Oak Grove Road, Howell, MI 48855, the following described premises situated in the Township of Howell, County of Livingston, State of Michigan to wit:

### SEE ATTACHED EXHIBIT A

For the sum of One Hundred Fifty Five Thousand Dollars ($155,000.00)

Together with all and singular tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, subject to building and use restrictions and easements and existing oil and gas leases of record, if any, the lien of taxes not yet due and payable and zoning ordinances. Grantor covenants and agrees that Grantor has not previously done or committed or willingly suffered to be done or committed any act, matter, or thing that would cause the premises or any part of them to be charged or encumbered in title, estate, or otherwise.

The Grantor grants to the Grantee the right to make all divisions under section 108 of the Land Division Act, Act No 288 of the Public Acts of 1967, as amended.

This property may be located within the vicinity of farmland or a farm operation. Generally accepted agricultural and management practices that may generate noise, dust, odors, and other associated conditions may be used and are protected by the Michigan Right to Farm Act.

County Transfer Tax: $170.50          State Transfer Tax: $1,162.50

Dated: 12/28/16

Signed by:

Beverly J. Chesney, Trustee of the
KENNETH F. FILKINS LIVING TRUST,
Dated June 6, 2000

STATE OF MICHIGAN    )
                     )SS
COUNTY OF LIVINGSTON )

The foregoing instrument was acknowledged before me on December 29, 2016 by Beverly J. Chesney, Trustee of the KENNETH F. FILKINS LIVING TRUST, dated June 6, 2000.

_____, Notary Public
_____ County, Michigan
My Commission Expires: _____
Acting in _____ County, Michigan

**Jeffrey A Smith**
NOTARY PUBLIC FOR LIVINGSTON COUNTY
STATE OF MICHIGAN
ACTING IN *Livingston* COUNTY
MY COMMISSION EXPIRES: 01-20-2019

.10544

When Recorded Return To:          Send Subsequent Tax Bills To:          Drafted By:
                                                                          Frank J. Mancuso, Jr. (P-49470)
                                                                          722 E. Grand River Ave, Brighton, MI
                                                                          48116        (810) 225-3300

Grantee  J Mills              Grantee
1750 Oak Grove               Howell Mi 48855

Parcel Number-4706-02-400-005 | Howell Township | AccessMyGov.com

Image/Sketch for Parcel: 4706-02-400-005



Sketch by Apex Sketch

**Disclaimer: BS&A Software provides AccessMyGov.com as a way for municipalities to display information online and is not responsible for the content or accuracy of the data herein. This data is provided for reference only and WITHOUT WARRANTY of any kind, expressed or inferred. Please contact your local municipality if you believe there are errors in the data.

Copyright © 2017 BS&A Software, Inc.

https://accessmygov.com/SiteSearch/PrintAttachment?SearchFocus=Assessing&SearchCat...   8/25/2017

**Sale Analysis**

| Index # 792 | | Database # 792 | | | Improved Sale |
|---|---|---|---|---|---|
| Grantor | Simko | Sales Price | 210,000 | Property Type | Agricultural |
| Grantee | Vangilder | Other Contrib. | | Primary Land Use | Agricultural |
| Deeded Acres | 30 | Net Sale Price | 210,000 | Tax Parcel | 4701-20-400-003 |
| Sale Date/DOM | 12/20/2016 / | $/Deeded Acre | 7,000 | Topography | GR/Rolling |
| Prior Sale Date | | Financing | | | |
| Prior CEV Price | | % Fin. Adj. | | | |
| Analysis Code | | CEV Price | 210,000 | | |
| Source | Equal/MLS/Insp | SCA Unit Type | | | |
| Motivation | Normal | Eff. Unit Size | | | |
| Highest & Best Use | Agricultural | SCA $/Unit | | | |
| Address | | Multiplier Unit | | | |
| City | | Multiplier No. | | | |
| County/County Code | Livingston/093 | Legal Access | | | |
| State/Zip | MI/ | Physical Access | | | |
| Region/Area/Zone | /I | View | | Tax ID/Recording | 2016-039707 |
| Location | 20 Conway | Utilities | Rural | Sec/Twp/Rge | 20/4N/3E |
| Legal Description: | See Attached | | | | |

## Land-Mix Analysis

| Land Use | Ratio | Acres | $/Acre | Unit Size | Unit Type | $/Unit | Total Unit Value |
|---|---|---|---|---|---|---|---|
| Cropland | 100 % | 22.75 Ac | 5,250 | | | X $ ___ = $ | 119,438 |
| Roads & Waste | 0 % | 1.5 Ac | 0 | | | X $ ___ = $ | 0 |
| Woods | 75 % | 4.5 Ac | 3,937.5 | | | X $ ___ = $ | 17,719 |
| Bldg Site | 100 % | 1.25 Ac | 5,250 | | | X $ ___ = $ | 6,563 |
| | % | Ac | | | | X $ ___ = $ | |
| | % | Ac | | | | X $ ___ = $ | |
| | % | Ac | | | | X $ ___ = $ | |
| | % | Ac | | | | X $ ___ = $ | |
| | % | Ac | | | | X $ ___ = $ | |
| | % | Ac | | | | X $ ___ = $ | |
| Totals | | 30 Ac | 4,790.63 | | | X $ ___ = $ | 143,720 |

CEV Price $ 210,000          - Land Contribution $ 143,720          = Improvement Contribution $ 66,280

## Income Analysis

Income Estimate Basis: Cash   Share   Owner/Operator

| Income Source Actual Estimated | Units | Unit Measure | Stabilized Yield | Total Production | | Cash/Share/Owner Income | |
|---|---|---|---|---|---|---|---|
| | | | | Stabilized $/Unit | Gross Income | Share % | Income $ |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Improvements | Improvements Included in Land Rent | | /mo | /yr | | | |
| | | | | | | Stabilized Gross Income = $ | |

| Expense Items: | | Expenses (cont): | | Expenses (cont): | |
|---|---|---|---|---|---|
| Real Estate Tax | $ | | $ | | $ |
| Insurance | $ | | $ | | $ |
| Maintenance | $ | | $ | | $ |
| Management | $ | | $ | | $ |

Total Expenses  / Stabilized G.I.  = Expense Ratio  %  Total Expenses = $

Net Income  / CEV Price 210,000  = Cap Rate  %  Net Income = $

## Improvement Analysis

| Type | Size | Utility | Cond | Effective Age | RCN/Unit | RCN | % Phys | % Funct | % Extern | Total Imp Contrib | Contrib $/Unit |
|------|------|---------|------|---------------|----------|-----|--------|---------|----------|-------------------|----------------|
| Dwelling | 960 | Avg | Fair | 25 | 125 | 120,000 | 50.00 | | | 60,000 | 62.5 |
| Shed | 1,040 | Fair | Fair | 20 | 17.75 | 18,460 | 66.00 | | | 6,276 | 6.03 |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | A-Avg | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

**Physical Depreciation 52%**   **Functional Obsolescence 0%**   **External obsolescence 0%**   **Total Depreciation 52%**

**Total RCN $138,460**   **Total Improvement Contribution $66,276**   **Improvement as % of Price 32%**

## Comments

Agricultural parcel of land with dwelling and outbuilding. Dwelling appears updated, shed is older in age with little overall contributing value to parcel. Gently rolling to rolling topography. Area is mostly agricultural in land use. Located approximately 4 miles northwest of Fowlerville, MI. No noted adverse neighborhood conditions at time of inspection from roadway.

PHOTO OF COMPARABLE SALE #792
PHOTOS TAKEN 8/22/2017 BY D. HODGE



LOOKING NORTHWEST FROM SOUTHEAST CORNER



DWELLING

## Aerial Map



map center: 42° 42' 58.16, -84° 7' 3.63

0ft      262ft      525ft

**Farmers National Company.**

Maps Provided By:

**surety**

© AgriData, Inc. 2017   www.AgriData.com

**20-4N-3E**
**Livingston County**
**Michigan**

8/25/2017

Field borders provided by Farm Service Agency as of 5/21/2008.

A
29

## Soils Map





| State: | **Michigan** |
| County: | **Livingston** |
| Location: | **20-4N-3E** |
| Township: | **Conway** |
| Acres: | **30** |
| Date: | **8/25/2017** |







Soils data provided by USDA and NRCS.

### Area Symbol: MI093, Soil Area Version: 14

| Code | Soil Description | Acres | Percent of field | Non-Irr Class Legend | Non-Irr Class *c | Alfalfa hay | Corn | Corn silage | Grass legume hay | Oats | Pasture | Soybeans | Winter wheat |
|------|------------------|-------|------------------|----------------------|-------------------|-------------|------|-------------|------------------|------|---------|----------|--------------|
| OmB | Owosso-Miami sandy loams, 2 to 6 percent slopes | 17.52 | 58.4% | | IIe | 3.5 | 115 | 19 | | 95 | | 35 | 55 |
| MoB | Miami loam, 2 to 6 percent slopes | 5.38 | 17.9% | | IIe | 4.8 | 120 | 19 | | 95 | | 35 | 60 |
| MoC | Miami loam, 6 to 12 percent slopes | 4.19 | 14.0% | | IIIe | 4.8 | 120 | 19 | | 95 | | 35 | 60 |
| By | Brookston loam, 0 to 2 percent slopes | 2.03 | 6.8% | | IIw | | | | | | | | |
| MrB | Miami-Conover loams, 2 to 6 percent slopes | 0.49 | 1.6% | | IIe | 4.8 | 120 | 19 | | 95 | | 35 | 60 |
| Cc | Carlisle muck, 0 to 2 percent slopes | 0.39 | 1.3% | | Vw | | | | | | | | |
| | | | | **Weighted Average** | | 3.7 | 107.4 | 17.5 | *- | 87.3 | *- | 32.2 | 52.2 |

*c:  Using Capabilities Class Dominant Condition Aggregation Method

Soils data provided by USDA and NRCS.



**10110 SHERWOOD RD** MI   (Property Address)

Parcel Number: 4701-20-400-003

**Property Owner:** VANGILDER PROPERTIES, LLC

*Summary Information*

> Residential Building Summary
- Year Built: 1940
- Full Baths: 1
- Sq. Feet: 960

- Bedrooms: 2
- Half Baths: 0
- Acres: 30.000

> Assessed Value: $95,610 | Taxable Value: $95,610
> Property Tax information found

No Images Found

## Owner and Taxpayer Information

| | | | |
|---|---|---|---|
| Owner | VANGILDER PROPERTIES, LLC<br>7640 LAYTON ROAD<br>FOWLERVILLE, MI 48836 | Taxpayer | SEE OWNER INFORMATION |

## General Information for Tax Year 2017

| | | | |
|---|---|---|---|
| Property Class | AG-IMPROVED | Unit | 4701 CONWAY TOWNSHIP |
| School District | FOWLERVILLE | Assessed Value | $95,610 |
| MAP # | No Data to Display | Taxable Value | $95,610 |
| USER NUM IDX | 0 | State Equalized Value | $95,610 |
| USER ALPHA 1 | Not Available | Date of Last Name Change | 01/09/2017 |
| USER ALPHA 3 | Not Available | Notes | Not Available |
| Historical District | Not Available | Census Block Group | Not Available |
| USER ALPHA 2 | Not Available | Exemption | No Data to Display |

### Principal Residence Exemption Information

Homestead Date                01/09/2017

| Qualified Agricultural | June 1st | Final |
|---|---|---|
| 2018 | 100.0000 % | |
| 2017 | 100.0000 % | 100.0000 % |

### Previous Year Information

| Year | MBOR Assessed | Final SEV | Final Taxable |
|---|---|---|---|
| 2016 | $90,120 | $90,120 | $57,964 |
| 2015 | $80,630 | $80,630 | $57,791 |
| 2014 | $75,070 | $75,070 | $56,881 |

## Land Information

| | | | |
|---|---|---|---|
| Zoning Code | | Total Acres | 30.000 |
| Land Value | $143,240 | Land Improvements | $0 |
| Renaissance Zone | No | Renaissance Zone Expiration Date | No Data to Display |
| ECF Neighborhood | LESS THAN 40 ACRE AG PROPERTIES | Mortgage Code | No Data to Display |
| Lot Dimensions/Comments | No Data to Display | Neighborhood Enterprise Zone | No |

| Lot(s) | Frontage | Depth |
|---|---|---|
| No lots found. | | |
| **Total Frontage: 0.00 ft** | | **Average Depth: 0.00 ft** |

