UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROVER PIPELINE LLC,

    Plaintiff,                                                                  Case No. 17-10365

vs.                                                                         HON. MARK A. GOLDSMITH

1.23 ACRES OF LAND, et al.,

    Defendants.
_____/

**OPINION AND ORDER
DENYING ROVER'S MOTION IN LIMINE TO EXCLUDE DOCUMENTS NOT
PRODUCED IN DISCOVERY (DKT. 863); DENYING ROVER'S MOTION IN LIMINE
TO EXCLUDE COST-TO-CURE DAMAGES (DKT. 869); DENYING ROVER'S
MOTION IN LIMINE TO EXCLUDE LOST BLUEBERRY PRODUCTION DAMAGES
(DKT. 870); GRANTING IN PART ROVER'S MOTION IN LIMINE RE: DISCOVERY
SANCTIONS (DKT. 880); AND DENYING ROVER'S MOTION IN LIMINE TO
EXCLUDE CLAIMS FOR SPECULATIVE LOST PROFITS (DKT. 881)**

This matter is before the Court on several motions in limine brought by Plaintiff Rover Pipeline, LLC (Dkts. 863, 869-870, & 880-881). Most of the issues have been fully briefed; for those without full briefing, the time to file has since passed. See E.D. Mich. LR 7.1(e)(2). The Court has dispensed with oral argument, as it will not aid in the decisional process. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). The disposition of each motion will be addressed below and summarized in the conclusion of this opinion and order.

**I.    LEGAL STANDARD**

A motion in limine is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." Luce v. United States, 469 U.S. 38, 40 n.2 (1984). "'Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of material fact, a motion in limine is designed

1

to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" Louzon v. Ford Motor Co., 718 F.3d 556, 561 (6th Cir. 2013) (quoting Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990)).

> In other words, a mechanism already exists in civil actions to resolve non-evidentiary matters prior to trial—the summary-judgment motion. Allowing a party to litigate matters that have been or should have been resolved at an earlier stage not only allows those dissatisfied with the court's initial ruling a chance to relitigate, but also deprives their opponents of the procedural protections that attach at summary judgment.

Id. (citing Williams v. Johnson, 747 F. Supp. 2d 10, 14 (D.D.C. 2010) ("In light of their limited purpose, motions in limine should not be used to resolve factual disputes, which remains the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards.")). "Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. However, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## II. ANALYSIS

### A. Rover's Motion to Preclude Testimony and Evidence Not Disclosed During Discovery (Dkts. 863 & 880)

Rover seeks to preclude testimony from the Middleton Defendants and Simcheck Defendants under Federal Rule of Civil Procedure 37(c) and Federal Rule of Evidence 403 to the

extent their testimony is based on documents and information not disclosed during discovery and to preclude the introduction of any evidence not disclosed in discovery. The Middleton Defendants argue that almost all the discovery of which Rover complains relates to post-taking matters, which will be raised by a separate action, and is therefore not relevant to this case. Middleton Resp. at 2 (Dkt. 865). They say that as to the remaining damages items (loss of privacy, views, and natural features) they have provided the relevant discovery. Id. at 2, n.1. Nonetheless, the Middleton Defendants argue that Rover's motion goes well beyond seeking to limit damages evidence and is attempting to preclude the Middleton Defendants from testifying regarding any document or information not disclosed in discovery.

Rover also argues that the Simcheck and Meadowbrook Defendants' invoices from 2016-2017 that were not produced during discovery should be excluded and that their expert witnesses should be prohibited from testifying and their respective reports excluded for failure to produce their respective work files (Dkt. 880). However, the discovery deficiencies related to the invoices were cured shortly after Rover filed its motion, and Rover no longer seeks to exclude the Simcheck Defendants' invoices. Reply at 4 (Dkt. 889). Rover still seeks sanctions related to the Simcheck Defendants' failure to produce their experts' work files. Id. at 6.

Federal Rule of Civil Procedure 26 requires parties to make initial disclosures, which includes "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material." Fed. R. Civ. P. 26(a)(1)(iii). Parties have an ongoing duty to supplement their initial disclosures, interrogatory responses, document productions, and admissions "in a timely manner if [a] party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been

made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).

