UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROVER PIPELINE LLC,

      Plaintiff,                                        Case No. 17-10365

vs.                                        HON. MARK A. GOLDSMITH

1.23 ACRES OF LAND, et al.,

      Defendants.
_____/

## ORDER ON COMMISSION INSTRUCTIONS

The Court sets forth the following Commission instructions. Any objections to the Commission instructions shall be filed **on or before 12 p.m. on April 11, 2019**. No responses to objections will be allowed. If no objections are filed, the Commission instructions will become final and issued to the Commission. If objections are filed, the Commission instructions will become final after the Court resolves the objections.

### A.      Introductory Instruction.

This is a case in eminent domain, which means the power of the government or an agency to take private property for a public purpose upon payment of just compensation to the owner of the property taken. Under the constitution and laws of this state, all private property is held subject to this right of eminent domain. The right of eminent domain is exercised through proceedings commonly called a condemnation action. This is such an action.

Rover Pipeline, LLC ("Plaintiff") has acquired a non-exclusive 50' easement, as well as temporary easements, across several properties to install a 42" high- pressure interstate natural gas transmission pipeline. Defendants include property owners and non-property owners who possess

interests in the properties at issue. Plaintiff's easements (herein, "Easements") are described in paragraphs 29-49 of Plaintiff's Verified Complaint, in Exhibit A to Plaintiff's Verified Complaint, as amended, and in the Notices of Commencement of Condemnation Action Plaintiff filed for each property. The Natural Gas Act, 15 U.S.C. § 717 et seq., gives Plaintiff the right to appropriate the non-exclusive Easements subject to the requirement that compensation for such taking shall be assessed by the Commission. The Commission acts as an assessing body in determining the amount of compensation to be paid to the Defendants.

(*See* M Civ JI 90.01).

**B.      Substantive Michigan Law Applies.**

This is an action brought under the Natural Gas Act, 15 U.S.C. 717 et seq., but state law also applies. That is because the Sixth Circuit has held that "although condemnation under the Natural Gas Act is a matter of federal law, § 717f(h) incorporates the law of the state in which the condemned property is located in determining the amount of compensation due." Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement, 962 F.2d 1192, 1199 (6th Cir. 1992). Accordingly, the Commission shall apply Michigan substantive law in determining the just compensation awards due and federal procedural law in conducting the compensation proceedings. Id.

**C.      General Instructions on Commissioners' Duties, Powers, and Report.**

Pursuant to Rule 71.1, "[a] commission has the powers of a master under Rule 53(c). Its action and report are determined by a majority. Rule 53(d), (e), and (f) apply to its action and report." Fed. R. Civ. P. 71.1(h)(2)(D). Accordingly, the Court directs that the Commissioners shall: (1) regulate all Commission hearings and all proceedings related to these hearings, such as briefing at the discretion of the commissioners; (2) take all appropriate measures to perform their assigned

duties fairly and efficiently; and (3) exercise the same power as this Court to compel, take, and record evidence. Fed. R. Civ. P. 53(c). The Commission shall establish its own procedures for filing and responding to motions. The Commission shall produce written orders as necessary, which the Commission shall forward to chambers for filing and service on each party involved in a hearing. Fed. R. Civ. P. 53(d). Similarly, the Commission shall produce a written report on just compensation ("report") to the Court, which shall be filed and served on each party involved in a hearing. Fed. R. Civ. P. 53(e). The Commission may, in its discretion, issue a single report at the conclusion of all hearings, or issue reports on different dates regarding different properties grouped as it deems appropriate.

All written orders and reports shall be signed by the participating Commission members, and, as with all orders and reports, an electronic signature is sufficient. Evidentiary or procedural orders as recognized below that fall within the province of the Chairperson need only be signed by the Chairperson. The written orders and reports shall include all relevant findings of fact and conclusions of law; procedural orders need not be as comprehensive but should be sufficiently detailed to enable this Court to conduct adequate review when necessary. The United States Supreme Court has stated that "[c]onclusory findings are alone not sufficient," because a district court would "have no way of knowing what path the commissioners took through the maze of conflicting evidence." United States v. Merz, 376 U.S. 192, 198 (1964). Thus, although "[t]he commissioners need not make detailed findings such as judges do who try a case without a jury[,]" the commissioners must nonetheless "reveal the reasoning they use in deciding on a particular award, what standard they try to follow, which line of testimony they adopt, what measure of severance damages they use, and so on." Id.; see also 13 James W. Moore, Moore's Federal Practice § 71.1.12[4] ("A report containing only conclusory statements and a summary of the evidence is

