# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ROVER PIPELINE LLC,

    Plaintiff

vs.

1.23 ACRES OF LAND, MORE OR LESS,
Tract No. MI-WA-060.000

INTERNAL REVENUE SERVICE,

    Defendant

Case No. 2:17-cv-10365

Hon. Mark A. Goldsmith

**Report of Commission on Determination of Just Compensation**

The Court issued its **ORDER ON FEDERAL TAX LIENS** on April 25, 2019. Such Order provided that the Internal Revenue Service ("IRS") was entitled to present argument and evidence to the Commission regarding just compensation attributable to Tract No. MI-WA-059.500 (the "59.50 Property"). The IRS was named as a Defendant with respect to Tract No. MI-WA-060.000 (the "60 Property") and the Court's Order indicated that Rover and the IRS may present argument and evidence to the Commission regarding just compensation for the 60 Property. Pursuant to agreed arrangements between the parties and the Commission, hearing was scheduled for and held on Thursday, June 27, 2019. At the commencement of the hearing, the parties informed the Commission that the claims with respect to the 59.50 Property had been comprised and settled including

1

the IRS lien claim to the just compensation and settlement amounts. Accordingly, the hearing was limited to the determination of just compensation payable with respect to the taking of easements in the 60 Property.

We first address the evidence presented by the IRS. The IRS offered the testimony of John Engelbert ("Engelbert") as a fact witness (Tr. page 91, lines 4-8) under subpoena (Tr. page 99, lines 13-14). Through the testimony of Engelbert, the IRS offered Exhibits A, B, C, D, & E (the "Contested Exhibits") and Exhibit F, which was admitted by stipulation of the parties. The Plaintiff, Rover Pipeline LLC ("Rover") objected to the admissibility of the Contested Exhibits and the testimony of Engelbert. In as much as the admissibility of the Contested Exhibits and the testimony of Engelbert is essential to the determination of just compensation from the perspective of the IRS, the Commission will first address that issue, noting that the Contested Exhibits and the testimony of Engelbert was the only evidence on the issue of just compensation offered by the IRS. The parties were given an opportunity to file post-hearing briefs and argument and both parties have done so. The issue of admissibility of the Contested Exhibits was addressed by both parties in their post-hearing briefs and argument.

The argument in support of the admissibility of the Contested Exhibits offered by the IRS can be stated as follows: the Contested Exhibits can be characterized as good-faith offers to purchase and can subsequently be used as evidence of a party admission by Rover of the market value of the 60 Property. Specifically, the IRS in its Post-Hearing Briefing stated that "Exhibits A-E are the written offers from Rover, accepted by Engelbert, for the easements on Engelbert's property. These documents are admissible evidence and are an admission by Rover of the market value of Parcel 060.000 in June of 2015." (IRS Brief, page 3). Rover objects to the admissibility of the Contested Exhibits for the following reasons: 1) the amounts paid by Rover for settlements in anticipation of condemnation proceedings are inadmissible to establish fair market value, 2) the testimony of Engelbert was as a fact witness and he was offering no opinion on the fair market value of the 60 Property either as an expert witness or as the property owner, and 3) the Contested Exhibits and the testimony of Engelbert are inadmissible in accordance with Federal Rules of Evidence 408 and 401.

The IRS asserts that the Michigan Uniform Condemnation Procedures Act (the "UCPA") provides that "tendering a good-faith offer to purchase is a necessary precondition to invoking the jurisdiction of the court in a condemnation action. MCL 213.55(1)." The Court's **ORDER ON COMMISSION**

3

**INSTRUCTIONS** dated April 8, 2019, did not expressly address the applicability of the UCPA to these proceedings. Nevertheless, the Commission has examined Michigan and federal case law on the admissibility of offers to purchase property to be condemned as bearing generally on the issue of the fair market value of the property taken.

The IRS asserts that *MDOT v. Frankenlust Lutheran Congregation,* 269 Mich App 570 (2006) holds that the pre-condemnation valuation by the condemning authority is relevant to the determination of the property's fair market value. The IRS inquired of Engelbert at Tr. pages 102 and 103:

17   Q   At some point were you approached by Rover Pipeline regarding the purchase of an easement on your property?

20   A   I was.

21   Q   Speak up. Approximately when was this?

22   A   January, February, March or something like that of '15. I don't recall exactly when it was.

24   Q   Okay. I'm going to show you what's been marked and admitted by stipulation as Exhibit F and I want you to identify that.