## Legal Description

SEC 20 T4N R3E SE 1/4 OF SE 1/4 EXC A SQ 10 A IN NE COR 30 AC M/L

## Land Division Act Information

| | | | |
|---|---|---|---|
| Date of Last Split/Combine | No Data to Display | Number of Splits Left | 0 |
| Date Form Filed | No Data to Display | Unallocated Div.s of Parent | 0 |
| Date Created | No Data to Display | Unallocated Div.s Transferred | 0 |
| Acreage of Parent | 0.00 | Rights Were Transferred | Not Available |

A
31

| Split Number | 0 | Courtesy Split | Not Available |
| Parent Parcel | No Data to Display | | |

## Sale History

| Sale Date | Sale Price | Instrument | Grantor | Grantee | Terms of Sale | Liber/Page |
|-----------|-----------|------------|---------|---------|---------------|------------|
| 12/20/2016 | $210,000.00 | WD | SIMKO, GEORGE JR | VANGILDER PROPERTIES, LLC | WARRANTY DEED | 2016-039707 |
| 08/02/2016 | $0.00 | WD | RADINOVICH, JOHN | SIMKO, GEORGE JR | WARRANTY DEED | 2016-023183 |

## Building Information - 960 sq ft FARMHOUSE (Residential)

### General

| | | | |
|---|---|---|---|
| Floor Area | 960 sq ft | Estimated TCV | $39,243 |
| Garage Area | 0 sq ft | Basement Area | 768 sq ft |
| Foundation Size | 768 sq ft | | |
| Year Built | 1940 | Year Remodeled | Not Available |
| Occupancy | Single Family | Class | D |
| Effective Age | 55 yrs | Tri-Level | No |
| Percent Complete | 100% | Heat | Forced Air w/ Ducts |
| AC w/Separate Ducts | No | Wood Stove Add-on | No |
| Basement Rooms | 0 | Water | Water Well |
| 1st Floor Rooms | 0 | Sewer | Septic |
| 2nd Floor Rooms | 0 | Style | FARMHOUSE |
| Bedrooms | 2 | | |

### Area Detail - Basic Building Areas

| Height | Foundation | Exterior | Area | Heated |
|--------|-----------|----------|------|--------|
| 1.25 Story | Basement | Siding | 768 sq ft | 1.25 Story |

### Basement Finish

| | | | |
|---|---|---|---|
| Recreation | 0 sq ft | Recreation % Good | 0% |
| Living Area | 0 sq ft | Living Area % Good | 0% |
| Walk Out Doors | 0 | No Concrete Floor Area | 0 sq ft |

### Plumbing Information

| 3 Fixture Bath | 1 |
|----------------|---|

### Porch Information

| | | | |
|---|---|---|---|
| WCP (1 Story) | 24 sq ft | Foundation | Standard |
| WCP (1 Story) | 60 sq ft | Foundation | Standard |

### Deck Information

| Treated Wood | | 24 sq ft |
|--------------|---|----------|

## Building Information - 1040 sq ft Utility Building (Agricultural)

| | | | |
|---|---|---|---|
| Type | Utility Building | Class | D,Pole |
| Floor Area | 1,040 sq ft | Estimated TCV | $7,694 |
| Perimeter | 132 ft | Height | 10 ft |
| Year Built | Not Available | Quality | Average |
| Percent Complete | 100% | Heat | No Heating/Cooling |
| Physical Percent Good | 44% | Functional Percent Good | 100% |
| Economic Percent Good | 100% | Effective Age | 36 yrs |

**Disclaimer: BS&A Software provides AccessMyGov.com as a way for municipalities to display information online and is not responsible for the content or accuracy of the data herein. This data is provided for reference only and WITHOUT WARRANTY of any kind, expressed or inferred. Please contact your local municipality if you believe there are errors in the data.

Copyright © 2017 BS&A Software, Inc.

| Index # 791 | | Database # 791 | | | Unimproved Sale |
|---|---|---|---|---|---|
| Grantor | Young | Sales Price | 99,500 | Property Type | Agricultural |
| Grantee | VanGlider | Other Contrib. | | Primary Land Use | Ag/Rec |
| Deeded Acres | 25 | Net Sale Price | 99,500 | Tax Parcel | 4705-15-300-002 |
| Sale Date/DOM | 03/10/2017 / | $/Deeded Acre | 3,980 | Topography | Undulating |
| Prior Sale Date | | Financing | | | |
| Prior CEV Price | | % Fin. Adj. | | | |
| Analysis Code | | CEV Price | 99,500 | | |
| Source | MLS/Equal/insp | SCA Unit Type | | | |
| Motivation | Normal | Eff. Unit Size | | | |
| Highest & Best Use | Agricultural/Rec | SCA $/Unit | | | |
| Address | | Multiplier Unit | | | |
| City | | Multiplier No. | | | |
| County/County Code | Livingston/093 | Legal Access | | | |
| State/Zip | MI/ | Physical Access | | | |
| Region/Area/Zone | // | View | | Tax ID/Recording | 2017-008768 |
| Location | 15-Handy | Utilities | Rural | Sec/Twp/Rge | 15/3N/3E |
| Legal Description: See Attached | | | | | |

## Land-Mix Analysis

| Land Use | Ratio | Acres | $/Acre | Unit Size | Unit Type | $/Unit | Total Unit Value |
|---|---|---|---|---|---|---|---|
| Cropland | 100 % | 7 Ac | 4,889.43 | | | X $ | = $ 34,226 |
| Roads & Waste | 0 % | 0.2 Ac | 0 | | | X $ | = $ 0 |
| Woods | 75 % | 17.8 Ac | 3,667.08 | | | X $ | = $ 65,274 |
| Bldg Site | 100 % | 0 Ac | 4,889.43 | | | X $ | = $ 0 |
| | % | Ac | | | | X $ | = $ |
| | % | Ac | | | | X $ | = $ |
| | % | Ac | | | | X $ | = $ |
| | % | Ac | | | | X $ | = $ |
| | % | Ac | | | | X $ | = $ |
| | % | Ac | | | | X $ | = $ |
| **Totals** | | 25 Ac | 3,980 | | | X $ | = $ 99,500 |

CEV Price $ 99,500     - Land Contribution $ 99,500     = Improvement Contribution $ 0

## Income Analysis

Income Estimate Basis: Cash   Share   Owner/Operator

| Income Source Actual Estimated | Units | Unit Measure | Stabilized Yield | Total Production | | Cash/Share/Owner Income | |
|---|---|---|---|---|---|---|---|
| | | | | Stabilized $/Unit | Gross Income | Share % | Income $ |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Improvements   Improvements Included in Land Rent   /mo   /yr

Stabilized Gross Income = $

| Expense Items: | Expenses (cont): | Expenses (cont): |
|---|---|---|
| Real Estate Tax | $ | $ | $ |
| Insurance | $ | $ | $ |
| Maintenance | $ | $ | $ |
| Management | $ | $ | $ |

Total Expenses  / Stabilized G.I.   = Expense Ratio  %   Total Expenses = $

Net Income   / CEV Price  99,500   = Cap Rate  %   Net Income = $

## Improvement Analysis

| Type | Size | Utility | Cond | Effective Age | RCN/Unit | RCN | % Phys | % Funct | % Extern | Total Imp Contrib | Contrib $/Unit |
|------|------|---------|------|---------------|----------|-----|--------|---------|----------|-------------------|----------------|
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

Physical Depreciation %    Functional Obsolescence %    External obsolescence %    Total Depreciation %

Total RCN $    Total Improvement Contribution $    Improvement as % of Price %

## Comments

25 acre parcel approx. 1/2 mile west of Fowlerville. Parcel is long and narrow with agricultural use on west end. Gravel road frontage. I-96 frontage on south side of parcel with no access. Commercial/Light industrial use and residential uses to the north and northeast. No noted adverse neighborhood conditions at time of sale. Muck soils on east end of parcel in recreational use area of site. Single pole utility line runs through property north to south.

PHOTO OF COMPARABLE SALE #791
PHOTOS TAKEN 8/22/2017 BY D. HODGE



08/22/2017

LOOKING EAST/SOUTHEAST FROM NORTHWEST CORNER

## Aerial Map



map center: 42° 38' 50.19, -84° 5' 12.19

0ft     479ft     958ft

**15-3N-3E**
**Livingston County**
**Michigan**

8/25/2017

Field borders provided by Farm Service Agency as of 5/21/2008.

A
36

## Soils Map





©2017 AgriData, Inc.

| State: | **Michigan** |
|---|---|
| County: | **Livingston** |
| Location: | **15-3N-3E** |
| Township: | **Handy** |
| Acres: | **25** |
| Date: | **8/25/2017** |



Farmers National Company

 

Soils data provided by USDA and NRCS.

**Area Symbol: MI093, Soil Area Version: 14**

| Code | Soil Description | Acres | Percent of field | Non-Irr Class Legend | Non-Irr Class *c | Alfalfa hay | Bromegrass alfalfa hay | Corn | Corn silage | Oats | Soybeans | Winter wheat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bp | Borrow pits | 7.17 | 28.7% | | | | | | | | | |
| MoB | Miami loam, 2 to 6 percent slopes | 6.93 | 27.7% | | IIe | 4.8 | | 120 | 19 | 95 | 35 | 60 |
| Lm | Linwood muck | 6.21 | 24.8% | | Vw | | | | | | | |
| MlB | Metamora sandy loam, 0 to 4 percent slopes | 4.69 | 18.8% | | IIe | 4.8 | 3.5 | 125 | 20 | 100 | 40 | 60 |
| | | | | | **Weighted Average** | 2.2 | 0.7 | 56.7 | 9 | 45.1 | 17.2 | 27.9 |

*c: Using Capabilities Class Dominant Condition Aggregation Method

Soils data provided by USDA and NRCS.

Handy Township

## General Property Information

**Handy Township**

[Back to Non-Printer Friendly Version]   [Send To Printer]

**Parcel:** 4705-15-300-002   **Unit:** HANDY TOWNSHIP   **Data Current As Of:** 8/25/2017 2:38:51 AM

### Property Address                                                          [collapse]

GREGORY
FOWLERVILLE, MI 48836

### Owner Information                                                         [collapse]

VAN GILDER, NANCY                          **Unit:**          4705
7640 LAYTON
FOWLERVILLE, MI 48836

### Taxpayer Information                                                      [collapse]

SEE OWNER INFORMATION

### General Information for Tax Year 2017                                     [collapse]

| | | | |
|---|---|---|---|
| **Property Class:** | 102 - AG-VACANT | **Assessed Value:** | $75,410 |
| **School District:** | 47030 - FOWLERVILLE | **Taxable Value:** | $21,920 |
| **State Equalized Value:** | $75,410 | **Map #** | |
| **USER NUM IDX** | 0 | **Date of Last Name Chg:** | 05/01/2017 |
| | | **Date Filed:** | 05/01/2017 |
| | | **Notes:** | N/A |
| **Historical District:** | N/A | **Census Block Group:** | N/A |
| **Principal Residence Exemption** | **June 1st** | **Final** | |
| **2017** | 100.0000 % | 100.0000 % | |

| Previous Year Info | MBOR Assessed | Final S.E.V. | Final Taxable |
|---|---|---|---|
| 2016 | $73,460 | $73,460 | $21,730 |
| 2015 | $73,460 | $73,460 | $21,670 |

### Land Information                                                          [collapse]

| | Frontage | | Depth |
|---|---|---|---|
| **Lot 1:** | 0.00 Ft. | | 0.00 Ft. |
| **Lot 2:** | 0.00 Ft. | | 0.00 Ft. |
| **Lot 3:** | 0.00 Ft. | | 0.00 Ft. |
| **Total Frontage:** | 0.00 Ft. | **Average Depth:** | 0.00 Ft. |

| | | | |
|---|---|---|---|
| **Total Acreage:** | 25.00 | | |
| **Zoning Code:** | I-1 | | |
| **Total Estimated Land Value:** | $150,820 | **Mortgage Code:** | |
| **Land Improvements:** | $0 | **Lot Dimensions/Comments:** | N/A |
| **Renaissance Zone:** | NO | | |
| **Renaissance Zone Expiration Date:** | | | |