Rover's motion to enforce Rule 37(c) sanctions with respect to the Middleton Defendants is premature. The parties' dispute is limited to the sufficiency of the Middleton Defendants' damages evidence disclosed during discovery. Rover says that the evidence is lacking, and the Middleton Defendants say they have provided all relevant evidence. This dispute is not appropriate to resolve on a motion in limine. This is not a situation where new discovery was served after the close of discovery and the Court must determine whether it falls under one of the Rule 37(c) exceptions. There is no new discovery for the Court to review. Any opinion by the Court on materials that should be excluded under Rule 37(c) would be either speculative or advisory, because the evidence has not been produced and may never be produced in this matter. If the Middleton Defendants seek to introduce evidence that was not produced in discovery, the Commission will be in the best position to determine whether it should be excluded under Rule 37(c) or whether it falls under one of the exceptions. Accordingly, the Court denies Rover's motion to preclude testimony and evidence not disclosed during discovery (Dkt. 863).

Rover also seeks to exclude the Simcheck Defendants' experts, Aaron Hathaway and Douglas K. Hodge, for failure to produce the work files used in preparation of their respective reports (Dkt. 880). The Simcheck Defendants admit that not all of the information in their expert witnesses' work files were produced. Resp. ¶ 17. However, according to the Simcheck Defendants, all of the documents not disclosed were already in Rover's possession. Id. Specifically, "Rover's initial offer to acquire easements, Rover's appraisal, the Notice of Action

4

regarding the Pipeline, Defendant's Answer to Complaint, Affirmative Defenses and Jury Demand, the Permanent easement agreement, Temporary road agreement, right-of-way cost assessment, Defendants' license agreement with ITC and the Simchecks' property diagram." Id. Additionally, Aaron Hathaway took some photographs <u>after</u> his expert report was produced, but they were subsequently produced to Rover. Id. at 13. The Simcheck Defendants argue that the omissions were harmless. Id. at 11. Rover argues that the Simcheck Defendants' work file omissions were not harmless, because it could not analyze the expert opinions and conduct additional discovery, if needed. Reply at 5-6. Rover still seeks to exclude the Simcheck Defendants' expert witnesses. Id. at 6.

The Sixth Circuit considers five factors to determine whether a late disclosure is substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

<u>Howe v. City of Akron</u>, 801 F.3d 718, 748 (6th Cir. 2015). Rover was not surprised by the undisclosed work file documents. All of the documents were already in its possession and it appears to have known that documents were missing based on Rover's repeated discovery requests seeking the documents. Rover says that it was prejudiced in its ability to properly analyze the Simcheck Defendants' expert reports and conduct additional discovery, if needed. At this point, Rover has had time to properly analyze the reports with complete work files and determine if additional discovery is needed. The Simcheck Defendants acknowledge that they were required to produce all of the work file documents, but fail to provide an adequate explanation for its failure to do so. Whether the documents are important is unclear at this point.

Based on the foregoing, the Court cannot say that the Simcheck Defendants' failure to

5

provide full expert work files was harmless. To avoid potential prejudice to Rover, the Court will allow Rover to take the depositions of the Simcheck expert witnesses within a narrow window of time, which will not disrupt the Commission's hearing schedule. Accordingly, Rover's motion re: discovery sanctions is granted in part.

### B. Rover's Motion to Preclude Cost-To-Cure Evidence and to Strike Portions of Expert Reports (Dkt. 869 & 870)

Rover makes three arguments in its motions in limine (Dkt. 869 & 870). It argues that Defendants Mark and Linda Selby's (the "Selby Defendants") just compensation award should be limited to $16,000; that expert witness John A. Rasmussen is unqualified to opine on estimated costs to restore blueberry production; and that evidence related to lost blueberry production that violates the unit rule should be excluded. The Court will take each argument in turn.