clearly insufficient."). Additionally, not "every contested issue raised on the record before the [C]ommission must be resolved by a separate finding of fact[]" and there does not have to be "an array of findings of subsidiary facts to demonstrate that the ultimate finding of value is soundly and legally based." <u>Merz</u>, 376 U.S. at 198-199. Rather, the path followed by the commissioners in reaching their decisions should be "distinctly marked." <u>Id.</u> at 199. The Commission is therefore "required to state not only the end result of their inquiry, but the process by which they reached it." <u>Id.</u>

Upon the filing of a Commission order or report, a party involved in the hearing with which the order or report is concerned may file specific and detailed objections to the Commission order or report no later than seven (7) days after a copy of an order is served and fourteen (14) days after a copy of a report is served. Fed. R. Civ. P. 53(f)(2). This shall constitute the party's notice of and opportunity to be heard on the order or report. Fed. R. Civ. P. 53(f)(1). The Court may in its discretion elect to receive evidence related to the order or report, but no oral argument or hearing on any objection will be held unless ordered by the Court. The parties should note that in acting on a Commission order or report, the Court may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the Commission with instructions the order or report. Fed. R. Civ. P. 53(f)(1).

A response to any objection to an order or report must be filed within seven (7) days of the objection. No reply briefs may be filed, unless specifically allowed by the Court. The Court will decide any objection to a conclusion of law or finding of fact made or recommended by the commission on a de novo basis. Fed. R. Civ. P. 53(f)(4). The Court will review the commission's ruling on a procedural matter under an abuse of discretion standard. Fed. R. Civ. P. 53(f)(5). The Commission's report(s) on just compensation shall be submitted to the Court **on or before July**

**26, 2019**.

### D. Duties of Chairperson.

The Court has designated Robert S. Rollinger as the Commission Chairperson. The Chairperson shall make all discovery and evidentiary rulings related to all hearings in which he takes part and will insure that the Commission adheres to any rulings by this Court. See 13 James W. Moore, Moore's Federal Practice § 71.1.12[1] ("A lawyer is often appointed by the court to function as Chairperson and to make evidentiary rulings."). In any hearing in which the Chairperson does not participate, he shall designate another Commissioner to assume the role of chairperson for that hearing and that designated Chairperson shall make all evidentiary rulings. The Chairperson shall also be responsible for conducting the hearing – i.e., calling the hearing to order and supervising the proceedings. Finally, although all of the exhibits that have been admitted into evidence will go to the courtroom deputy following the filing of the report to which they pertain, the Chairperson is charged with maintaining control of the exhibits until delivery to the courtroom deputy.

### E. Alternate Commissioners.

The alternate Commissioners shall attend each hearing and shall not be discharged until the Commission has reached a just compensation decision and the Court has made its final ruling on the matter. Prior to replacing a Commissioner, an alternate Commissioner cannot be present at, or participate in, the Commission's deliberations. If, before or during deliberations, it becomes impossible for a regular Commissioner to continue his or her duties, the alternate Commissioner will replace that regular Commissioner. If such replacement occurs during the course of deliberations, the Commission must start its deliberations over again. Unless he or she has replaced a regular Commissioner and is engaged in the deliberations, no alternate Commissioner may

discuss the case with anyone, including the other alternate Commissioner.