> 2   A   I believe I got this, yes. Do I remember? No. Did I keep
> it? No. But, yes, I did get that, I presume, yes.
>
> 5   Q   And what is it?
>
> 6   A   It is a letter telling me that Rover Pipeline is going to put
> a pipeline through my property.
>
> 8   Q   Okay. And at some point did Rover offer you an amount
> of money for an easement on your property?
>
> 10  A   They did.

A review of Exhibit F indicates that it is a letter dated March 19, 2015, from legal counsel for Rover directed to Engelbert indicating that Engelbert had denied or obstructed entry onto the 60 Property by Rover's land surveyors and other agents and employees. The letter also indicated that allowing Rover to enter his property for survey purposes would not prejudice in any way Engelbert's rights to contest the amount of money to which he would be entitled for a pipeline easement across his property. The letter did not contain any information indicating that Rover had established an amount that Rover believed to be just compensation for the taking of easements in the 60 Property.

Engelbert proceeded to testify that he "was approached numerous times subsequent to this letter and it seemed like the more they came out, the more the price went up a little bit." (Tr. page 104, lines 10-13). The Contested Exhibits are all dated June 13, 2015. Neither Exhibit F nor the Contested Exhibits contain any statement that Rover had established an amount that it believed to be just compensation for the property. The Contested Exhibits are entitled "**Right of Way Cost Estimate**" and reference the 60 Property. The Contested Exhibits proceed to identify the distance in linear feet of the permanent and temporary easements, the number of acres, the Cost/acre and the Cost for each of the easements. These Costs were added to Damages line items to arrive at a **Total Cost**.

The Contested Exhibits also contain several provisions that are not a part of just compensation as defined by the Court's Instructions. The payments of $2500 as a signing bonus and of $5000 for administration fees are not part of just compensation. The amounts which Rover agreed to pay Engelbert as Right of Way Costs could have been selected in a way that did not make those amounts in any way indicative of Rover's belief as to fair market value of the 60 Property. For example, when asked about conversations he had with Rover, Engelbert said, "I don't remember everything that they said, but they was anxious to see some – some farmers signing up. I think they did – if they didn't say it right out, they

conveyed that idea." (Tr. page 133, lines 13-20). Additionally, the following cross-examination occurred on Tr. page 134, lines 15-22:

> 15   Q   Okay. Now let's look at Exhibit A and in particular what's labeled right-of-way cost estimate. First of all, this is cost estimate, this is what Rover is figuring out its going cost them to get an easement from you; is that what you understood it to be?
> 21   A   No, I understood it to be the final settlement numbers that they was going to pay me.

The Contested Exhibits do not purport to establish the fair market value of the 60 Property. No testimony or exhibit was offered by the IRS to indicate that Rover had at any time prior to initiating negotiations for the purchase of easements in the 60 Property, or prior to the execution of the Contested Exhibits, established an amount that it believed to be just compensation for the 60 Property and had communicated the same to Engelbert.

The absence of any recitation that Rover had established an amount that it believed to be just compensation for the 60 Property is crucial to the examination of the holding in *Frankenlust*. The Court in *Frankenlust* discussed at length the purpose of the requirement for the condemning agency to establish an amount that

it believes to be just compensation under MCL 213.55 when the UCPA is the procedural mechanism used to initiate a state condemnation proceeding for the property and to communicate the same to the owner before initiating negotiations. Rover appears to have initiated negotiations with Engelbert regarding the 60 Property without ever having established an amount it believed to be just compensation. The IRS, in its brief, recited language from *Frankenlust,* which relied in part on *United States v. 320.0 Acres of Land,* 605 F.2d 762, 825 (5th Cir. 1979). The *Frankenlust* Court said that the court in *US v 320.0 Acres of Land* "considered provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act (URA), 42 USC 4601 *et seq.*, which establishes uniform guidelines for the public taking of private lands by agencies of the federal government that are, in relevant part, strikingly similar to that of the UCPA." The Court in *US v. 320.0 Acres of Land*, at page 825, in turn, said ". . . if §4651 statements of just compensation are provided a prospective condemnee, they are admissible at a subsequent compensation trial as an admission . . .". The subsequent admissibility of a good faith written offer turns on whether a written statement of just compensation as determined by the condemning agency has been provided to the property owner before initiating negotiations. Neither negotiations nor the final settlement statement entitled **Right of Way Cost Estimate** amount to a written statement of just compensation by the condemning agency made to the

property owner either before or after initiating negotiations. Therefore, the Contested Exhibits do not rise to the level of an admission by Rover of the fair market value of the 60 Property or the just compensation to be paid. The Commission finds that neither *Frankenlust* nor *United States v. 320.0 Acres of Land* require otherwise.