A
38

Handy Township

## Legal Information for 4705-15-300-002 [collapse]

SEC 15 T3N R3E S 30 AC OF N1/2 OF SW1/4 LYING NLY OF LINE 303 FT NLY OF & AT R ANGLES & PAR TO LINE DESC AS BEG ON W LINE OF SEC N2*W 1118.95 FT OF SW COR, TH S89*E 3000 FT TO POINT OF ENDING, EXC WLY 60 FT OF SLY 120 FT, 25 AC M/L

## Sales Information

2 sale record(s) found.

| Sale Date | Sale Price | Instrument | Grantor | Grantee | Terms Of Sale | Liber/Page |
|-----------|-----------|------------|---------|---------|---------------|-----------|
| 03/10/2017 | $99,500.00 | WD | YOUNG, GEORGE & BEVERLY | VAN GILDER, NANCY | WARRANTY DEED | 2017-008768 |
| 11/05/2003 | $0.00 | IV | YOUNG, GEORGE | YOUNG, GEORGE & BEVERLY | WARRANTY DEED | |

## Building Information

0 building(s) found.

| Description | Floor Area | Yr Built | Est. TCV |
|-------------|-----------|----------|----------|

**Disclaimer:** BS&A Software provides this Web Site as a way for municipalities to display information online and is not responsible for the content or accuracy of the data herein. This data is provided for reference only and WITHOUT WARRANTY of any kind, expressed or inferred. Please contact your local municipality if you believe there are errors in the data.
Privacy Policy

Index # 790      Database # 790      Improved Sale

| Sale Analysis | | | | | |
|---|---|---|---|---|---|
| Grantor | Tomlin | Sales Price | 249,900 | Property Type | Agricultural |
| Grantee | Turner | Other Contrib. | | Primary Land Use | Agricultural |
| Deeded Acres | 54 | Net Sale Price | 249,900 | Tax Parcel | 4705-07-400-024 |
| Sale Date/DOM | 03/30/2017 / | $/Deeded Acre | 4,627.78 | Topography | Undul/GR |
| Prior Sale Date | | Financing | | | |
| Prior CEV Price | | % Fin. Adj. | | | |
| Analysis Code | | CEV Price | 249,900 | | |
| Source | MLS/Equal/Insp | SCA Unit Type | | | |
| Motivation | Normal | Eff. Unit Size | | | |
| Highest & Best Use | Agricultural | SCA $/Unit | | | |
| Address | | Multiplier Unit | | | |
| City | | Multiplier No. | | | |
| County/County Code | Livingston/093 | Legal Access | | | |
| State/Zip | MI/ | Physical Access | | | |
| Region/Area/Zone | // | View | | Tax ID/Recording | 2017-009556 |
| Location | 7-Handy Twp | Utilities | Rural | Sec/Twp/Rge | 7/3N/3E |
| Legal Description: See Attached | | | | | |

## Land-Mix Analysis

| Land Use | Ratio | Acres | $/Acre | Unit Size | Unit Type | $/Unit | | Total Unit Value |
|---|---|---|---|---|---|---|---|---|
| Cropland | 100 % | 38 Ac | 4,460 | | | X $ | = $ | 169,480 |
| Roads & Waste | 0 % | 0.7 Ac | 0 | | | X $ | = $ | 0 |
| Woods | 75 % | 13.5 Ac | 3,345 | | | X $ | = $ | 45,158 |
| Bldg Site | 100 % | 1.8 Ac | 4,460 | | | X $ | = $ | 8,028 |
| | % | Ac | | | | X $ | = $ | |
| | % | Ac | | | | X $ | = $ | |
| | % | Ac | | | | X $ | = $ | |
| | % | Ac | | | | X $ | = $ | |
| | % | Ac | | | | X $ | = $ | |
| | % | Ac | | | | X $ | = $ | |
| **Totals** | | 54 Ac | 4,123.44 | | | X $ | = $ | 222,666 |

CEV Price $ 249,900    - Land Contribution $ 222,666    = Improvement Contribution $ 27,234

## Income Analysis

Income Estimate Basis: Cash   Share   Owner/Operator

| Income Source Actual Estimated | Units | Unit Measure | Stabilized Yield | Total Production | | Cash/Share/Owner Income | |
|---|---|---|---|---|---|---|---|
| | | | | Stabilized $/Unit | Gross Income | Share % | Income $ |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Improvements   Improvements Included in Land Rent   /mo   /yr     Stabilized Gross Income = $

| Expense Items: | Expenses (cont): | Expenses (cont): |
|---|---|---|
| Real Estate Tax $ | $ | $ |
| Insurance $ | $ | $ |
| Maintenance $ | $ | $ |
| Management $ | $ | $ |

Total Expenses / Stabilized G.I. = Expense Ratio %   Total Expenses = $

Net Income / CEV Price 249,900 = Cap Rate %    Net Income = $

## Improvement Analysis

| Type | Size | Utility | Cond | Effective Age | RCN/Unit | RCN | % Phys | % Funct | % Extern | Total Imp Contrib | Contrib $/Unit |
|------|------|---------|------|---------------|----------|-----|--------|---------|----------|-------------------|----------------|
| Dwelling | 1,488 | Avg | Fair | 40 | 84.25 | 125,364 | 80.00 | | | 25,073 | 16.85 |
| Garage | 576 | Avg | Fair | 30 | 15 | 8,640 | 75.00 | | | 2,160 | 3.75 |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

Physical Depreciation 80%    Functional Obsolescence 0%    External obsolescence 0%    Total Depreciation 80%

Total RCN $134,004    Total Improvement Contribution $27,233    Improvement as % of Price 11%

## Comments

Gravel road frontage.  Older dwelling with 2 car detached garage on site.  Rural/agricultural area just south of more residential use area west of Fowlerville.  No noted adverse neighborhood conditions at time of inspection from roadway.

PHOTO OF COMPARABLE SALE #790
PHOTOS TAKEN 8/22/2017 BY D. HODGE



LOOKING EAST FROM WEST SIDE OF PARCEL



DWELLING IN NORTHWEST CORNER OF PARCEL

## Aerial Map



map center: 42° 39' 33.86, -84° 7' 59.04

0ft          630ft          1260ft

**Farmers National Company**

Maps Provided By:
**surety**
© AgriData, Inc. 2017   www.AgriDataInc.com

**7-3N-3E**
**Livingston County**
**Michigan**

N
W        E
S

8/25/2017

Field borders provided by Farm Service Agency as of 5/21/2008.

©2017 AgriData, Inc.

A
43

## Soils Map





State: **Michigan**
County: **Livingston**
Location: **7-3N-3E**
Township: **Handy**
Acres: **54**
Date: **8/25/2017**





Soils data provided by USDA and NRCS.

### Area Symbol: MI093, Soil Area Version: 14

| Code | Soil Description | Acres | Percent of field | Non-Irr Class Legend | Non-Irr Class *c | Alfalfa hay | Bromegrass alfalfa hay | Corn | Corn silage | Kentucky bluegrass | Oats | Soybeans | Winter wheat |
|------|-----------------|-------|------------------|---------------------|-------------------|-------------|------------------------|------|-------------|--------------------|------|----------|--------------|
| MwB | Minoa-Thetford complex, 0 to 4 percent slopes | 13.82 | 25.6% | | IIIw | 4.1 | | 100 | 16.5 | | 80 | 32.5 | 42.5 |
| SvB | Spinks-Oakville loamy sands, 0 to 6 percent slopes | 9.07 | 16.8% | | IVs | 3.5 | | 80 | 14 | | 60 | 26 | 30 |
| BsB | Boyer loamy sand, silty substratum, 2 to 6 percent slopes | 7.08 | 13.1% | | IIIs | 3.5 | 2.5 | 80 | 14 | 2.7 | 60 | | |
| Cr | Colwood fine sandy loam | 6.81 | 12.6% | | IIw | 5.5 | 5.5 | 140 | 22 | | 115 | 45 | 65 |
| OmB | Owosso-Miami sandy loams, 2 to 6 percent slopes | 3.54 | 6.6% | | IIe | 3.5 | | 115 | 19 | | 95 | 35 | 55 |
| BrC | Boyer loamy sand, 6 to 12 percent slopes | 3.51 | 6.5% | | IIIe | 3.4 | 2.4 | 75 | 12 | | 55 | 26 | 32 |
| BrB | Boyer loamy sand, 2 to 6 percent slopes | 3.03 | 5.6% | | IIIs | 3.8 | 2.7 | 80 | 14 | | 60 | 30 | 35 |
| By | Brookston loam, 0 to 2 percent slopes | 2.91 | 5.4% | | IIw | | | | | | | | |
| CvB | Conover loam, 2 to 6 percent slopes | 1.97 | 3.6% | | IIw | | | | | | | | |
| OmC | Owosso-Miami sandy loams, 6 to 12 percent slopes | 0.86 | 1.6% | | IIIe | 5 | 3 | 100 | 17 | | 90 | 33 | 50 |
| MlB | Metamora sandy loam, 0 to 4 percent slopes | 0.83 | 1.5% | | IIe | 4.8 | 3.5 | 125 | 20 | | 100 | 40 | 60 |
| MrB | Miami-Conover loams, 2 to 6 percent slopes | 0.46 | 0.9% | | IIe | 4.8 | | 120 | 19 | | 95 | 35 | 60 |
| MnB | Metea loamy sand, 2 to 6 percent slopes | 0.11 | 0.2% | | IIIs | 4 | | 105 | 18 | | 80 | 30 | 40 |

Maps Provided By:



© AgriData, Inc. 2017          www.AgriDataInc.com

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Weighted Average | 3.7 | 1.4 | 88.8 | 14.8 | 0.4 | 70 | 25.4 | 34.1 |

*c:  Using Capabilities Class Dominant Condition Aggregation Method

Soils data provided by USDA and NRCS.

Handy Township

## General Property Information

**Handy Township**

[Back to Non-Printer Friendly Version]  [Send To Printer]

**Parcel:** 4705-07-400-024  **Unit:** HANDY TOWNSHIP  **Data Current As Of:** 8/25/2017 2:38:51 AM

### Property Address [collapse]

4300 WHEELER
FOWLERVILLE, MI 48836

### Owner Information [collapse]

TURNER, JULIE & TIMOTHY                **Unit:**          4705
4300 WHEELER
FOWLERVILLE, MI 48836

### Taxpayer Information [collapse]

SEE OWNER INFORMATION

### General Information for Tax Year 2017 [collapse]

| | | | |
|---|---|---|---|
| **Property Class:** | 101 - AG-IMPROVED | **Assessed Value:** | $182,590 |
| **School District:** | 47030 - FOWLERVILLE | **Taxable Value:** | $74,900 |
| **State Equalized Value:** | $182,590 | **Map #** | |
| **USER NUM IDX** | 0 | **Date of Last Name Chg:** | 04/03/2017 |
| | | **Date Filed:** | 02/17/1994 |
| | | **Notes:** | N/A |
| **Historical District:** | N/A | **Census Block Group:** | N/A |
| **Principal Residence Exemption** | **June 1st** | **Final** | |
| | | - | |
| **2017** | 100.0000 % | 100.0000 % | |

| Previous Year Info | MBOR Assessed | Final S.E.V. | Final Taxable |
|---|---|---|---|
| 2016 | $158,970 | $158,970 | $74,240 |
| 2015 | $152,350 | $152,350 | $74,020 |

### Land Information [collapse]

| | Frontage | Depth | |
|---|---|---|---|
| **Lot 1:** | 0.00 Ft. | 0.00 Ft. | |
| **Lot 2:** | 0.00 Ft. | 0.00 Ft. | |
| **Lot 3:** | 0.00 Ft. | 0.00 Ft. | |
| **Total Frontage:** | 0.00 Ft. | | |
| | | **Average Depth:** | 0.00 Ft. |

| | | | |
|---|---|---|---|
| **Total Acreage:** | 54.00 | | |
| **Zoning Code:** | AR | | |
| **Total Estimated Land Value:** | $222,720 | **Mortgage Code:** | |
| **Land Improvements:** | $0 | **Lot Dimensions/Comments:** | N/A |
| **Renaissance Zone:** | NO | | |
| **Renaissance Zone Expiration Date:** | | | |

A
46

Handy Township

## Legal Information for 4705-07-400-024 [collapse]

SEC 7 T3N R3E E 1/2 OF SE 1/4 EXC BEG SE COR SEC 7, TH N89*W 1316.29 FT ALG S SEC LINE, TH N2*W 45.94 FT TO N LINE C&O RR/ROW TH N2*W ALG C/L WHEELER RD 269 FT TO POB, TH N 1228 FT, TH E 285 FT, TH S 964 FT, TH S89*E 45 FT, TH S2*E 264 FT, TH N89*W 330 FT TO POB ALSO EXC N 532 FT THEROF SPLIT FROM 400-007 1/90 REDESCR & AUTH FR AVAIL RECS 1/90 54 AC M/L

## Sales Information

1 sale record(s) found.

| Sale Date | Sale Price | Instrument | Grantor | Grantee | Terms Of Sale | Liber/Page |
|---|---|---|---|---|---|---|
| 03/30/2017 | $249,900.00 | WD | SKYM, ROGER & TOMLIN, LOIS | TURNER, JULIE & TIMOTHY | WARRANTY DEED | 2017-009556 |

## Building Information

1 building(s) found.

| Description | Floor Area | Yr Built | Est. TCV |
|---|---|---|---|
| Residential Building 1 | 1488 Sq. Ft. | 1880 | $138,853 |

**Disclaimer:** BS&A Software provides this Web Site as a way for municipalities to display information online and is not responsible for the content or accuracy of the data herein. This data is provided for reference only and WITHOUT WARRANTY of any kind, expressed or inferred. Please contact your local municipality if you believe there are errors in the data.