#### 1. Compensation in Excess of $16,000

Rover argues that the Selby Defendants' just compensation award should be limited to $16,000 based on the Selby Defendants' expert witness's report. Rover's Mot. in Lim. to Exclude Cost-to-Cure Evidence at 6 (Dkt. 869). The Selby Defendants' expert, John A. Rasmussen, concluded that the market value of their land before Rover's taking was $1,140,000 and the market value after the taking is $1,124,000. Rasmussen Report, Ex. 1 to Rover's Mot. at 42 (Dkt. 869-1). The difference between the before and after values is $16,000. Rover argues that any amount over $16,000 is not relevant and therefore inadmissible. Id. at 4, n.1. (citing Fed. R. Evid. 402). The Selby Defendants argue that Rover misunderstands the Rasmussen report. They say that the after-taking valuation includes a $787,500 cost-to-cure offset. In support of their position, the Selby Defendants provide a declaration by Rasmussen confirming that his post-taking valuation includes an offset for compensation paid for curative measures and lost productivity. Rasmussen Decl., Ex. B to Selby Resp., ¶ 17 (Dkt. 878-3). In Rasmussen's opinion, the Selby Defendants are entitled to

$809,900 as just compensation (this amount includes the $16,000 mentioned above, $6,400 in compensation for temporary workspace, and $787,500 for the cost to cure). Id. ¶ 18. The question the Court must answer is simply whether the cost-to-cure evidence in excess of $16,000 is admissible as evidence of just compensation. There is no question that the evidence is admissible.

A just-compensation calculation requires "that the proper amount of compensation for property takes into account all factors relevant to market value." Silver Creek Drain Dist. v. Extrusions Div., Inc., 663 N.W.2d 436, 442 (Mich. 2003). "[A] guiding principle when awarding just compensation in a condemnation suit is to 'neither enrich the individual at the expense of the public nor the public at the expense of the individual' but to leave him 'in as good a position as if his lands had not been taken.'" Michigan Dep't of Transp. v. Tomkins, 749 N.W.2d 716, 725 (Mich. 2008) (quoting In re State Hwy. Comm'r, 229 N.W. 500 (Mich. 1930)). "Evidence regarding value is to be liberally received." Detroit/Wayne Cty. Stadium Auth. v. Drinkwater, Taylor, & Merrill, Inc., 705 N.W.2d 549, 564-565 (Mich. App. 2005) (citing In re Memorial Hall Site (Detroit v. Cristy), 25 N.W.2d 174 (Mich. 1946). "The determination of value is not a matter of formulas or artificial rules, but of sound judgment and discretion based on consideration of all relevant facts in a particular case." Id. (citing In re Widening of Bagley Ave., 226 N.W. 688 (Mich. 1929)). To that end, "in a partial taking, the formula to calculate the fair market value of the remainder parcel must account for the fact that damages will vary from case to case, depending on the unique circumstances of each taking. Restoring the individual to his position before the taking will require a flexible, case-by-case approach to damages." Tomkins, 749 N.W.2d at 725.

One approved method for determining just compensation for a partial taking "consists of the fair market value of the property taken plus severance damages to the remaining property if applicable." Department of Transportation v. Sherburn, 492 N.W.2d 517, 520 (Mich. App. 1992).

7

Severance damages arise where a "'partial taking not only deprives the owner of the property that is actually taken but also diminishes the value of the property remaining to the owner.'" Rover Pipeline, LLC v. 1.23 Acres of Land, More or Less, Permanent Easement (Pipeline Right-of-Way Servitude), No. 17-CV-10365, 2018 WL 3322995, at *3 (E.D. Mich. July 6, 2018) (quoting United States v. 91.90 Acres of Land, Situate in Monroe Cty., Mo., 586 F.2d 79, 86 (8th Cir. 1978). "To calculate the severance damages, the parties may present evidence of the cost to cure." Id. "Where severance damages are claimed, the maximum damages recoverable equal (the market value of the parcel taken) plus (the market value of the remainder after the taking) plus (the cost-to-cure expenses); however, the total damages awarded may not exceed the fair market value of the whole parcel before the taking." Id. at 520. "Thus, any evidence that would tend to affect the market value of the property as of the date of condemnation is relevant." Dep't of Transp. v. VanElslander, 594 N.W.2d 841, 843 (Mich. 1999) (emphasis added).

The Rasmussen's cost-to-cure valuation is admissible evidence. Rover cites no authority for the proposition that a value in the Sherburn formula should be limited in any way before presentation of the evidence to the trier of fact. Whether Rasmussen's valuation of the post-taking value does or should include a cost-to-cure offset is a fact question for the Commission to decide. It is well-settled that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Clay v. Ford Motor Co., 215 F.3d 663, 669 (6th Cir. 2000) (quoting Daubert, 509 U.S. at 596)). The cost-to-cure evidence is relevant to severance damages and therefore a matter for the Commission to consider. Accordingly, Rover's Motion to preclude cost-to-cure evidence in excess of $16,000 is denied.