**F.     Viewing Property.**

Any party may file a written request or stipulation thirty (30) days prior to a scheduled hearing for a viewing of the property by the Commission. Any objection to a viewing request shall be filed within seven (7) days of the request's filing. If the assistance to the Commission is outweighed by an injustice to a party, however, the request for a viewing may be denied. Such denial is proper, for example, where the only purpose the view could serve would be to show the property in an unfair light or where the Commission, in the exercise of its discretion, finds that the prejudicial nature of the view exceeds any illustrative benefits or efficacy. If a viewing is not denied or is held by stipulation, the Commission and the parties shall then work to coordinate the viewing, which must be completed prior to the close of evidence. Failure to file a written request or stipulation by the deadline described shall constitute a waiver or forfeiture of a request for a viewing, subject to a showing of good cause warranting an exception for an untimely request. The view of the premises is not evidence. Rather, it is solely for the purpose of enabling the Commission to better understand the evidence offered by the parties.

**G.     Location of Hearing.**

Unless otherwise ordered by the chairperson or this Court, or stipulated by the parties, all hearings shall be held at the Theodore Levin U.S. Courthouse, United States District Court for the Eastern District of Michigan in Detroit, Michigan. Hearings may, as necessary, be held away from this location in order to accommodate schedules or for the convenience of the parties, counsel, or Commission members. Any party may file a written request or stipulation thirty (30) days prior to a scheduled hearing to conduct the hearing in a location other than the courthouse. Failure to file such a written request or stipulation by the deadline described shall constitute a waiver or forfeiture

of a request for an alternate location, unless there is a showing of good cause warranting an exception for an untimely request.

**H.      Manner of Hearing.**

Each property shall be the subject of a separate and distinct hearing before a panel of three Commissioners, unless the parties stipulate or the Commission decides that more than one property be combined into a single hearing (e.g., in the case of a Defendant property owner who owns more than one property upon which Plaintiff has obtained Easements). The manner of the hearings shall adhere to the conventions of a trial. There is no general burden of proof applicable to all issues in a condemnation proceeding. Therefore, for the purposes of presenting evidence at Commission hearings, it will be within the Commission's discretion to decide the order of presentation.

The parties through counsel shall give opening statements to the Commission, either at the commencement of the proceeding or immediately prior to the party presenting its evidence. Evidence shall then be presented to the Commission. The parties through counsel shall then present an oral closing argument, after which time the panel shall take the matter under advisement and conduct subsequent deliberations that should result in a written report. The decision of the Commission is determined by a majority. See 13 James W. Moore, Moore's Federal Practice § 71.1.04[2][h] (stating that a commission's "action and report are determined by a majority").

All hearings must be on the record through a registered court reporter. Plaintiff shall compensate any court reporter used at a hearing at the regular hourly rate of that reporter, in addition to travel expenses. The parties are responsible for the costs of obtaining a transcript just as they would be in any case. The reporter shall bill Plaintiff directly, and any issue surrounding billing or payment should be brought to the attention of the Court promptly.

## I.    Duty in Deliberating.

The Court cannot embody all the law in any single part of these instructions. One portion of the instructions should be considered in light of and in harmony with all the instructions. Whether certain instructions are applicable may depend upon the conclusions the Commission reaches on the facts. If a Commissioner has an impression that the Court indicated how any disputed fact should be decided, the Commissioner must put aside such impression because only the Commissioners determine such a matter. The Commission must not be influenced by any consideration of sympathy or prejudice. It is the Commission's duty to weigh the evidence, to decide the disputed questions of fact, to apply the instructions to the Commission's findings, and to render a decision accordingly. In fulfilling their duty, the Commissioners' efforts must be to arrive at a fair and just compensation award.

It is the Commissioners' duty to consult with one another and to deliberate with a view of reaching an agreement if they can do so without disturbing their individual judgment. Each of the Commissioners must decide each contested issue for himself or herself, but should do so only after an impartial consideration of the evidence in the case with their fellow Commissioners. In the course of the Commission's deliberations, no Commissioner should hesitate to re-examine his or her own views and change his or her opinion if he or she is convinced that it is erroneous. However, no Commissioner should surrender his or her honest conclusion as to the weight or effect of the evidence solely because of the opinion of his or her fellow Commissioners or for the mere purpose of returning a decision. The Commissioners are the impartial triers of the facts. Their sole interest is to ascertain the truth from the evidence in the case.