The Court in its **OPINION AND ORDER** dated July 6, 2018, although with respect to a different tract of land in this case, stated: "The traditional rule is that '[t]he price paid by a condemnor in settlement of condemnation proceedings or in anticipation of such proceedings is inadmissible to establish value of comparable land as such payments are in the nature of compromise to avoid the expense and uncertainty of litigation and are not fair indications of market value.'" *Rockies Express Pipeline, LLC v. 4.895 Acres of Land, More or Less, In Butler Cty., Ohio*, No. 2:08-CV-554, 2009 WL 1163054, at *1 (S.D. Ohio Apr. 28, 2009) (quoting *United States v. 10.48 Acres of Land*, 621 F.2d 338, 339 (9th Cir. 1980)). The Court also noted that such evidence may nevertheless be admitted if the proponent lays an adequate foundation establishing that the transaction was voluntary, including that the transaction was conducted at arms-length, *i.e.*, not influenced by the fact of the impending condemnation and thus not a compromise. The Commission finds the Court's reasoning in *Rockies Express* to be equally applicable here. The testimony of Engelbert made evident that the settlement

encompassed in the Contested Exhibits was influenced by the threat of an impending condemnation action. Engelbert testified as follows at Tr. page 138, lines 15-20:

> 15   A   We know that – us farmers, me especially, this is the fourth pipeline going through my property. We know you can't stop you guys. So, yeah, it was in the back of my head, sure. I knew that if I did not settle with Rover, I'd be condemned like all of the other people that didn't do it.

It is the determination of the Commission that the Contested Exhibits are not admissible in evidence as an admission against Rover because they are not statements of fair market value or just compensation as determined by Rover and because they were executed under the threat of condemnation. Likewise, any testimony of Engelbert based on the content of the Contested Exhibits is also inadmissible. Further, the Contested Exhibits are not admissible as comparable sales because no opinion of just compensation was offered by the IRS and ". . . comparable sales are not themselves direct evidence of value, but merely the basis on which the witness may form their opinions of value". (Order on Commission Instructions, Docket 947, page 22).   Having determined that the Contested

Exhibits are inadmissible for the purposes and reasons submitted by the IRS, there is no need to address the other reasons submitted by Rover in support of its objections to admissibility.

No other evidence of the amount of just compensation to be awarded was presented to the Commission except for the testimony of Anthony Sanna ("Sanna") and his Appraisal Report ("Exhibit 6") offered by Rover. When Rover sought to introduce Exhibit 6 into evidence, the IRS objected and was granted the right to voir dire Sanna on his qualifications as an expert witness. After completing the voir dire examination, the IRS objected, stating: "I'm going to place an objection that I'm not sure that he's qualified as an expert on this specific topic of appraising easements." (Tr. page 30, lines 21-24). The Chairperson, acting for the Commission, ruled: "I do believe that there's been a foundation laid for Mr. Sanna's testimony . . . I don't think there's a specific rule of evidence in the Federal Rules that requires more qualification testimony than that which has been provided. So, I am comfortable moving forward with his testimony." (Tr. page 30, line 25 and page 31, lines 1-7.)

The IRS offered considerable cross-examination of Sanna, but the Commission finds his testimony in this proceeding to have been credible. It is the

Commission's understanding of the Court's **ORDER ON FEDERAL TAX LIENS** that the IRS is entitled to just compensation determined without regard to the easements granted by Engelbert to Rover in 2015. (Order on Federal Tax Liens, Docket 951, page 3). The Sanna testimony and Exhibit 6 express the opinion that just compensation for the taking of the permanent easement and the temporary easement on the 60 Property, without regard for the easements granted to Rover by Engelbert, is $27,400 ($15,400 for the permanent easement and $12,000 for the temporary easement). The Sanna testimony and Exhibit 6 was the only evidence of just compensation in this case and the Commission finds it to be credible. The Commission accepts the opinion of Sanna and determines just compensation with respect to the taking of easements by Rover over the 60 Property to be in the amount of $27,400.

Dated:  July 26, 2019                              **COMMISSIONERS**

/S/ Robert Rollinger
*Robert S. Rollinger, Chairperson*

/S/ Andrew Chamberlain
*Andrew B. Chamberlain*

/S/ Arthur Spalding_
*Arthur C. Spalding*