Privacy Policy



**NICHOLSON & SHERWOOD** MI    (Property Address)

Parcel Number: 4701-21-300-014

**Property Owner:** KUBIAK FARM PROPERTIES, LLC

*Summary Information*

> Assessed Value: $189,080 | Taxable Value: $54,869        > Property Tax information found

No Images Found

## Owner and Taxpayer Information

| Owner | KUBIAK FARM PROPERTIES, LLC<br>4965 SHERWOOD RD<br>WEBBERVILLE, MI 48892 | Taxpayer | SEE OWNER INFORMATION |
|---|---|---|---|

## General Information for Tax Year 2017

| Property Class | AG-IMPROVED | Unit | 4701 CONWAY TOWNSHIP |
|---|---|---|---|
| School District | FOWLERVILLE | Assessed Value | $189,080 |
| MAP # | No Data to Display | Taxable Value | $54,869 |
| USER NUM IDX | 0 | State Equalized Value | $189,080 |
| USER ALPHA 1 | Not Available | Date of Last Name Change | 01/07/2015 |
| USER ALPHA 3 | Not Available | Notes | Not Available |
| Historical District | Not Available | Census Block Group | Not Available |
| USER ALPHA 2 | Not Available | Exemption | No Data to Display |

### Principal Residence Exemption Information

| Homestead Date | | No Data to Display | |
|---|---|---|---|
| Qualified Agricultural | | June 1st | Final |
| 2018 | | 100.0000 % | |
| 2017 | | 100.0000 % | 100.0000 % |

### Previous Year Information

| Year | MBOR Assessed | Final SEV | Final Taxable |
|---|---|---|---|
| 2016 | $179,020 | $179,020 | $54,380 |
| 2015 | $163,000 | $163,000 | $47,187 |
| 2014 | $210,080 | $210,080 | $70,842 |

## Land Information

| Zoning Code | | Total Acres | 77.920 |
|---|---|---|---|
| Land Value | $332,280 | Land Improvements | $2,270 |
| Renaissance Zone | No | Renaissance Zone Expiration Date | No Data to Display |
| ECF Neighborhood | AG PROPERTIES WITH 70 PLUS ACRES | Mortgage Code | No Data to Display |
| Lot Dimensions/Comments | No Data to Display | Neighborhood Enterprise Zone | No |

| Lot(s) | | Frontage | | Depth |
|---|---|---|---|---|
| No lots found. | | | | |
| | Total Frontage: 0.00 ft | | Average Depth: 0.00 ft | |

## Legal Description

01-21-300-014 SEC 21 T4N R3E W 1/2 OF SW 1/4 EXC BEG 550 FT E FROM SW COR OF SEC TH E 338.20 FT TH N 268.46 FT TH W 338.20 FT TH S 268.46 FT TO POB. 77.92 SPLIT 1-02 FROM 001 & 005

## Land Division Act Information

| Date of Last Split/Combine | 01/14/2002 | Number of Splits Left | 1 |
|---|---|---|---|
| Date Form Filed | No Data to Display | Unallocated Div.s of Parent | 0 |
| Date Created | 01/14/2002 | Unallocated Div.s Transferred | 0 |
| Acreage of Parent | 0.00 | A Rights Were Transferred | Not Available |

| | | | | Unimproved Sale |
|---|---|---|---|---|
| Index # 789 | | Database # 789 | | |

**Sale Analysis**

| Grantor | Frey | Sales Price | 260,000 | Property Type | Vacant Land |
|---|---|---|---|---|---|
| Grantee | Milarch | Other Contrib. | | Primary Land Use | Agricultural |
| Deeded Acres | 46.22 | Net Safe Price | 260,000 | Tax Parcel | 4707-03-200-018 |
| Sale Date/DOM | 06/27/2017  / | $/Deeded Acre | 5,625.27 | Topography | Level/Undulating |
| Prior Sale Date | | Financing | | | |
| Prior CEV Price | | % Fin. Adj. | | | |
| Analysis Code | | CEV Price | 260,000 | | |
| Source | Equal/Deed/Insp | SCA Unit Type | | | |
| Motivation | Normal | Eff. Unit Size | | | |
| Highest & Best Use | Agricultural | SCA $/Unit | | | |
| Address | | Multiplier Unit | | | |
| City | | Multiplier No. | | | |
| County/County Code | Livingston/093 | Legal Access | | | |
| State/Zip | MI/ | Physical Access | | | |
| Region/Area/Zone | // | View | | Tax ID/Recording | 2017R-020113 |
| Location | 3-Oceola | Utilities | Rural | Sec/Twp/Rge | 3/3N/5E |
| Legal Description: | See attached Deed | | | | |

## Land-Mix Analysis

| Land Use | Ratio | Acres | $/Acre | Unit Size | Unit Type | | $/Unit | | Total Unit Value |
|---|---|---|---|---|---|---|---|---|---|
| Cropland | 100 % | 23 Ac | 6,452.41 | | | X $ | | = $ | 148,405 |
| Roads & Waste | 0 % | 0.16 Ac | 0 | | | X $ | | = $ | 0 |
| Woods | 75 % | 23.06 Ac | 4,839.31 | | | X $ | | = $ | 111,594 |
| Bldg Site | 100 % | 0 Ac | 6,452.41 | | | X $ | | = $ | 0 |
| | % | Ac | | | | X $ | | = $ | |
| | % | Ac | | | | X $ | | = $ | |
| | % | Ac | | | | X $ | | = $ | |
| | % | Ac | | | | X $ | | = $ | |
| | % | Ac | | | | X $ | | = $ | |
| | % | Ac | | | | X $ | | = $ | |
| **Totals** | | 46.22 Ac | 5,625.27 | | | X $ | | = $ | 259,999 |

CEV Price $ 260,000       - Land Contribution $ 259,999       = Improvement Contribution $  1

## Income Analysis

Income Estimate Basis: Cash   Share   Owner/Operator

| Income Source Actual Estimated | Units | Unit Measure | Stabilized Yield | Total Production Stabilized $/Unit | Gross Income | Cash/Share/Owner Income Share % | Income $ |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Improvements   Improvements Included in Land Rent   /mo   /yr       Stabilized Gross Income = $

| Expense Items: | | Expenses (cont): | Expenses (cont): |
|---|---|---|---|
| Real Estate Tax | $ | $ | $ |
| Insurance | $ | $ | $ |
| Maintenance | $ | $ | $ |
| Management | $ | $ | $ |

Total Expenses / Stabilized G.I.   = Expense Ratio  %   Total Expenses = $

Net Income   / CEV Price 260,000   = Cap Rate  %       Net Income = $

## Improvement Analysis

| Type | Size | Utility | Cond | Effective Age | RCN/Unit | RCN | % Phys | % Funct | % Extern | Total Imp Contrib | Contrib $/Unit |
|------|------|---------|------|---------------|----------|-----|--------|---------|----------|-------------------|----------------|
|      |      |         |      |               |          |     |        |         |          |                   |                |
|      |      |         |      |               |          |     |        |         |          |                   |                |
|      |      |         |      |               |          |     |        |         |          |                   |                |
|      |      |         |      |               |          |     |        |         |          |                   |                |
|      |      |         |      |               |          |     |        |         |          |                   |                |
|      |      |         |      |               |          |     |        |         |          |                   |                |
|      |      |         |      |               |          |     |        |         |          |                   |                |
|      |      |         |      |               |          |     |        |         |          |                   |                |
|      |      |         |      |               |          |     |        |         |          |                   |                |
|      |      |         |      |               |          |     |        |         |          |                   |                |
|      |      |         |      |               |          |     |        |         |          |                   |                |
|      |      |         |      |               |          |     |        |         |          |                   |                |
|      |      |         |      |               |          |     |        |         |          |                   |                |
|      |      |         |      |               |          |     |        |         |          |                   |                |

Physical Depreciation %     Functional Obsolescence %     External obsolescence %     Total Depreciation %

Total RCN $     Total Improvement Contribution $     Improvement as % of Price %

## Comments

Vacant agricultural farm land approx. 1/2 wooded.  Typical rural agricultural area with no noted adverse conditions at time of inspection. Building improvements in SE corner excepted from sale.  Typical rural utility easements not considered adverse.

PHOTO OF COMPARABLE SALE #789
PHOTOS TAKEN 8/22/2017 BY D. HODGE



LOOKING WESTERLY FROM ACCESS DRIVE

# Aerial Map



map center: 42° 41' 1.03, -83° 50' 30.79

0ft          338ft          676ft

**Farmers National Company**

Maps Provided By: **surety**
© AgriData, Inc. 2017   www.AgriDataInc.com

**3-3N-5E**
**Livingston County**
**Michigan**

8/25/2017

Field borders provided by Farm Service Agency as of 5/21/2008.

A
52

## Soils Map



©2017 AgriData, Inc.

Soils data provided by USDA and NRCS.



©2017 AgriData, Inc.

| State: | **Michigan** |
|---|---|
| County: | **Livingston** |
| Location: | **3-3N-5E** |
| Township: | **Oceola** |
| Acres: | **46.22** |
| Date: | **8/25/2017** |


Farmers National Company.

Maps Provided By:


© AgriData, Inc. 2017    www.AgriDataInc.com



Area Symbol: MI093, Soil Area Version: 14

| Code | Soil Description | Acres | Percent of field | Non-Irr Class Legend | Non-Irr Class *c | Alfalfa hay | Bromegrass alfalfa hay | Corn | Corn silage | Kentucky bluegrass | Oats | Soybeans | Winter wheat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MoA | Miami loam, 0 to 2 percent slopes | 24.16 | 52.3% | | IIw | 4.8 | | 120 | 19 | | 95 | 35 | 60 |
| MoB | Miami loam, 2 to 6 percent slopes | 6.26 | 13.5% | | IIe | 4.8 | | 120 | 19 | | 95 | 35 | 60 |
| CvA | Conover loam, 0 to 2 percent slopes | 6.18 | 13.4% | | IIw | | | | | | | | |
| MoE | Miami loam, 18 to 25 percent slopes | 4.40 | 9.5% | | VIe | | | | | | | | |
| Cc | Carlisle muck, 0 to 2 percent slopes | 3.51 | 7.6% | | Vw | | | | | | | | |
| FoA | Fox sandy loam, 0 to 2 percent slopes | 1.71 | 3.7% | | IIIs | | 4.1 | 105 | 17 | 3.6 | 70 | 35 | 42 |
| | | | | Weighted Average | | 3.2 | 0.2 | 82.9 | 13.1 | 0.1 | 65.1 | 24.3 | 41 |

*c: Using Capabilities Class Dominant Condition Aggregation Method

Soils data provided by USDA and NRCS.

**LIVINGSTON COUNTY TREASURER'S CERTIFICATE**

I hereby certify that there are no TAX LIENS OR TITLES held by the State or any individual against the within description, and no TAXES on same are paid for five years previous to the date of this instrument or appear on the records in this office, except as stated.