    **2. Motion to Strike Portions of Rasmussen's and Tritten's Expert Reports (Dkt. 870)**

Rover attacks both the methodology in Rasmussen's report and his qualifications as an expert. As to methodology, Rover argues that Rasmussen double counted the value of the blueberry production by first incorporating the value into the fair market value appraisal and then adding the lost profit values to the total. Rover Mot. at 7. The Court has previously ruled that double counting in such a fashion is a flawed methodology. Rover Pipeline, LLC v. 1.23 Acres of Land, More or Less, Permanent Easement (Pipeline Right-of-Way Servitude), No. 17-CV-10365, 2018 WL 3322995, at *9 (E.D. Mich. July 6, 2018). However, as noted above, Rasmussen states that his methodology does not suffer from the double-counting flaw, because his valuation includes an offset for the costs to cure the property. The trier of fact will decide if such a valuation is a credible method to determine just compensation.

Rover also argues that Rasmussen's methodology is flawed because it is contrary to generally accepted and recognized professional standards, such as the Uniform Standards of Professional Appraisal Practice ("USPAP"). Id. at 9-10 (citing Mich. Comp. Laws § 339.2605(1) (requiring "a licensee . . . who performs an appraisal shall utilize the uniform standards of professional appraisal practice that are in effect at the time the licensee is engaged to perform the appraisal")). To comply with the USPAP, an appraiser when analyzing "the assemblage of the various estates or component parts of a property, . . . must analyze the effect on value, if any of the assemblage." USPAP at 21, Ex. 3 to Rover's Mot. (870-4). "An appraiser must refrain from valuing the whole solely by adding together the individual values of the various estates or component arts." Id. The comment to the USPAP standard notes that "[a]lthough the value of the whole may be equal to the sum of the separate estates or parts, it also may be greater than or less than the sum of such estates or parts. Therefore, the value of the whole must be tested by reference to appropriate data and supported by an appropriate analysis of such data." Id. The USPAP

comment recognizes that the value of component parts is useful as reference data in valuing property as a unitary whole. As with the unit rule, Rasmussen's explanation of his valuation is consistent with the USPAP. To the extent the USPAP applies, the trier of fact will decide whether Rasmussen's valuation is credible.

As to Rasmussen's qualifications as an expert, Rover argues that Rasmussen is a general appraiser, not a soils expert, and is therefore not qualified to opine on the estimated cost to restore blueberry production. Rover. Mot. ¶ 7. The Selby Defendants argue that Rasmussen is well qualified to provide expert testimony on all matters within his report and that the information will be helpful to the trier of fact. Selby Resp. at 9-11.

Under Federal Rule of Evidence 702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if the following criteria are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 places a special obligation on the trial court to be a gatekeeper, ensuring that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589, 597. In Kumho Tire Company v. Carmichael, 526 U.S. 137 (1999), the Supreme Court clarified that the "gatekeeping obligation" is not limited to "scientific" expert testimony, but applies to all expert testimony. In other words, Rule 702 requires a district court to satisfy itself that the proposed expert testimony will assist the trier of fact, before permitting the trier of fact to assess such testimony. Id. at 148-149. The proponent of the expert must establish admissibility

by a preponderance of the evidence. Nelson v. Tenn. Gas Pipeline, Co., 243 F.3d 244, 251 (6th Cir. 2001).

The Selby Defendants retained John A. Rasmussen to assess the effect of the Rover pipeline on their blueberry farm. Rasmussen is a University of Michigan School of Business graduate and a Michigan-certified general appraiser with MAI and SRA professional appraisal designations. Rasmussen Appraisal, Ex. A to Selby Resp., at 75 (Dkt. 878-2). He has further professional education in areas such as "highest and best use analysis" and he has taught appraisal courses in both the United States and Canada. Id. He has provided appraisal services to government clients including the Michigan Department of Transportation, Michigan Department of Natural Resources, and Washtenaw County Road Commission. Id. at 76.

The Selby Defendants included a declaration by Rasmussen with their response brief to fill in some of the details of Rasmussen's summary of qualifications. Rasmussen Decl., Ex. B to Selby's Response (Dkt. 878-3). Rasmussen explains that through his decades of experience with the Michigan Department of Transportation he has appraised the highest and best use of farmland across the state of Michigan and acquired specialized knowledge with respect to damages and curative measures to restore farmlands to conditions prior to condemnation. Id. ¶ 3.