## J.    Applicability of Federal Rules.

The Commission proceedings shall be conducted as a trial in accordance with the Federal

Rules of Evidence and the Federal Rules of Civil Procedure, except where provisions of the latter are clearly inapplicable to Commission proceedings. See 13 James W. Moore, Moore's Federal Practice § 71.1.12[4] (noting that "[t]he Federal Rules of Evidence apply in all condemnation proceedings, whether tried before the court, a jury or a commission"). The Chairperson may at his election permit the filing of hearing briefs, and the parties shall comply with any scheduling order the Chairperson issues.

### K.      General Instruction.

It is the duty of the Commission to determine the amount of just compensation payable by Plaintiff to each Defendant. Although the Commissioners are the sole finders of the fact, they are duty-bound to follow the law as stated in the instructions of the Court and to apply the law to the facts as they find the facts from the evidence presented to the Commission. The Commission is not to single out any one instruction alone as stating the law, but must consider these instructions as a whole. No Commissioner is to be concerned with the wisdom of any rule of law. Regardless of any opinion that a Commissioner may have as to what the law ought to be, it would be a violation of that Commissioner's duty to base a decision upon a view of the law that contradicts the view given in the instructions of the Court, just as it would also be a violation of the Commissioner's duty, as a finder of the facts, to base a decision on anything other than the evidence in the case.

However, these instructions are not intended to state fully all rules of law that the Commission may find applicable. The recitation of any rules of law herein are not meant to exclude different or additional rules, except to the extent that any such rules contradict any statements on the law contained in these instructions. The Commission may make a formal request to the Court to clarify the current instructions or seek to include additional instructions as it deems necessary.

### L.      Duties of the Commission.

Our system of law does not permit the Commission to be governed by prejudice, sympathy, or public opinion. The parties and the public expect that the Commission will carefully and impartially consider all of the evidence in the case and reach a just compensation decision regardless of the consequences.

**M.    All Persons Equal Before the Law.**

The Commission should consider and decide each hearing as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. All persons, whether corporations, a governmental entity, or individuals, stand equal before the law and are to be dealt with as equals in a court of justice.

**N.    Evidence.**

The evidence in each hearing consists only of the sworn testimony of the witnesses and all the exhibits that will have been received in evidence in that hearing. The evidence does not include any statements of counsel made during the hearing unless such statement was an admission or agreement admitting certain facts. The opening statements and the closing arguments of counsel are designed to assist the Commission, but they are not evidence. The Commission is to consider only the evidence admitted during the hearing.

**O.    Direct and Circumstantial Evidence.**

The Commission may properly consider two types of evidence in reaching a just compensation award. They are known as direct evidence and circumstantial evidence. Direct evidence is where a witness testifies as to what he or she saw or heard. In other words, when a witness testifies about what is known to the witness as personal knowledge by virtue of his or her own senses – what he or she sees or hears – that is called direct evidence. For example, if a witness testified that she saw it raining outside and the Commission believes her, that would be direct

evidence that it was raining.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts. For example, if someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which the Commission could conclude that it was raining. Circumstantial evidence is of the same value and quality as direct evidence. Circumstantial evidence by itself, or a combination of circumstantial evidence and direct evidence, can be used to prove or disprove a proposition. All the evidence, both direct and circumstantial, must be considered.

Commissioners have a right to consider all the evidence in the light of their own general knowledge and experience in the affairs of life, and to take into account whether any particular evidence seems reasonable and probable. However, if a Commissioner has personal knowledge of any particular fact in this case, that knowledge may not be used as evidence.

Commissioners may infer on the bases of reason, experience, and common sense from an established fact the existence or the nonexistence of some other fact. To infer, or to make an inference, is to reach a reasonable conclusion of fact that a Commissioner may make, but is not required to make, from other facts that he or she finds have been established by direct evidence. Whether an inference is made rests entirely with the Commission. The Commission may only draw an inference from the evidence presented. It may not build an inference upon an inference.

**P.      Evidence Introduced for a Limited Purpose.**

Whenever evidence was received for a limited purpose or limited to one party or only certain parties, the Commission must not consider it for any other purpose or as to any other party and/or parties.

**Q.      Number of Witnesses.**

Although the Commission may consider the number of witnesses testifying on one side or the other when it weighs the evidence as to a particular fact, the number of witnesses alone should not persuade the Commission if the testimony of the lesser number of witnesses is more convincing.