Jul 10, 2017  Jennifer M. Nash, Treasurer   by RH 25898
4707-03-200-018

**2017R-020113**
**RECORDED ON**
**07/11/2017  9:01:27 AM**
**BRANDON DENBY**
**REGISTER OF DEEDS**
**LIVINGSTON COUNTY, MI 48843**
**RECORDING: 26.00**
**REMON: 4.00**
**PAGES: 2**

## WARRANTY DEED

Received eRecord 7/10/2017 at 04:17 PM
LivCo, MI ROD by GG

(Unplatted Land)

| **Drafted By:** | **Return To:** | **Send Tax Bills To:** |
|---|---|---|
| Dale Frey | Timothy C Milarch | Timothy C Milarch |
| 4859 Rayfore Dr. | 4310 Antler Blvd | 4310 Antler Blvd |
| Commerce Township, MI 48382 | Howell, MI 48843 | Howell, MI 48843 |

| Recording Fee: $35.00 | State Transfer Tax:  $1,950.00 | Tax Parcel No.: 4707-03-200-018 |
|---|---|---|
| File Number: 780733 | County Transfer Tax:  $286.00 | |

*Know All Persons by These Presents:* That **Dale Frey and Diane Frey, husband and wife** whose address is 4859 Rayfore Dr., Commerce Township, MI 48382

Convey(s) and Warrant(s) to **Timothy C Milarch, a married man** whose address is 4310 Antler Blvd, Howell, MI 48843

the following described premises situated in the Township of **Oceola**, County of **Livingston**, State of Michigan, to wit:

PARCEL B
A parcel of land in the Northeast Fractional 1/4 of Section 3, Town 3 North, Range 5 East, Oceola Township, Livingston County, State of Michigan, more particularly described by Darrell Hughes, Michigan Registered Land Surveyor No. 19834, as beginning at a point, said point being the East 1/4 corner of Section 3; proceeding thence, from said point of beginning, South 89 degrees 36 minutes 29 seconds West 1939.08 feet, along the East and West 1/4 line of Section 3; thence North 01 degrees 00 minutes 54 seconds West 1341.73 feet, along the East line of the West 22 acres of the South part of the Northeast Fractional 1/4 of Section 3, as monumented; thence North 89 degrees 40 minutes 14 seconds East 1414.10 feet, along the North line of the South part of the Northeast Fractional 1/4 of Section 3, as monumented; thence South 00 degrees 53 minutes 09 seconds East 1014.71 feet; thence North 89 degrees 06 minutes 51 seconds East 196.65 feet; thence South 00 degrees 53 minutes 09 seconds East 209.67 feet; thence North 89 degrees 06 minutes 51 seconds East 158.35 feet; thence North 00 degrees 53 minutes 09 seconds West 89.67 feet; thence North 89 degrees 06 minutes 51 seconds East 173.00 feet; thence South 00 degrees 53 minutes 09 seconds East 210.00 feet, along the East line of Section 3 and the center line of Argentine Road, to the point of beginning.

More commonly known as: **Argentine, Howell, MI 48855**
For the full consideration of: **two hundred sixty thousand** Dollars ($260,000.00)

**Subject To:**
Existing building and use restrictions, easements of record, and zoning ordinances, if any.

**If the property conveyed is unplatted, the following applies:**

The grantor grants to the grantee the right to make _____ division(s) under section 108 of the land division act, Act No. 288 of the Public Acts of 1967. **(If no number is inserted, the right to make divisions stays with the portion of the parent tract retained by the grantor; if all of the parent tract is conveyed, then all division rights are granted.)** This property may be located within the vicinity of farmland or a farm operation. Generally accepted agricultural and management practices which may generate noise, dust, odors, and other associated conditions may be used and are protected by the Michigan Right to Farm Act.

Dated this June 27, 2017.

**STATE OF MICHIGAN**
**Livingston County**
**07/11/2017**
**2017R-020113**

**REAL ESTATE ★**
**TRANSFER TAX ★**
**$286.00 CO ★**
**$1950.00 ST ★**
**TTX# 6184363 ★**


**First American Title Insurance Company**

A
54

*(Attached to and becoming a part of Warranty Deed dated: June 27, 2017 between Dale Frey and Diane Frey, husband and wife, as Seller(s) and Timothy C Milarch, a married man, as Purchaser(s).)*

Seller(s):

_____
Dale Frey

_____
Diane Frey

State of Michigan
County of LIVINGSTON

The foregoing instrument was acknowledged before me this June 27, 2017 by Dale Frey and Diane Frey, husband and wife.

_____
Notary Public:
Notary County/State: /
County Acting In: Livingston
Commission Expires:



First American Title Insurance Company

Livingston County Register of Deeds.  2017R-020113



Index # 794 | Database # 794 | | Unimproved Sale

| | | | | | |
|---|---|---|---|---|---|
| Grantor | Benjamin | Sales Price | 400,000 | Property Type | Agricultural |
| Grantee | Kubiak | Other Contrib. | | Primary Land Use | Crop Land |
| Deeded Acres | 77.92 | Net Sale Price | 400,000 | Tax Parcel | 4701-21-300-014 |
| Sale Date/DOM | 12/23/2014  / | $/Deeded Acre | 5,133.47 | Topography | Undul/GR |
| Prior Sale Date | | Financing | | | |
| Prior CEV Price | | % Fin. Adj. | | | |
| Analysis Code | | CEV Price | 400,000 | | |
| Source | MLS/Equal/Insp | SCA Unit Type | | | |
| Motivation | Normal | Eff. Unit Size | | | |
| Highest & Best Use | Agricultural | SCA $/Unit | | | |
| Address | | Multiplier Unit | | | |
| City | | Multiplier No. | | | |
| County/County Code | Livingston/093 | Legal Access | | | |
| State/Zip | MI/ | Physical Access | | | |
| Region/Area/Zone | II | View | | Tax ID/Recording | 2015R-003379 |
| Location | 21-Conway | Utilities | Rural | Sec/Twp/Rge | 21/4N/3E |

Legal Description:  See Attached

## Land-Mix Analysis

| Land Use | Ratio | Acres | $/Acre | Unit Size | Unit Type | | $/Unit | | Total Unit Value |
|---|---|---|---|---|---|---|---|---|---|
| Cropland | 100 % | 75.17 Ac | 5,321.27 | | | X $ | | = $ | 400,000 |
| Roads & Waste | 0 % | 2.75 Ac | 0 | | | X $ | | = $ | 0 |
| Woods | 75 % | 0 Ac | 3,990.95 | | | X $ | | = $ | 0 |
| Bldg Site | 100 % | 0 Ac | 5,321.27 | | | X $ | | = $ | 0 |
| | % | Ac | | | | X $ | | = $ | |
| | % | Ac | | | | X $ | | = $ | |
| | % | Ac | | | | X $ | | = $ | |
| | % | Ac | | | | X $ | | = $ | |
| | % | Ac | | | | X $ | | = $ | |
| Totals | | 77.92 Ac | 5,133.47 | | | X $ | | = $ | 400,000 |

CEV Price $ 400,000       - Land Contribution $ 400,000       = Improvement Contribution $ 0

## Income Analysis

Income Estimate Basis: Cash    Share    Owner/Operator

| Income Source Actual  Estimated | Units | Unit Measure | Stabilized Yield | Total Production | | Cash/Share/Owner Income | |
|---|---|---|---|---|---|---|---|
| | | | | Stabilized $/Unit | Gross Income | Share % | Income $ |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Improvements    Improvements Included in Land Rent    /mo    /yr

Stabilized Gross Income = $

| Expense Items: | Expenses (cont): | Expenses (cont): | |
|---|---|---|---|
| Real Estate Tax | $ | $ | $ |
| Insurance | $ | $ | $ |
| Maintenance | $ | $ | $ |
| Management | $ | $ | $ |

Total Expenses  / Stabilized G.I.   = Expense Ratio  %    Total Expenses = $

Net Income   / CEV Price 400,000   = Cap Rate  %       Net Income = $

## Improvement Analysis

| Type | Size | Utility | Cond | Effective Age | RCN/Unit | RCN | % Phys | % Funct | % Extern | Total Imp Contrib | Contrib $/Unit |
|------|------|---------|------|---------------|----------|-----|--------|---------|----------|-------------------|----------------|
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

Physical Depreciation %   Functional Obsolescence %   External obsolescence %   Total Depreciation %

Total RCN $   Total Improvement Contribution $   Improvement as % of Price %

## Comments

Agricultural crop land approximately 3.5 miles northwest of Fowlerville. Area of like properties with scattered single family dwellings and wooded recreational use properties also present. Gravel road frontage on two roads. High voltage power lines run east and west across northern portion of property. Mono poles also run east and west through southern part of parcel. No other noted adverse site or neighborhood conditions at time of inspection from roadway.

PHOTO OF COMPARABLE SALE #794
PHOTOS TAKEN 8/22/2017 BY D. HODGE



08/22/2017

LOOKING NORTHEAST FROM SOUTHWEST CORNER

# Aerial Map



map center: 42° 43' 4.66,  -84° 6' 45.52

0ft          440ft          879ft

**Farmers National Company**

Maps Provided By: **surety**
© AgriData, Inc. 2017   www.AgriDataInc.com

**21-4N-3E**
**Livingston County**
**Michigan**

8/28/2017

Field borders provided by Farm Service Agency as of 5/21/2008.

60

## Soils Map





State: **Michigan**
County: **Livingston**
Location: **21-4N-3E**
Township: **Conway**
Acres: **77.92**
Date: **8/28/2017**





Soils data provided by USDA and NRCS.

©2017 AgriData, Inc.

**Area Symbol: MI093, Soil Area Version: 14**

| Code | Soil Description | Acres | Percent of field | Non-Irr Class Legend | Non-Irr Class *c | Alfalfa hay | Bromegrass alfalfa hay | Corn | Corn silage | Oats | Soybeans | Winter wheat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CvA | Conover loam, 0 to 2 percent slopes | 27.92 | 35.8% | | IIw | | | | | | | |
| By | Brookston loam, 0 to 2 percent slopes | 17.15 | 22.0% | | IIw | | | | | | | |
| OmB | Owosso-Miami sandy loams, 2 to 6 percent slopes | 11.79 | 15.1% | | IIe | 3.5 | | 115 | 19 | 95 | 35 | 55 |
| MrB | Miami-Conover loams, 2 to 6 percent slopes | 5.11 | 6.6% | | IIe | 4.8 | | 120 | 19 | 95 | 35 | 60 |
| CvB | Conover loam, 2 to 6 percent slopes | 3.98 | 5.1% | | IIw | | | | | | | |
| MoB | Miami loam, 2 to 6 percent slopes | 3.83 | 4.9% | | IIe | 4.8 | | 120 | 19 | 95 | 35 | 60 |
| OlB | Ottokee loamy sand, 2 to 6 percent slopes | 3.01 | 3.9% | | IVs | 3.5 | | 80 | 14 | 60 | 25 | 30 |
| MoC | Miami loam, 6 to 12 percent slopes | 1.98 | 2.5% | | IIIe | 4.8 | | 120 | 19 | 95 | 35 | 60 |
| Cr | Colwood fine sandy loam | 1.91 | 2.5% | | IIw | 5.5 | 5.5 | 140 | 22 | 115 | 45 | 65 |
| HfB | Hillsdale sandy loam, 2 to 6 percent slopes | 1.24 | 1.6% | | IIe | 4 | | 105 | 18 | 85 | 30 | 45 |
| | | | | | Weighted Average | 1.5 | 0.1 | 42.4 | 6.9 | 34.2 | 12.7 | 20.2 |

*c: Using Capabilities Class Dominant Condition Aggregation Method

Soils data provided by USDA and NRCS.

**PROJECT: ROVER PIPELINE LLC**            TRACT #: _____

_____ COUNTY, MICHIGAN

## PERMANENT EASEMENT AGREEMENT

This Permanent Easement Agreement (this "Agreement"), dated _____, 2017, is between _____, whose mailing address is _____, (hereinafter referred to as "Grantor", whether one or more), and ROVER PIPELINE LLC, whose mailing address is 1300 Main Street, Houston, Texas 77002, and its successors and assigns (such entity and its successors and assigns are collectively referred to as the "Grantee"). For and in consideration of the sum of TEN AND No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor hereby grants, sells and conveys unto Grantee a non-exclusive unobstructed permanent easement (the "Permanent Easement") width shown on Exhibit "A" hereto for the right to survey, construct, lay, maintain, inspect, erect, alter, operate, protect, repair, replace with same or lesser size pipe, remove and, or abandon in place one (1) pipeline if the width of the Permanent Easement shown on Exhibit "A" is fifty feet or two (2) pipelines if the width of the Permanent Easement shown on Exhibit "A" is sixty feet (whether one or two pipelines, the "Pipeline") along a route selected by Grantee, together with such below ground valves (unless a valve site easement is granted hereunder, in which case, Grantee shall have the valve and related equipment both above and below ground), fittings, meters, corrosion control devices, wires, cables, markers and other equipment and appurtenances, as may be necessary or convenient for operation and maintenance of the Pipeline (collectively with the Pipeline, the "Facilities") in, over, through, upon, across, under, and along land owned by the Grantor depicted in the attached **Exhibit A** (the "Property"). The Permanent Easement is described on **Exhibit A** attached hereto. Grantor further grants, sells and conveys unto Grantee a temporary construction easement depicted on the attached **Exhibit A** in order to construct the Facilities on the Property, together with additional work space, if any as described and depicted on the attached **Exhibit A** for difficult crossings such as roads, creeks and railroads (collectively, the "Temporary Construction Easement").