Rover argues that while Rasmussen has experience as a general appraiser, he does not have any relevant experience as a soil expert or an agricultural expert. "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." Berry v. City of Detroit, 25 F.3d 1342, 1351 (6th Cir. 1994). Rasmussen's experience as a general appraiser with specialized knowledge in curative measures of Michigan farmlands provides a sufficient foundation for him to answer the specific question of what curative measures must be undertaken to restore the Selby

11

Defendants' property to its previous condition. Rasmussen's qualifications satisfy the first requirement under Rule 702.

### 3. Future Blueberry Production Loss (Dkt. 870)

Rover argues that the Selby Defendants' expert witness Robert Tritten's opinion on the estimated value of lost future blueberry production from bushes removed as part of Rover's taking is improper because it is too speculative. Rover's Mot. to Exclude Evid. of Future Blueberry Prod. at 6-7 (citing Muskegon Cty. v. Bakale, 303 N.W.2d 29 (Mich. App. 1981)). The Selby Defendants argue that the rule applied in Bakale "'is not the exclusive measure of damages in Michigan where a partial taking is at issue.'" Selby Resp. at 12 (citing Rover Pipeline, LLC v. 1.23 Acres of Land, More or Less, Permanent Easement (Pipeline Right-of-Way Servitude), No. 17-CV-10365, 2018 WL 3322995, at *8 (E.D. Mich. July 6, 2018)).[1] The Selby Defendants have the better part of the argument.

Tritten, the District Fruit Educator in East Michigan for Michigan State University Extension since 1983, opined that the Rover pipeline will cause the Selby Defendants blueberry crop losses of between $783,378 to $987,403 over the next ten to fifteen years. Tritten Report, Ex. 1 to Rover Mot.at 5 (Dkt. 870-2). In his report, Tritten explains that blueberry bushes on the Selby farm are in a "deep rich muck soil, which is unique as to its ability to productively produce blueberries." Id. at 1. Once the soil is disturbed, however, such as by the installation of a pipeline, the soil will no longer support any weight. Id. For example, the Selby Defendants attached a

---

[1] In support of their position, the Selby Defendants also make three arguments that do not adequately address Rover's argument. The Selby Defendants argue that the estimated lost future blueberry crops are admissible because (i) the loss of mature crops are severance damages; (ii) Rover should be estopped from making inconsistent arguments; and (iii) the lost blueberry production constitutes business interruption damages. The Court need not address these arguments, because the matter will be resolved on other grounds.

photograph of a large excavator sinking almost entirely into the compromised muck soil near the pipeline. Ex. D to Selby Resp. (Dkt. 878-5).

At the time of his report, Tritten estimated that the pipeline would destroy 1.84 of blueberry production acreage and another 1.9 acres would be inaccessible for many years, for a total of 3.74 acres. Tritten Report at 2. Based on his expertise in the area of blueberry production, Tritten estimated that the Selby Defendants would lose blueberry profits of between $408,050 and $612,075 over the next ten to fifteen years. Id. at 3. Additionally, Tritten estimated that the cost to replant and reestablish the 3.74 acres with blueberry bushes after the soil conditions improved would be $76,022. Finally, Tritten estimated that any newly planted blueberry bushes would take time to reach full production. He estimated that the Selby Defendants would lose an additional $299,306 in profits over the twelve years it will take for newly planted bushes to mature. Id. at 3-5.

In Michigan, "[d]amages will not be allowed in condemnation cases unless they can be proven with reasonable certainty." Muskegon Cty. v. Bakale, 303 N.W.2d 29, 31 (Mich. App. 1981) (citing Board of Education of City of Grand Rapids v. Baczewski, 65 N.W.2d 810 (Mich. 1954)). "The loss of speculative profits, therefore, has been held not to be allowable as an element of compensation." Id. (citing In re Grand Haven Highway, 97 N.W.2d 748 (Mich. 1959); City of Lansing v. Wery, 242 N.W.2d 51 (Mich. App. 1976)).