**R.  Credibility of Witnesses.**

Another part of the Commissioners' job will be to decide how credible or believable each witness was. It is up to each Commissioner to decide whether the testimony of a witness was believable and how much weight he or she thinks it deserves. Each Commissioner is free to believe everything that a witness said, only part of it, or none of it at all. But each Commissioner should act reasonably and carefully in making these decisions. A Commissioner should consider the following things in evaluating the testimony of each witness:

- Ask whether the witness was able to see or hear the events clearly. Sometimes even an honest witness may not have been able to see or hear what was happening and may make a mistake.

- Ask how good the memory of the witness seemed to be. Did the witness seem able to remember accurately what happened? Ask whether there was anything else that may have interfered with the ability of the witness to perceive or remember the events.

- Ask how the witness acted while testifying. Did the witness appear honest? Or did the witness appear to be lying?

- Ask whether the witness had any relationship to Plaintiff or Defendant, or anything to gain or lose from the case, that might influence the witness' testimony.

- Ask whether the witness had any bias, prejudice, or reason for testifying that might cause the witness to lie or to slant the testimony in favor of one side or the other.

- Ask whether the witness testified inconsistently while on the witness stand, or whether the witness said or did something or failed to say or do something at any other time that is inconsistent with what the witness said while testifying. If a Commissioner believes that the witness was inconsistent, he should ask himself whether this makes the testimony of the witness less believable. Sometimes it may; other times it may not. The Commissioner should consider whether the

inconsistency was about something important or about some unimportant detail, as well as whether it seemed like an innocent mistake or whether it seemed deliberate.

- Ask how believable the testimony of the witness was in light of all the other evidence. Was the testimony of the witness supported or contradicted by other evidence that was found believable? If a Commissioner believes that other evidence contradicted the testimony of a witness, that Commissioner should remember that people sometimes forget things and that even two honest people who witness the same event may not describe it exactly the same way.

These are only some of the things that the Commission may consider in deciding how believable each witness was. The Commissioners may also consider other things that they think shed some light on the believability of the witness. They should use their common sense and their everyday experiences in dealing with other people. In daily life, a person is constantly determining who is worthy of belief and who is not. The Commissioners should employ the same tests in determining the weight and credibility, if any, that they will assign to the testimony of each witness.

## S.     Opinion Testimony.

The Commission will hear opinion testimony from one or more witnesses who have been offered as experts. A witness who has specialized knowledge due to knowledge, skill, experience, training, or education may testify as an expert and state an opinion concerning such matters. As in the case of other witnesses, the Commission is free in its considered judgment to accept all, part, or none of the testimony of an expert witness.

In deciding how much weight to give an expert's opinion testimony, a Commissioner should consider the witness' qualifications and how he or she reached his or her conclusions. Each Commissioner should also consider the other factors discussed in these instructions for weighing the credibility of witnesses.

## T.     Owner's Opinion as to Fair Market Value.

The law permits an owner of property taken in a condemnation proceeding to testify as to the fair market value of the owner's estate or interest in the property at the time of taking and the

amount of compensation to which they are entitled as a consequence of said taking.

The testimony of the defendant-owner as to value is to be weighed and considered by the Commission the same as that of any other witness expressing an opinion as to fair market value at the time of the taking.

**U.     Impeachment of a Witness.**

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness' present testimony. If a Commissioner believes that any witness has been impeached and thus discredited, it is that Commissioner's exclusive decision to give the testimony of that witness such credibility, if any, as the Commissioner thinks it deserves. If a witness is shown knowingly to have testified falsely concerning any material matter, the Commissioner has a right to distrust such witness' testimony in other particulars. The Commissioner may reject all the testimony of that witness or give it such credibility as he or she thinks it deserves.

**V.     Diagrams, Charts, or Summaries of Opinion Evidence.**

The testimony of an appraiser or an accountant as to any diagrams or charts or summaries, and any summaries or diagrams or charts admitted in evidence, are competent for the purpose of explaining or summarizing facts disclosed by the appraiser's or accountant's testimony, or by other testimony, or by photographs or maps or other documents that are in evidence. If a Commissioner should find that such charts or diagrams or summaries do not reflect facts and figures shown by the testimony or other evidence in a hearing, then he or she should disregard them.