**And if shown on Exhibit A,** Grantor further grants, sells and conveys unto Grantee an exclusive permanent valve surface easement identified, described and depicted on **Exhibit A** hereto (collectively the "Valve Site Easement") to be used solely for the Pipeline for the purpose of constructing, maintaining, operating, removing, changing the size of, relocating, replacing, protecting and repairing both surface and subsurface pipelines, pumps, launching-receiving equipment, flares, communication equipment, generators, dehydrators, separators, valves, risers, electrical equipment (including but not limited to MCC Buildings/transformers/substations) electrical lines, wires, cables, meters, meter houses, meter runs, buildings and any and all other devices, equipment and structures incident or necessary to the regulation, control, measurement, treatment, transportation and distribution of natural gas, together with the right to enclose said easements by fences and the further right, at the expiration of the use of said easement for one or more of such purposes, to retain possession and control of said property for a reasonable period of time thereafter within which to remove said Pipeline and all other properties of whatever character or description placed or constructed by Grantee upon said easement. Grantee shall have no right to place any compressors on the Valve Site Easement. Grantee, at its option, shall erect and maintain around, but within the easement for the Valve Site Easement, a wooden or chain link fence, trees, or shrubbery and flowers.

**And if shown on Exhibit A,** Grantor further grants, sells and conveys unto Grantee non-exclusive permanent road access easement ("Permanent Road Access Easement") to be used by Grantee solely for the purpose of ingress and egress to and from public roads and other easements to which Grantee has the right of access to and from the other easements herein granted. Grantee shall not prevent the owner of the lands burdened by the Permanent Road Access Easement from utilizing the roadways within such easement. Grantee shall have the right to use, repair, improve and, or maintain any existing roads located within the Permanent Road Access Easement and, or to construct, use, repair, improve, place and, or maintain thereon new roadways and, within the Permanent Road Access Easement, construct, to install, maintain and replace poles, wires and cables as are necessary to provide electricity and, or communication capabilities to the Pipeline and, or valves located on any Valve Site Easement if granted hereunder, and Grantee shall maintain and upkeep to a reasonable state of repair any roads currently situated on or constructed on the Permanent Road Access Easement.

**And if shown on Exhibit A,** Grantor further grants, sells and conveys unto Grantee during the initial construction of the Pipeline only, a temporary road access easement ("Temporary Road Access Easement"), to be used by Grantee solely for the purpose of ingress and egress to and from public roads and other easements to which Grantee has the right of access to and from the other easements herein granted, and the Temporary Road Access Easement shall expire upon completion of the initial construction and restoration or the expiration of twenty-four months from the commencement of construction in the county in which the Temporary Road Access Easement at issue is located, whichever occurs first. Grantee shall not prevent the owner of the lands burdened by the Temporary Road Access Easement from utilizing the roadway within such easement. Grantee will, prior to termination of the Temporary Road Access Easement, restore the roadways located within such easement to the same or better condition that

_____Grantor Initials

existed immediately prior to Grantee's use thereof, to the extent reasonably practicable. Grantee shall have the right to use, repair, improve and, or maintain any existing roads located within the Temporary Road Access Easement and, or to construct, use, repair, improve, place and, or maintain thereon new roadways.

The easements herein granted are hereinafter referred to collectively as "Easements."

It is further agreed as follows:

1.      The right to use the Permanent Easement shall belong to the Grantee and its agents, employees, designees, contractors, guests, invitees, successors and assigns, and all those acting by or on behalf of it for the above stated purposes for the transportation of natural gas and entrained substances. Grantee shall have the right of ingress and egress over, across and through the Permanent Easement, the Temporary Construction Easement, and to access same from other rights-of-way or easements and roads to which Grantee has the right of access, for the above stated purposes and for all other purposes necessary and at all times convenient and necessary to exercise the rights granted by this Agreement. The term of the Temporary Construction Easement shall be for a period to extend no less than twenty-four (24) months from the date of construction commencement or until such time the right-of-way is restored in accordance with the Federal requirements and success criteria. However, if Grantee has completed its use of the Temporary Construction Easement prior to the twenty-four (24) month period and, so states in writing, then the Temporary Construction Easement shall immediately terminate. No pipeline or permanent facility or any kind or character will be constructed on the Temporary Construction Easement.

2.      Further, Grantee shall have the right to construct, maintain and change slopes of cuts and fills on the Permanent Easement and the Temporary Construction easement (while in effect) to ensure proper lateral and subjacent support and for drainage for the Facilities, and shall have the right to remove trees, brush, crops and other vegetation and obstructions from the Permanent Easement and Temporary Construction Easement (while in effect).

3.      Grantee shall have the right to install, maintain and use gates in all fences which now cross or may cross the Permanent Easement or which provide access to the Property; and Grantor shall allow Grantee to install its own lock if Grantee so chooses and Grantee shall have access (i.e., interlocking locks) through such gates. Grantee and its designated contractors, employees and invitees agree to keep all gates in fences closed at all times so that cattle, horses and/or other livestock located on the remainder of the Property cannot stray from the fenced pastures. Grantee shall have no right to fence or enclose the Permanent Easement. Grantee shall, during the initial construction operations, maintain suitable crossings on, over, and across the Permanent Easement.

4.      Grantor may use the Property within the Permanent Easement for any and all purposes not inconsistent with the Grantee's easement rights and so as not to interfere with Grantee's Facilities. Grantor's uses may include, but shall not be limited to, using the Permanent Easement and the Temporary Construction Easement for agricultural, open space, set-back, density, street, utility and roadway purposes. Grantor is permitted, after review and approval by Grantee, which will not be unreasonably withheld, to construct and install any and all streets and roadways, at any angle of not less than forty-five degrees (45°) to Grantee's Facilities, across the Permanent Easement which do not interfere with, damage, destroy or alter the operation of the Facilities, and Grantor may also construct and/or install water, sewer, gas, electric, cable TV, telephone or other utility lines across the Permanent Easement at any angle of not less than forty-five degrees (45°) to Grantee's Facilities, provided that all of Grantee's required and applicable spacings, including depth separation limits and other protective requirements are met by Grantor. The use of the Permanent Easement and Temporary Construction Easement (while in effect) by Grantor shall be regulated by all appropriate ordinances, regulations, resolutions or laws of any governmental entity having authority over the Permanent Easement and the Temporary Construction Easement. Grantor must notify Grantee in writing before the construction or installation of any streets, roadways, utilities or other encroachments on the Permanent Easement. "Grantor shall be responsible for complying with any state or local "one call" requirements in the event of construction on or near the Permanent Easement."

5.      Notwithstanding anything to the contrary, Grantor may not use any part of the Permanent Easement if such use may damage, destroy, injure, and/or interfere with the Grantee's use of the Permanent Easement or its Facilities. Grantor is not permitted to conduct any of the following activities on the Permanent Easement without the prior written permission of Grantee: (i) construct any temporary or permanent building or site improvements, other than streets and roads as provided above; (ii) drill or operate any well; (iii) remove soil or change the grade or slope; (iv) impound surface water; or (v) plant trees or landscaping. Grantor further agrees that no above or below ground obstruction that may interfere with the Facilities may be placed, erected, installed or permitted within or upon the Permanent Easement without the prior written permission of Grantee. In the event the terms of this paragraph are violated, Grantee shall have the immediate right to correct or eliminate such violation at the sole expense of Grantor.

6.      Grantee has the right from time to time on the Permanent Easement to trim, cut down or eliminate trees or shrubbery as may be necessary to prevent possible interference with the operation of the Facilities and to

_____Grantor Initials

remove possible hazards thereto, and the right to remove or prevent the construction of, any and all buildings, structures, reservoirs or other obstructions on the Permanent Easement which, in the sole judgment of Grantee, may endanger or interfere with the efficiency, safety, or convenient operation of the Facilities. From and after the completion of initial construction, Grantee shall pay any damages that may arise to growing crops, timber, fences and other improvements from the construction, maintenance and operation of the Pipeline, provided that Grantee shall not be responsible for paying damages for its removal of any trees or brush (but not growing crops) from the Permanent Easement as part of its routine operations to maintain the Permanent Easement free from obstructions. Grantee will maintain the Easements (the Temporary Construction Easement only during the Initial Construction Period) clear of all litter and trash during periods of construction, operation, maintenance, repair or removal.

7.      Grantor shall, to the extent owned by Grantor, retain all the oil, gas, and other minerals in, on and under the Property, including within the Permanent Easement; provided, however, Grantor shall not be permitted to drill or operate equipment for the production or development of minerals within or on the Permanent Easement, but Grantor will be permitted to extract the oil and other minerals from and under the Permanent Easement by directional drilling and other means, so long as such activities do not damage, destroy, injure, and/or interfere with the Grantee's use, operation and maintenance of the Facilities or Grantee's use of the Permanent Easement for the purposes for which the Permanent Easement is sought by Grantee.

8.      Upon completion of the project construction, permanent fencing and tiling destroyed or disturbed by project construction activities shall be repaired and, or re-installed by Grantee, at its sole expense, along substantially the same alignment, configuration and approximate location of the Grantor's existing fences and tiling system.

9.      Grantee agrees that it will fully and timely comply with all Federal laws, regulations, certificates, plans and procedures as approved by a Federal agency or any other Federal rules that apply to construction and operation of the pipeline.

10.     Grantee shall have the right to adequately mark the Pipeline with permanent line markers, ground placards and test leads in order to promote public safety and the future safe operation of said pipeline, and to meet applicable governmental regulations.

11.     Notwithstanding anything to the contrary herein, Grantee (except for pipeline markers and cathodic test leads, which will be placed within the Permanent Easement at road crossings, property boundaries or existing fence lines intersected by the Pipeline, unless required by applicable Department of Transportation Code regulations to be placed at other locations within the Permanent Easement, and pipeline vents which will be placed within the Permanent Easement at road crossings where required), will not construct, build, install, maintain or have any above ground structures, installations, equipment or apparatus of any kind on or within the boundaries of the Permanent Easement, unless an easement is granted herein for a valve site, in which case Grantee's valve can be above and below ground.

12.     Grantee hereby agrees to indemnify and hold Grantor harmless from and against any claim or liability or loss from personal injury, property damage resulting from or arising out of the use of the Permanent Easement and, or the Temporary Construction Easement (while in effect) by Grantee, its contractors, servants, agents or invitees, excepting, however, any and all claims, liabilities or damages as may be due to or caused by the acts of Grantor, or its servants, agents or invitees.

13.     Grantee shall comply in all respects, at its sole cost, with all applicable federal, state, and local laws, rules, and regulations which are applicable to Grantee's activities hereunder, including, without limitation, the construction, use, operation, maintenance, repair and service of the Pipeline.

14.     Grantee shall have the right to assign this Agreement to the extent allowed by applicable law, and the rights granted hereunder, in whole or in part, to one or more assignees. The Permanent Easement shall be in perpetuity, and the provisions of this Agreement, including all benefits and burdens, shall be a covenant running with the land and shall be binding on Grantor and grantee and their respective successors and assigns.

15.     All equipment, fixtures, and facilities placed on the Permanent Easement by Grantee shall be and remain the property of Grantee. Grantee shall have the right to terminate this Agreement or any portion thereof by filing a release in the same public records in which it is recorded. In the event that Grantee terminates this Agreement, in whole or part, Grantee shall have a reasonable time afterward at its sole option to either remove all of its equipment, fixtures, and facilities or to remove surface facilities and abandon subsurface facilities in-place. Following removal of its equipment and fixtures, Grantee shall restore the lands, as nearly as practicable, to the condition existing prior to termination.