In Bakale, the Michigan Court of Appeals considered how to value marketable Christmas trees growing on a property, which was taken by the county for a sewage disposal system. Id. at 30. The land owners argued that the Christmas trees should be valued based on their expected sale price at the time of harvest less the cost to produce and market the trees (sometimes called "the tortious destruction of crops theory"). Id. The county argued that the Christmas trees, like other

13

natural resources, should be considered for their increased value to the land "in place," commonly referred to as the "unit rule." The Bakale panel held "that the trial court employed the appropriate evaluation method . . . and did not err in refusing to utilize the tortious destruction of crops theory under the facts and circumstances of th[e] case." Id. at 32. The panel explained that the industry prices for Christmas trees were inconsistent and that there was no certainty that the trees would even make it to market, because of disease, insects, fire, and other concerns. Id. The Bakale panel found that valuing the trees either as ordinary timber or as immature Christmas trees had a value on the date of the taking and that value could be determined with substantial certainty. Id. at 31-32.

Rover argues that "Bakale makes clear that the Selby Defendants cannot recover damages based on estimated lost future blueberry crops, as such a damages calculation is too speculative." Rover. Mot. at 7. However, Bakale does not stand for the proposition that estimated future crop production is necessarily "too speculative." In Bakale, the panel affirmed the trial court's appropriate use of the unit rule over other valuation theories "under the facts and circumstances of th[at] case." Bakale, 303 N.W.2d at 32 (emphasis added). Bakale does not endorse the unit rule as the only appropriate valuation theory in Michigan. Instead, Bakale is simply illustrative of the rule that "speculative" lost profits cannot be considered as an element of compensation.

Here, whether the Selby Defendants' valuation is "too speculative" is quintessentially a fact question reserved for the trier of fact. "The determination of value is not a matter of formulas or artificial rules, but of sound judgment and discretion based on consideration of all relevant facts in a particular case." Detroit/Wayne Cty. Stadium Auth., 705 N.W.2d at 564-565 (citing In re Widening of Bagley Ave., 226 N.W. 688 (Mich. 1929)). Questions regarding appropriate value (including accounting for expenses) and valuation method will be decided by the Commission

14

based on the facts and circumstances related to the Selby Defendants' blueberry farm. Accordingly, Rover's motion to preclude testimony and evidence of lost blueberry production damages that violate the unit rule is denied.

### C. Rover's Motion to Preclude Evidence 0f Speculative Lost Revenues (Dkt. 881)

As an initial matter, the Simcheck Defendants argue that Rover's motion is a dispositive motion improperly brought as a motion in limine. Simcheck Resp. 2-5 (Dkt. 885). They represent that Rover does not cite any meaningful evidentiary authority and seeks dispositive relief. Id. at 2. The Court finds otherwise. Rover cites relevant authority and seeks to exclude narrow categories of evidence, which is appropriate in a motion in limine.

Rover seeks to exclude evidence of lost sod farm revenues allegedly suffered by Defendants Elaine Simcheck, Michael Simcheck, and Meadowbrook Acres, Inc. ("Simcheck Defendants"). The Simcheck Defendants did not retain their own expert to opine specifically on their projected lost sod profits.[2] Instead, they rely on Rover's expert witness Mark Williams, as well as their own testimony and business records to establish their lost sod farm revenues. Rover seeks to exclude evidence of the value of the Simcheck Defendants' sod crops at the time of Rover's taking and the value of all future sod crops, because it argues that the Simcheck Defendant's valuation does not deduct the costs and expenses of producing sod and it is too speculative to be relevant to just compensation. Rover Mot. at 5.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed.

---

[2] The Simcheck Defendants retained Aaron Hathaway to opine on soil disruption likely to be caused by the Rover pipeline. Hathaway Report, Ex. B to Simcheck Defendants' Response (Dkt. 885-3).

15

R. Evid. 401. However, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Rover first argues that the lost gross sod revenues should be excluded because it would result in an impermissible windfall to the Simcheck Defendants. Rover Mot. at 7. The windfall, Rover argues, would result because the Simcheck Defendants cannot provide evidence related to sod production and harvesting costs. Id. at 8-9. Therefore, it argues that any evidence related to lost sod gross revenue would be irrelevant and potentially prejudicial if admitted. Id. at 9. The Simcheck Defendants argue that with respect to the sod crop destroyed by Rover's taking, the production costs had already been incurred and the crop was ready to be harvested. Simcheck Resp. at 2. As to the harvesting costs and future lost production, the Simcheck Defendants argue that the compensation can be proved with reasonable certainty based on their testimony, retail sod prices, and Rover's expert. Id.