**W.     Statistical Evidence.**

Like any other type of evidence, statistics may be rebutted.

**X.      Number of Exhibits.**

A number of exhibits and testimony related to them will be introduced. Each Commissioner should determine what weight, if any, the exhibits should receive in light of all the evidence.

**Y.      Burden of Proof.**

In Michigan, the Committee on Model Civil Jury Instructions recommends that no instruction on general burden of proof be given in condemnation cases. There is no general burden of proof applicable to the amount of compensation to be determined by the Commission in this case.

**Z.      Just Compensation Defined.**

"Just compensation" is the amount of money which will put the person whose property has been taken in as good a position as the person would have been in had the taking not occurred. The owner must not be forced to sacrifice or suffer by receiving less than full and fair value for the property. Just compensation should enrich neither the Plaintiff at the expense of the Defendants nor the Defendants at the expense of the Plaintiff.

The determination of value and just compensation in a condemnation case is not a matter of formula or artificial rules, but of sound judgment and discretion based upon a consideration of all of the evidence the Commission has heard and seen in this case.

In determining just compensation, the Commission should not consider what the Plaintiff has gained. The value of the property taken to Rover and to its customers is not to be considered in any way.

**AA.    Market Value.**

The Commission's award must be based upon the market value of the property as of the date of taking. In this case, the market value of the property both before and after the taking must

be determined as of March 10, 2017, and not at any earlier or later date.

"Market value" means:

(a)     the highest price estimated in terms of money that the property will bring if exposed for sale in the open market with a reasonable time allowed to find a purchaser buying with knowledge of all of the uses and purposes to which it is adapted and for which it is capable of being used;

(b)     the amount which the property would bring if it were offered for sale by one who desired, but was not obliged, to sell, and was bought by one who was willing, but not obliged, to buy;

(c)     what the property would bring in the hands of a prudent seller, at liberty to fix the time and conditions of sale;

(d)     what the property would sell for on negotiations resulting in sale between an owner willing, but not obliged, to sell and a willing buyer not obliged to buy; and

(e)     what the property would be reasonably worth on the market for a cash price, allowing a reasonable time within which to effect a sale.

**BB.     Highest and Best Use.**

In deciding the market value of the subject property, the Commission must base its decision on the highest and best use of the property.

"Highest and best use" means the most profitable and advantageous use the owner may make of the property even if the property is presently used for a different purpose or is vacant, so long as there is a market demand for such use.

A "highest and best use" must be legally permissible, financially feasible, maximally productive, and physically possible.

**CC.    Special Use Property.**

There are certain kinds of properties for which the market value standard is, for one reason or another, inappropriate. These properties are referred to as "special purpose" properties.

The adaptability of the property sought to be taken in eminent domain for a special purpose or use may be considered as an element of value. If the property possesses a special value to the owner which can be measured in money, the owner has a right to have that value considered in the estimate of compensation and damages.

While market value is always the ultimate test, it occasionally happens that the property taken is of a class not commonly bought and sold, such as a church or a college or a cemetery or the fee of a public street, or some other piece of property which may have an actual value to the owner but which under ordinary conditions the owner would be unable to sell for an amount even approximating its real value. As market value presupposes a willing buyer, the usual test breaks down in such a case, and hence it is sometimes said that such property has no market value. In one sense this is true; but it is certain that for that reason it cannot be taken for nothing. From the necessity of the case the value must be arrived at from the opinions of well-informed persons, based upon the purposes for which the property is suitable. This is not taking the "value in use" to the owner as distinguished from the market value. What is done is merely to take into consideration the purposes for which the property is suitable as a means of ascertaining what reasonable purchasers would in all probability be willing to give for it, which in a general sense may be said to be the market value.

If the Commission determines that a property is, in fact, a "special purpose" property, it should consider that fact in determining the value of the property.

The value of a "special purpose" property is to be determined by what a purchaser who desired to buy such a "special purpose" property, but did not have to have it, would be willing to

give for it, and what a seller who had such a "special purpose" property and desired to sell it, but did not have to sell it, would be willing to take for it.