_____Grantor Initials

EXECUTED this ___ day of _____, 2017.

**GRANTORS:**

_____        _____
Name                                     Name

## ACKNOWLEDGMENTS

STATE OF MICHIGAN          §
                          §
COUNTY OF _____    §

    On this ___ day of _____, 2017, before me, a Notary Public, duly commissioned, qualified, and acting within and for the State and County aforesaid, personally appeared _____, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he had so voluntarily signed, executed, and delivered said instrument for the purposes therein mentioned and set forth.

                                _____
                                Notary Public, State of _____
                                My Commission Expires:_____

STATE OF MICHIGAN          §
                          §
COUNTY OF _____    §

    On this ___ day of _____, 2017, before me, a Notary Public, duly commissioned, qualified, and acting within and for the State and County aforesaid, personally appeared _____, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that she had so voluntarily signed, executed, and delivered said instrument for the purposes therein mentioned and set forth.

                                  _____
                                  Notary Public, State of _____
                                My Commission Expires:_____

Prepared By:
Rover Pipeline LLC
P.O. Box 35489
Canton, OH 44735

Return To:
Rover Pipeline LLC
P.O. Box 35489
Canton, OH 44735

_____Grantor Initials



### EXHIBIT A
**LIVINGSTON COUNTY, MICHIGAN**
**SECTION 1, T-2-N, R-3-E**
**IOSCO TOWNSHIP, MICHIGAN MERIDIAN**

PROPERTY INFORMATION
(PARCEL TAX ID NO. 4709-01-400-001)

PROPERTY DESCRIPTION (PER LIBER 4105, PAGE 310 AND REF. #: 2013R-023392 L.C.R.)

PARCEL 4: PART OF THE SOUTHEAST 1/4 OF SECTION 1, TOWN 2 NORTH, RANGE 3 EAST, IOSCO TOWNSHIP, LIVINGSTON COUNTY, MICHIGAN, DESCRIBED AS: BEGINNING AT THE SOUTHEAST CORNER OF SECTION 1; THENCE NORTH 88 DEGREES 35 MINUTES 57 SECONDS WEST 539.62 FEET TO A POINT IN THE CENTERLINE OF CROFOOT ROAD; THENCE NORTH 67 DEGREES 25 MINUTES 37 SECONDS WEST ALONG SAID CENTERLINE 430.34 FEET; THENCE NORTH 67 DEGREES 01 MINUTES 14 SECONDS WEST 385.39 FEET; THENCE NORTH 63 DEGREES 41 MINUTES 39 SECONDS WEST 471.48 FEET; THENCE NORTH 26 DEGREES 18 MINUTES 21 SECONDS EAST 634.30 FEET; THENCE NORTH 0 DEGREES 02 MINUTES 53 SECONDS EAST 1,575.60 FEET TO A POINT ON THE EAST/WEST 1/4 LINE OF SECTION 1; THENCE SOUTH 88 DEGREES 31 MINUTES 43 SECONDS EAST ALONG SAID EAST/WEST 1/4 LINE 1,434.48 FEET TO THE EAST 1/4 CORNER OF SECTION 1; THENCE SOUTH 0 DEGREES 10 MINUTES 22 SECONDS WEST 238.25 FEET ALONG THE EAST LINE OF SECTION TO THE WEST 1/4 CORNER OF SECTION 6, TOWN 2 NORTH, RANGE 4 EAST, MARION TOWNSHIP, LIVINGSTON COUNTY, MICHIGAN; THENCE CONTINUING ALONG SAID EAST LINE OF SECTION 1 SOUTH 00 DEGREES 02 MINUTES 10 SECONDS WEST 2,406.91 FEET TO THE POINT OF BEGINNING.

P.O.E.
N=15,484,755.24
E=823,218.76

N88°05'41"W 1,257.15'

CALC. CORNER

N06°54'07"E 191.33'

TRANSMISSION LINE

℄ PROPOSED 50'
WIDE PERMANENT
R/W & EASEMENT

MI-U-082.000

*ELAINE A. SIMCHECK A/K/A
ELAINE SIMCHECK AND
MICHAEL SIMCHECK
PARCEL 4
RESIDUE OF SE/4
LIBER 4422, PAGE 770
REF. #: 2016R-038958
LIVINGSTON COUNTY RECORDS*

N00°15'17"E 2,166.70'

FND.
IRON PIPE

CROFOOT RD

EX. 33' R/W LINE

P.O.B.
N=15,482,398.61
E=823,186.13

N75°20'53"W 1,309.49'

FND.
ALUMINUM CAP
(SE COR. SEC. 1)

**GRAPHIC SCALE**
0'    250    500    1000
(IN FEET)
1 INCH = 500 FT

| | | | | |
|---|---|---|---|---|
| CENTERLINE LENGTH | 2358.03 | FT | 142.91 | RDS |
| PERMANENT EASEMENT | 117901 | SF | 2.71 | AC |
| TEMPORARY WORKSPACE | 201598 | SF | 4.63 | AC |
| ADDITIONAL TEMPORARY WORKSPACE | 0 | SF | 0.00 | AC |

NOTES:
1. ALL BEARINGS ARE GRID BEARINGS AND ARE BASED ON UTM ZONE 17 NORTH, NAD-83. ALL DISTANCES ARE REPRESENTED IN GRID VALUES, MEASURED IN U.S. SURVEY FEET, AND ARE BASED ON SAID HORIZONTAL DATUM
2. RECORD INFORMATION SHOWN HEREON ARE BASED UPON A PUBLIC RECORDS SEARCH PROVIDED BY ROVER PIPELINE LLC
3. THIS PLAT OF EASEMENT IS BASED UPON OBSERVABLE FIELD EVIDENCE, PRIOR SURVEYS, AND DOCUMENTS OF RECORD, BUT DOES NOT CONSTITUTE A COMPLETE BOUNDARY SURVEY AND SHOULD NOT BE RELIED UPON AS SUCH
4. FOR PERMANENT EASEMENT & TEMPORARY WORKSPACE CONFIGURATION SEE SHEET 2 OF 2

| REV. | DESCRIPTION | BY | DATE |
|---|---|---|---|
| 0 | INITIAL RELEASE | KDH | 07/14/15 |
| 1 | REVISED PERMANENT EASEMENT | G&A | 09/24/15 |
| 2 | REVISED DRAWING | G&A | 10/24/15 |
| 3 | REVISED DRAWING | G&A | 01/18/16 |
| 4 | REVISED TEMPORARY WORKSPACE | G&A | 05/21/16 |
| 5 | REVISED TEMPORARY WORKSPACE | G&A | 03/24/16 |
| 6 | REVISED RECORDING INFORMATION | G&A | 01/29/17 |

**ROVER PIPELINE LLC**

**GULLETT & ASSOCIATES, INC.**
7135 OFFICE CITY DRIVE   HOUSTON, TEXAS 77087
(713) 644-3219   www.gulconline.com

ROVER PIPELINE LLC
HOUSTON, TEXAS

PROPOSED 50' WIDE PERMANENT
R/W & EASEMENT
ACROSS
ELAINE AND MICHAEL SIMCHECK
LIVINGSTON COUNTY, MICHIGAN

| SCALE: 1" = 500' | DRAWN BY: G&A | PROJ. No.: |
| PROJ: ROVER-MARKET | CHECKED BY: G&A | SHEET No.: 1 OF 2 |



PROJECT: ROVER PIPELINE LLC

TRACT NUMBER: _____

(re: _____)

_____ COUNTY, MICHIGAN

## TEMPORARY ROAD AGREEMENT

KNOW ALL MEN BY THESE PRESENTS:

That the undersigned _____ whose mailing address is _____, (hereinafter referred to as "Grantor" whether one or more), for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other valuable considerations, the receipt of which is hereby acknowledged, does hereby grant, convey, and warrant unto ROVER PIPELINE LLC (hereinafter referred to as "Grantee"), whose mailing address is 1300 Main Street, Houston, Texas 77002, the right, privilege, and easement to construct, repair, maintain, replace, and remove a temporary access road, which shall occupy an area approximately _____ feet (__') wide by _____ feet (____') long upon the following described lands situated in the County of _____, and State of Michigan; to-wit:

See Exhibit "___" attached hereto and made a part hereof.

Grantee shall at all times indemnify, protect, and hold harmless Grantor from any and all loss, damage, claims, or liabilities legally established arising out of or resulting from the Grantee's construction, maintenance, and removal of said road.

TO HAVE AND TO HOLD unto Grantee, its successors and assigns, so long as such road shall be deemed necessary or desirable, together with the right of ingress to and egress from said premises, for the purpose of constructing, repairing, maintaining, replacing, and removing the property of the Grantee located thereon or adjacent thereto, in whole or in part, at the will of Grantee. Grantee has the right to assign this Agreement in whole or in part.

IN WITNESS WHEREOF, we have hereunto set our hands this _____ day of _____, 2017.

**GRANTOR:**

_____
NAME

## ACKNOWLEDGMENT

STATE OF MICHIGAN       §
                        §
COUNTY OF _____     §

On this ____ day of _____, 2017, before me, a Notary Public, duly commissioned, qualified, and acting within and for the State and County aforesaid, personally appeared _____, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he/she had so voluntarily signed, executed, and delivered said instrument for the purposes therein mentioned and set forth.

_____
Notary Public, State of _____
My Commission Expires:_____



EXHIBIT A
LIVINGSTON COUNTY, MICHIGAN
SECTION 1, T-2-N, R-3-E
IOSCO TOWNSHIP, MICHIGAN MERIDIAN

GRAPHIC SCALE
0    250    500    1000
(IN FEET)
1 INCH = 500 FT

TRANSMISSION LINE

MI-LI-082.000.TAR

ELAINE A. SIMCHECK A/K/A
ELAINE SIMCHECK AND
MICHAEL SIMCHECK
PARCEL 4
RESIDUE OF SE/4
LIBER 4422, PAGE 770
REF. #: 2016R-038958
LIVINGSTON COUNTY RECORDS

€ PROPOSED 30'
WIDE TEMPORARY
ACCESS ROAD

FND.
IRON PIPE

P.O.B.
N=15,482,660.31
E=823,162.30

S57°02'16"E 282.87'

P.O.T.
N=15,482,493.82
E=822,994.68

N85°19'38"W 1,420.42'
CROFOOT RD

EX. 33'
R/W LINE

FND.
ALUMINUM CAP
(SE COR. SEC. 1)

NOTES:
1  ALL BEARINGS ARE GRID BEARINGS AND ARE BASED ON UTM ZONE 17
   NORTH, NAD-83. ALL DISTANCES ARE REPRESENTED IN GRID VALUES
   MEASURED IN U.S. SURVEY FEET AND ARE BASED ON SAID HORIZONTAL
   DATUM.

2  RECORD INFORMATION SHOWN HEREON ARE BASED UPON A PUBLIC
   RECORDS SEARCH PROVIDED BY ROVER PIPELINE LLC.

3  THIS PLAT OF EASEMENT IS BASED UPON OBSERVABLE FIELD EVIDENCE,
   PRIOR SURVEYS, AND DOCUMENTS OF RECORD, BUT DOES NOT
   CONSTITUTE A COMPLETE BOUNDARY SURVEY AND SHOULD NOT BE
   RELIED UPON AS SUCH.

| CENTERLINE LENGTH | 252 FT | 15.27 RDS |

| REV. | DESCRIPTION | BY | DATE |
|---|---|---|---|
| 1 | REVISED DRAWING | G&A | 02/11/16 |
| 2 | REVISED RECORDING INFORMATION | G&A | 01/26/17 |

ROVER PIPELINE LLC

GULLETT & ASSOCIATES, INC.
7108 OFFICE CITY DRIVE  HOUSTON, TEXAS 77087
(713) 644-3219   www.gullettinc.com

ROVER PIPELINE LLC
HOUSTON, TEXAS

PROPOSED 30' WIDE
TEMPORARY ACCESS ROAD
ACROSS
ELAINE AND MICHAEL SIMCHECK
LIVINGSTON COUNTY, MICHIGAN

| SCALE  1" = 500' | DRAWN BY   G&A | PROJ. No.: |
| PROJ: ROVER-MARKET | CHECKED BY  G&A | SHEET No.:  1 OF 2 |

## EXHIBIT A
### LIVINGSTON COUNTY, MICHIGAN
### SECTION 1, T-2-N, R-3-E
### IOSCO TOWNSHIP, MICHIGAN MERIDIAN

PROPERTY INFORMATION
(PARCEL TAX ID NO. 4709-01-400-001)

PROPERTY DESCRIPTION (PER LIBER 4105, PAGE 310 AND REF. #: 2013R-023392 L.C.R.)