The alleged windfall may not be as great as Rover argues. The Simcheck Defendants admit that they do not know their exact overhead costs to produce their sod. Paul Simcheck Dep. at 37:10-14. The reason the exact overhead costs to produce and harvest sod are not known is because the Simcheck Defendants are not in the business of selling sod directly to customers. Id. The Simcheck Defendants' business includes sod farming, but the main business is the sod installation. Id. at 24:13-17. The sod farming and installation makes up about eighty percent of the business. Id. at 24:18-25. They only sell sod as a stand-alone crop to existing customers as a curtesy to maintain good client relationships. Id. at 35:13-21, 36:23-37:3. These stand-alone sod sales account for less than one percent of the Simcheck Defendants' business. Id. at 36:13-18.

The Simcheck Defendants' testimony and evidence related to their lost sod and lost profits is relevant to the lost value of their business and means to determine how best to put them "'in as good a position as if [their] lands had not been taken.'" Tomkins, 749 N.W.2d at 725 (quoting In re State Hwy. Comm'r, 229 N.W. 500 (Mich. 1930)). The Simcheck Defendants potential inability to calculate overhead sod production costs is not more prejudicial than probative where, as here, the actual value of the sod may be marginal in comparison to the value of the sod installation. Whether the inability to calculate overhead costs will result in overcompensation is a matter properly left to the sound judgment of the Commission.

Rover also argues that the Simcheck Defendants' lost gross revenue calculations are too speculative, for many of the same reasons discussed in the preceding section. Rover Mot. at 9. Additionally, Rover argues that sod prices are speculative because they fluctuate, which the Simcheck Defendants confirmed in their depositions. Id. at 11. Paul Simcheck confirmed that sod prices in 2017 were approximately twenty percent lower than in 2018 due to weather and other factors. Paul Simcheck Dep. at 69:25-70:6. Michael Simcheck testified that he can say what sod prices are today, but not what sod prices may be in the future. Michael Simcheck Dep. 95:3-6, Ex. 4 to Rover Mot. Rover argues that like the crop prices in Bakale, the Simcheck Defendants' valuation is too speculative to be admissible in this matter. Rover Mot. at 12. Rover also argues that the Simcheck Defendants' valuation of lost sod revenue presumes that all of the sod produced would have been used, which is again speculative. Id. at 13.

Rover's argument goes to the weight of the Simcheck Defendants' evidence and not its admissibility. The Bakale panel did not hold that the Christmas tree farm's lost-profit evidence should have been excluded. The panel agreed with the trial court's assessment that the Christmas tree projected sales evidence was too speculative to be an element of compensation. Bakale, 303

N.W.2d at 32. In other words, although the trial court admitted the projected sales evidence, it afforded the evidence little to no weight. Here, as in Bakale, the evidence is admissible, even if the evidence is ultimately found to be too speculative to be an element of just compensation. Accordingly, Rover's motion to exclude speculative lost profits is denied.

### III. CONCLUSION

Accordingly, the Court **DENIES** the following motions in limine: Rover's motion in limine to exclude documents not produced in discovery (Dkt. 863); Rover's motion in limine to exclude cost-to-cure damages (Dkt. 869); Rover's motion in limine to exclude lost blueberry production damages (Dkt. 870); and Rover's motion in limine to exclude claims for speculative lost profits (Dkt. 881). The Court **GRANTS IN PART** Rover's motion in limine re: discovery sanctions (Dkt. 880). The Simcheck Defendants must make their expert witnesses available for depositions **on or before March 15, 2019**, if Rover elects to proceed with such depositions. Rover's motion re: discovery sanctions is **DENIED** in all other respects.

SO ORDERED.

Dated: March 1, 2019　　　　　　　　　　　　　　s/Mark A. Goldsmith  
　　Detroit, Michigan　　　　　　　　　　　　　　MARK A. GOLDSMITH  
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 1, 2019.

　　　　　　　　　　　　　　　　　　　　　　　　s/Kristen MacKay for Karri Sandusky  
　　　　　　　　　　　　　　　　　　　　　　　　Case Manager