**DD.    Partial Taking.**

This case involves what is known as a "partial taking," that is to say, the property being acquired by the Plaintiff is part of a larger parcel under the control of the owner.

The determination of value is not a matter of formulas or artificial rules, but of sound judgment and discretion based on consideration of all relevant facts in a particular case. In the case of a partial taking of land, there are two formulas or methods often used or followed in determining compensation to be awarded:

One method of valuation is called the "before and after" method. In this case, the market value of the property before the taking is determined, and then the market value of the property after the taking is determined. The difference between these two valuations is the amount of damages to be awarded.

Another equally acceptable method of valuation is to determine the market value of the property taken and also determine the damage, if any, to the market value of the remainder of the land caused by the taking, also known as severance damages. To calculate the severance damages, the parties may present evidence of the cost to cure. However, the cost-to-cure expenses may not exceed the diminution in value of the remainder parcel. Thus, the value of the remainder property plus the cost-to-cure expenses and the fair market value of the parcel taken, may not exceed the fair market value of the whole parcel before the taking.

In valuing the property that is left after the taking, the Commission should take into account various factors, which may include: (1) its reduced size, (2) its altered shape, (3) reduced access, (4) any change in utility or desirability of what is left after the taking, (5) the effect of the applicable

zoning ordinances on the remaining property, and (6) the use which Plaintiff intends to make of the property it is acquiring and the effect of that use upon the owner's remaining property.

Further, in valuing what is left after the taking, the Commission must assume that Plaintiff will use its newly acquired property rights to the full extent allowed by the law.

**EE.     Easements.**

The Plaintiff has acquired through this condemnation proceeding certain limited rights in the owner's lands. The rights Plaintiff acquired generally include a permanent easement, as well as a temporary workspace easement. Plaintiff's Easement rights are described in paragraphs 29-49 of Plaintiff's Verified Complaint (Dkt. 1).  See Listing and Depiction of Easements Sought, Ex. A to Compl. (Dkts. 1-2 through 1-10) (describing more thoroughly Plaintiff's easements); see also Notices of Commencement of Condemnation Action, Ex. B to Compl. (Dkt. 1-11) (Federal Energy Regulatory Commission order issuing certificates). The owners will have and retain all the uses of their land not inconsistent with Plaintiff's Easement rights as described in Plaintiff's Verified Complaint.

**FF.     Temporary Easement.**

In addition to the permanent easement involved in this litigation, Plaintiff has obtained a temporary easement for the purpose of constructing the natural gas pipeline. A temporary easement is the right to use an area of land for a limited time and limited purposes. The measure of compensation for a temporary taking is the fair market value of the loss of use of the property taken. That fair market value is the fair rental value.

**GG.     Evidence of Pipeline Route Changes.**

While alternate pipeline routes may have resulted in a smaller taking of certain properties, evidence of alternate routes is not probative of how much compensation is owed to Defendants in light of the routes actually chosen by the FERC when issuing the Certificate of Public Convenience

and Necessity. As a result, all evidence of pipeline route changes, considerations, alternative routes must be excluded from the just compensation hearings.

**HH.  Construction Damages.**

The sole issue to be determined in these hearings is the amount of just compensation owed by Plaintiff to Defendants for the taking of Plaintiff's Easements. All evidence of damages caused to the Defendants/subject properties by negligence, nuisance, or trespass committed during construction of Plaintiff's pipeline must be excluded from the just compensation hearings.

**II.  Speculative Damages and Lost Profits.**

Damages which are speculative and which have not been proved with a reasonable degree of certainty are not to be considered in making just compensation determinations. The loss of speculative lost profits is not an allowed element of just compensation.

**JJ.  Going Concern and Business Interruption.**

In regards to some of the parcels of real property which are the subject of this proceeding, the landowner claims that condemnation of the property destroyed the business. If the Commission finds that the defendant cannot relocate the business, the defendant is entitled to just compensation for the value of the business as a going concern. If the Commission finds that the business can be relocated, the defendant is not entitled to compensation for the value of the business as a going concern.

Just compensation also includes damages caused by interruption of a business or avoiding interruption of the business. However, a defendant may not recover both going concern and business interruption damages because the theories are mutually exclusive.