PARCEL 4: PART OF THE SOUTHEAST 1/4 OF SECTION 1, TOWN 2 NORTH, RANGE 3 EAST, IOSCO TOWNSHIP, LIVINGSTON COUNTY, MICHIGAN, DESCRIBED AS: BEGINNING AT THE SOUTHEAST CORNER OF SECTION 1; THENCE NORTH 88 DEGREES 35 MINUTES 57 SECONDS WEST 539.62 FEET TO A POINT IN THE CENTERLINE OF CROFOOT ROAD; THENCE NORTH 67 DEGREES 25 MINUTES 37 SECONDS WEST ALONG SAID CENTERLINE 430.34 FEET; THENCE NORTH 67 DEGREES 01 MINUTES 14 SECONDS WEST 385.39 FEET; THENCE NORTH 63 DEGREES 41 MINUTES 39 SECONDS WEST 471.48 FEET; THENCE NORTH 26 DEGREES 18 MINUTES 21 SECONDS EAST 634.30 FEET; THENCE NORTH 0 DEGREES 02 MINUTES 53 SECONDS EAST 1,575.60 FEET TO A POINT ON THE EAST/WEST 1/4 LINE OF SECTION 1; THENCE SOUTH 88 DEGREES 31 MINUTES 43 SECONDS EAST ALONG SAID EAST/WEST 1/4 LINE 1,434.46 FEET TO THE EAST 1/4 CORNER OF SECTION 1; THENCE SOUTH 0 DEGREES 10 MINUTES 22 SECONDS WEST 238.25 FEET ALONG THE EAST LINE OF SECTION TO THE WEST 1/4 CORNER OF SECTION 6, TOWN 2 NORTH, RANGE 4 EAST, MARION TOWNSHIP, LIVINGSTON COUNTY, MICHIGAN; THENCE CONTINUING ALONG SAID EAST LINE OF SECTION 1 SOUTH 00 DEGREES 02 MINUTES 10 SECONDS WEST 2,406.91 FEET TO THE POINT OF BEGINNING.

NOTES

1   ALL BEARINGS ARE GRID BEARINGS AND ARE BASED ON UTM ZONE 17 NORTH, NAD-83. ALL DISTANCES ARE REPRESENTED IN GRID VALUES, MEASURED IN U.S. SURVEY FEET, AND ARE BASED ON SAID HORIZONTAL DATUM.

2   RECORD INFORMATION SHOWN HEREON ARE BASED UPON A PUBLIC RECORDS SEARCH PROVIDED BY ROVER PIPELINE LLC

3   THIS PLAT OF EASEMENT IS BASED UPON OBSERVABLE FIELD EVIDENCE, PRIOR SURVEYS, AND DOCUMENTS OF RECORD, BUT DOES NOT CONSTITUTE A COMPLETE BOUNDARY SURVEY AND SHOULD NOT BE RELIED UPON AS SUCH

| REV. | DESCRIPTION | BY | DATE |
|------|-------------|-----|------|
| 1 | REVISED DRAWING | G&A | 02/11/16 |
| 2 | REVISED RECORDING INFORMATION | G&A | 01/26/17 |
| | | | |
| | | | |
| | | | |
| | | | |

**ROVER PIPELINE LLC**

GULLETT & ASSOCIATES, INC.
7120 OFFICE CITY DRIVE   HOUSTON, TEXAS 77087
(713) 644–3210   www.gullettinc.com

| | ROVER PIPELINE LLC HOUSTON, TEXAS |
|--|--|
| | PROPOSED 30' WIDE TEMPORARY ACCESS ROAD ACROSS BLAINE AND MICHAEL SIMCHECK LIVINGSTON COUNTY, MICHIGAN |

| SCALE | N/A | DRAWN BY | G&A | PROJ. No: |
|-------|-----|----------|-----|-----------|
| PROJ: ROVER-MARKET | | CHECKED BY | G&A | SHEET No. 2 OF 2 |

# DOUGLAS K. HODGE, MAI, ARA, CCIM, MRICS
**2343 Fish Lake Road**
**LAPEER, MICHIGAN 48446**
**810-516-5339**
**Dhodge173@gmail.com**

## EDUCATION

### *Appraisal Institute* - courses completed
Appraisal Principles, Basic Valuation Procedures, Capitalization Theory & Techniques, Part A and B, Standards of Professional Practice, Case Studies in Real Estate Valuation, Report Writing and Valuation Analysis, Valuation of Conservation Easements Certification Program, Uniform Appraisal Standards for Federal Land Acquisitions (Yellow Book), Seminars and Courses for Continuing Education, USPAP updates on a continuing basis.

### *American Society of Farm Managers and Rural Appraisers* - courses completed
Report Writing Seminar, Principles of Rural Appraisal Challenge, Advanced Rural Appraisal, Advanced Rural Case Studies and additional courses for continuing education on a continuing basis.

### *International Right of Way Association* - courses completed
Course 401 – Appraisal of Partial Acquisitions
Course 403 – Easement Valuation

### *CCIM Institute* - courses completed
Investment Analysis for Commercial Investment Real Estate
Financial Analysis for Commercial Investment Real Estate
Market Analysis for Commercial Investment Real Estate
User Decision Analysis for Commercial Investment Real Estate

### *Realtors Land Institute* – courses completed
Land Investment Analysis
Tax Deferred 1031 Exchanges
Fundamentals of Land Brokerage

### *Western Forestry and Conservation Association*
The Basics of Forest Land and Timber Appraisal

1983                  **Ferris State University**
Big Rapids, Michigan
B.S. Finance

1977                  **Delta College**
University Center, Michigan
A.A. Business

## EXPERIENCE

October 2017 – Present     **Farmers National Company**
Sr. Appraiser

2016 – August 2017        **Nuveen (formerly TIAA Global Asset Management)**
Vice President – Risk Management/Appraisal Services Group
Sr. Agricultural Appraisal Reviewer

2012 – 2016             **TIAA**
Sr. Director – Global Asset Management/Appraisal Services Group
Sr. Agricultural Reviewer

2007 – 2012             **Farmers National Company**
Eastern District Appraisal Manager

1991 – September 2017    **Capstone Realty Resources (fka Hodge Appraisal Group, Ltd.)**
Lapeer, Michigan
President and owner

**Agri Analysts, LLC**
President

**American Society of Farm Managers and Rural Appraisers**
Certified Instructor

1989 - 1991             **Trerice Tosto**
Birmingham, Michigan
Staff Appraiser

1986 - 1989             **Hodge and Associates, Inc.**
President

**Provided subcontract appraisal services to:**
Donald C. Johnson, MAI; Charles R. Green, MAI; Malcolm Milks, MAI; and Dean Appraisal Company in addition to providing appraisal services to clients of Hodge Appraisal and Consulting Service.

| | |
|---|---|
| 1985 - 1986 | **Great Lakes Valuation Service**<br>Partner |
| 1985 | ***Doane Farm Management Co.***<br>Regional Appraiser |
| 1983 - 1985 | ***Federal Land Bank Association of Caro***<br>Loan Officer/Appraiser<br>Certified Appraiser #715 |

Prior to employment at the Federal Land Bank, self-employed as the owner of a 280 acre dairy farm in Sanilac County, Michigan.

## MEMBERSHIP AND AFFILIATIONS

The Appraisal Institute - MAI Designation #9213
American Society of Farm Management and Rural Appraisers - ARA Designation #797
CCIM Institute – CCIM Designation
Royal Institution of Chartered Surveyors – MRICS designation
Michigan Society of Farm Managers and Rural Appraisers
State Certified General Appraiser, State of Michigan License #1201001482
Licensed Real Estate Broker, State of Michigan
Member of the Commercial Board of Realtors
Member of Lapeer County Planning Commission, 1991-1994, 2001- 2007
Member of Lapeer Township Planning Commission, 1993 - 1996, Chairman - 1995/96
Member of Mayfield Township Planning Commission, 1997 - 2001
Certified Instructor, American Society of Farm Managers and Rural Appraisers
Director – Great Lakes Chapter of the Appraisal Institute 1998 – 2001
Chapter officer – Vice President Great Lakes Chapter of The Appraisal Institute 2003; President 2004
Member of ASFMRA National Education and Accreditation Committee
ASFMRA representative to International Building Measurement Standards Committee – 2013 to present
ASFMRA representative to International Ethics Committee – 2014 to present
Lapeer County Board of Road Commissioners  2000 – 2012, Vice Chair  2001-2003; Chairman of the Board 2004 – 2012
District 3 Vice President – ASFMRA 2016 – 2019
President – Michigan Chapter of ASFMRA – 2016
Recipient of ASFMRA Stalcup Excellence in Education Award – 2016
Recipient of Rabo Agri Finance/ASFMRA Appraisal Professional of the Year Award – 2016

## AREAS OF SPECIALIZATION

Real estate valuation with emphasis on food processing, agribusiness, large production agriculture, permanent plantings, aggregate properties, right of way for roads, drains, pipeline easements, ad valorem tax appeals, commercial, industrial, multi-family, retail, subdivision analysis, vacant land, wetlands. Valuation studies include fractional interests, partition proceedings, eminent domain, leaseholds, market valuation, and providing expert witness services in accordance with the above types of valuations. Appraisal review services during employment with TIAA/Nuveen including properties in US, Australia, Brazil, Chile, New Zealand and Poland.

## REPRESENTATIVE APPRAISAL AND CONSULTING CLIENTS

Aegon USA Realty Advisors
Aetna Life and Casualty
Aetna Realty Investors, Inc.
Anderson, Stull and Kraft
Buckeye Egg Farm
Thomas J. Budzynski, Esq.
Butzel, Keidan, Simon, Meyers
  and Graham
Chase Bank
Chelsea Milling Co.
Cherry-Ke Orchards
Cigna Investments
Citizens First
Clark Hill
Comerica Bank
Cubitt, Cubitt and Trowhill
DayLay Egg Farm, Inc.
Delta Investments
Dorsey and Whitney
Drillock, Rinn and Drillock
Dykema, Gossett
Exchange National Bank
Farm Bureau Ins. Co.
Greenstone Farm Credit Services
First of America Bank
First Central Mortgage
First National Bank of Chicago
Garard, Moehle and Smith
Grand Traverse Land Conservancy
John Hancock Mutual Life Ins. Co.
David Heyboer, Esq.
Herbruck Poultry Farm, Inc.
Herbruck Foods, Inc.
Honigman Miller
Huron County Road Commission

Independent Bank
ITC
Jaffe, Snyder, Raitt and Heuer
Jay S. Kalish, Esq.
Kingston State Bank
Lapeer County Road Commission
Lambert, Leser, Dahm, Cook and Guinta
LaSalle Bank
Learman, Peters, Sarow and McQuillan
Little Forks Land Conservancy
Marlette Economic Development Corp.
McKay and McKay
Mennel Milling, Inc.
Michigan Dept. of Natural Resources
Michigan Dept. of Transportation
Miller, Canfield, Paddock and Stone
National City Bank
Oakland Land Conservancy
Pelavin and Powers
Providian Capital Management Real Estate Services
RaboAgriFinance
Ransford, Crews and Burgess
Sanilac Mutual Insurance Co.
State of Michigan, Attorney General
TCF Bank
Thumb National Bank
Total Petroleum
United States Government – NRCS, IRS, FmHA, Fish and Wildlife Division, Dept. of Justice
Wruble Elevator Co.
Zelenka Nursery, Inc.

## TYPES OF ASSIGNMENT

Ad Valorem Tax Valuations
Agribusiness Properties
Aggregate Mining Operations
Apartment Buildings
Appraisal Reviews
Automobile Dealerships
Bankruptcy Appraisals
Branch Bank Facilities
Condemnation, Eminent Domain
Conservation Easements
Corridors for Pipeline & Drainage Easements
Development Properties
Department Stores
Estate Appraisal
Food Processing Plants
Farms, specialized (poultry, swine and dairy) and general
Feasibility Studies
Flour Mills
Grain Elevators/Feed Mills
Industrial Plants
Medical & Dental Clinics
Office Buildings
Public Land Acquisitions
Residential Subdivisions
Shopping Centers
Valuation of Development Rights
Wetlands Valuation