**KK.  Possibility of Rezoning.**

One of the things that must be considered in deciding what the highest and best use of the property was at the time of taking is the zoning classification of the property at that time. However,

if there was a reasonable possibility, absent the threat of this condemnation case, that the zoning classification would have been changed, the Commission should consider this possibility in arriving at the value of the property on the date of taking. To affect the value of the property, the possibility of rezoning must be real enough to have caused a prudent prospective buyer to pay more for the property than he or she would otherwise pay.

**LL. Comparable Market Transactions.**

The witnesses who express opinions about market value may rely upon various market transactions to help them arrive at their opinions. These transactions are referred to as "comparables" and may include sales, offers to sell, offers to buy and rentals.

These witnesses may be permitted to testify as to the price and other terms and circumstances of these transactions which they consider to be comparable to the owner's property as shedding light on the value of the owner's property. Generally, the more similar one property is to another, the closer the price paid for the one may be expected to approach the value of the other. Evidence of offers of sale may be admitted if the proponent of the evidence demonstrates that the offer constituted a bona fide, good faith offer of sale. However, an offer of sale may be untrustworthy and unreliable where the offeror was secure in the knowledge that they would not be bound to carry out the offer.

Thus, in weighing the opinion of a witness as to the value of the subject property based upon other market transactions, the Commission may consider the following matters:

(a) Was the transaction freely entered into in good faith?

(b) If the transaction was on credit, how much should the price be discounted to reflect the amount which the property would have brought in cash?

(c) How near is the date of the other transaction to the date of valuation in this case?

(d)    How near is the size and shape of the property to the size and shape of the owner's property?

(e)    How similar are the physical features, including both improvements and natural features?

(f)    How similar is the use to which the other property is, or may be, put, to the use which is, or may be, made of the owner's property?

(g)    How far is the other property from the owner's property, and is the distance important?

(h)    How similar is the neighborhood of the other property to the neighborhood of the owner's property?

(i)    Is the zoning classification the same on both properties?

The Commission should also consider the extent to which the witness has taken into account whatever dissimilarities may exist. If the Commission is not satisfied that the transactions being used as comparables are, in fact, comparable, then the Commission may consider that fact in weighing the witness' opinion.

The Commission should bear in mind that comparable sales are not themselves direct evidence of value, but merely the basis on which the witnesses may form their opinions of value.

The Commission should apply these standards to all witnesses rendering an opinion of value.

**MM.**   **Effect of Proposed Public Improvement.**

The process of determining the value on the date of taking may be complicated by the Plaintiff's actions leading up to the taking, if those actions have had an effect on the market value of the property. In such case, the Commission must disregard any change in value resulting from

such actions and grant compensation on the basis of what the market value of the property would be if such actions had not occurred. In other words, in arriving at market value the Commission should disregard any conditions which may exist in this area resulting from the prospect of condemnation for this project and the other proceedings leading up to this condemnation case.

The Commission should determine the value of the property as though this project had not been contemplated.

This does not mean that the announcement of the project acts to insulate the properties concerned from normal economic forces. The market may go up or down, the property may deteriorate or be improved, and the Commission should recognize those factors.

However, a change in value directly traceable to the prospect of this condemnation should not penalize either owners or the public. By the same token, the Commission should disregard any increases in value which may have occurred by reason of the prospect of the completion of the project.

### NN. Assessed Value.

The parties may introduce in evidence the assessed values placed on the properties by assessing authorities for real estate taxes. The assessed values are not controlling, but you have a right to consider these assessments in connection with all other evidence in arriving at the market value of the property.

The law requires that assessments for real estate tax purposes be made at 50 percent of the true cash value.

### OO. Damages Common to the Public.

General effect damages resulting from the exercise of eminent domain may be recovered only for damages not common to the public. Consequential damages such as noise, vibration,

circuity of travel, loss of traffic volume, or dust and inconvenience suffered by the landowner(s) in common with the public are not to be considered.

SO ORDERED.

Dated:  April 8, 2019                          s/Mark A. Goldsmith
      Detroit, Michigan                       MARK A. GOLDSMITH
                                              United States District Judge