UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROVER PIPELINE LLC,

    Plaintiff,                                     Case No. 17-10365

vs.                                                HON. MARK A. GOLDSMITH

1.23 ACRES OF LAND, et al.,

    Defendants.
_____/

## OPINION & ORDER
## OVERRULING ROVER'S OBJECTIONS (Dkt. 958), OVERRULING THE IRS'S OBJECTIONS (Dkt. 960), AND ADOPTING THE COMMISSION'S IRS R&R (Dkt. 956)

Plaintiff Rover Pipeline, LLC has installed a 42-inch interstate natural gas pipeline through Michigan and other states, including through property owned by non-party John D. Engelbert. Under the Natural Gas Act ("NGA"), 15 U.S.C. § 717 et seq., Rover has a right to exercise the power of eminent domain to secure the easements necessary to construct its pipeline. However, before it can exercise the power of eminent domain, it must attempt to reach a settlement with the impacted property owners to compensate them for Rover's partial taking of their property. For property owners with whom Rover could not reach a settlement, Rover condemned their property in this action and must pay them just compensation. Rover reached such a settlement with Engelbert, but it failed to notify or negotiate with another holder of an interest in Engelbert's property, Defendant the Internal Revenue Service. The IRS has a federal tax lien on the property for an outstanding tax debt owed by Engelbert, which lien Rover now seeks to condemn.

The Court appointed a Commission to determine the amount of just compensation owed to the IRS and others. The Commission held hearings and submitted a Report and Recommendation

("R&R") (Dkt. 956) to the Court recommending that $27,400 would be just compensation for Rover's easement through Engelbert's property. Both Rover and the IRS have filed objections to the Commission's report (Dkts. 958, 960). Rover's position is that the IRS lien has not been impacted by Rover's taking in 2017, because Rover had already settled with Engelbert in 2015. However, Rover cannot evade the just compensation owed to the IRS so easily. Its other objections to the IRS award are similarly without merit. The same is true of the IRS objections.

For the reasons discussed below, Rover's objections are overruled, the IRS's objections are overruled, and the Commission's R&R is adopted.[1]

## I. BACKGROUND

Rover has acquired non-exclusive 50-foot easements, as well as temporary easements, across several properties in Michigan and other states to install a 42-inch high-pressure interstate natural gas transmission pipeline. For the property owners from whom Rover could not obtain the necessary easements through private transactions, Rover obtained a Certificate of Public Convenience and Necessity under the NGA, which allows for condemnation of property necessary to build permanent natural gas pipelines. Rover brought this action seeking to condemn any Michigan property interests it was unable to obtain through private transactions.

The R&R addressed in this Opinion involves two parcels of land: MI-WA-59.500 ("the 59.50 Property") and MI-WA-060.000 ("the 60 Property"). The 60 Property is a thirty-five-acre parcel of land owned by Engelbert. The 59.50 Property is an eight-acre strip of land that was once part of the 60 Property but was later sold to the Schaible family, who joined it to their property as a single contiguous parcel of land. The IRS, Rover, and Schaible were all allowed to present

---

[1] Any objection to a conclusion of law or finding of fact made or recommended by the Commission will be decided on a de novo basis. Fed. R. Civ. P. 53(f)(3)-(4). The Commission's rulings on procedural matters will be reviewed under an abuse of discretion standard. Fed. R. Civ. P. 53(f)(5).

argument and evidence to the Commission regarding just compensation attributable to the 59.50 Property and the 60 Property (Dkt. 951). However, the parties resolved the outstanding issues related to the 59.50 Property, which left only the 60 Property's just compensation to be determined. Both Rover and the IRS presented evidence at the Commission hearing. R&R at 1-2.

At the Commission hearing, the IRS offered Engelbert's testimony and five contested exhibits related to Rover's discussions with Engelbert as to the fair market value of the 60 Property and other nearby properties. R&R at 2. The contested exhibits are "Right of Way Cost Estimates," which reflect the easement agreements between Engelbert and Rover and the itemized values for the permanent easements, temporary workspace, crop damages, administration fees, and signing bonuses (Dkts. 972-7 to 972-11). The Commission ruled that the testimony and the contested exhibits were not admissible as evidence of fair market value, because they did not reflect good-faith offers. Id. at 3-9 (citing Dep't. of Transp. v. Frankenlust Lutheran Congregation, 711 N.W.2d 453 (Mich. Ct. App. 2006)).

Rover called general real estate appraiser Anthony Sanna to testify. Sanna submitted a report and testified that the pre-taking value of the land was $245,000, Sanna Report, Tab 6 to J.A., at 23 (Dkt. 972-6), and that the post-taking value of the land on the day of the taking, using rounded numbers, was $218,000, id. at 32. Sanna's valuation was based on valuing the land taken by the permanent easement (the 50-foot easement) at $15,400, and adding the value of the land taken by the temporary easement (temporary workspace to install the pipeline) at $12,000. Id. at 12. The Commission found Sanna's testimony credible and determined that $27,400 was an appropriate just compensation award for the taking. Id.

## II. APPLICABLE LAW

Under the NGA, Rover can bring an action to condemn property when it cannot agree with the property owner on the compensation to be paid for the necessary right-of-way to construct its pipeline. 15 U.S.C. § 717f(h). Although the action is brought in federal court, the practice and procedure must "conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated." Id.; see also Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement, 962 F.2d 1192, 1199 (6th Cir. 1992) (explaining that "although condemnation under the Natural Gas Act is a matter of federal law, § 717f(h) incorporates the law of the state in which the condemned property is located in determining the amount of compensation due").

In Michigan, such actions are governed by the Uniform Condemnation Procedures Act ("UCPA"). Mich. Comp. Laws. § 213.51 et seq. Under the UCPA, an "owner" includes a governmental agency having an interest, including a security interest, in a property being condemned. Id. at § 213.51(f). "Property" under the UCPA includes "property rights." Id. at § 213.51(h). A lien upon land qualifies as a property right subject to just compensation in a condemnation proceeding. See City of Pontiac v. Ottawa Tower II, L.L.C., No. 324548, 2016 WL 1038135, at *6 (Mich. Ct. App. Mar. 15, 2016).

## III. PARTIES' OBJECTIONS

### A. Rover's Objections (Dkt. 958)

Although Rover makes four objections, they embody essentially two arguments in support of its positions: (i) the IRS is not entitled to just compensation because Rover has already settled with Engelbert for its right-of-way easement through the 60 Property; and (ii) if just compensation is to be awarded, the IRS is not entitled to the entirety of the award, because other entities with

4

property interests in the 60 Property might be entitled to a portion of the award or because the IRS has other collateral through which its lien is secured.

   1. **Objections One and Two**

Rover argues that the Commission erred in its just compensation award by failing to take into account that Rover possessed an easement on the 60 Property prior to the taking in 2017. Obj. at 3-4. It reasons that because it settled with Engelbert in 2015, any diminution to the value of the property resulting from Rover's easement had already occurred prior to the date of the taking, March 10, 2017. See id. Therefore, Rover argues, the value of the 60 Property before and after the taking was the same, and the IRS is entitled to no compensation. Id. at 6.

This argument is flawed and, if adopted, would create a gaping loophole in the UCPA. Under Rover's theory, it could avoid any lien—whether created by a mortgage, tax liability, or judgment—by first settling with the land owner, recalculating the value of the land, and then arguing that the lienor's interest before and after the taking is the same. The result of such action would be that the lienor would be entitled to no compensation, even though its security interest in the land had been diminished.

A condemnor cannot diminish a lien's value by negotiating a separate peace with the property owner and then point to the depressed value of the property at the time of taking as an appropriate basis for establishing compensation. This reverse alchemy—turning valuable liens into less valuable, possibly worthless ones—would be patently unfair. And it would also lead to great mischief by incentivizing condemnors not to engage in pre-taking negotiations with lienors, despite a statutory requirement that they do so, see 15 U.S.C. § 717f(h) ("When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to

5

construct, . . . it may acquire the same by the exercise of the right of eminent domain . . . ."); see also Mich. Comp. Laws § 213.55 ("If an agency is unable to agree with the owner for the purchase of the property, after making a good faith written offer to purchase the property, the agency may file a complaint for the acquisition of the property in the circuit court in the county in which the property is located."). Indeed, in our case, Rover did not negotiate at all with the IRS before the taking, even though the IRS held a significant interest in the 60 Property.

To adopt Rover's approach would ignore the fundamental principle that a lienor has a property interest that is distinct from the landowner's property interest. It is for this reason that a lienor is made a party to condemnation proceedings. See, e.g., City of Pontiac, 2016 WL 1038135, at *6. And it is for this reason that the separate property interest must be valued as part of the proceeding. See Mich. Comp. Laws § 213.63 (providing for the court to "divide the award among the respective parties in interest, whether the interest is that of mortgagee, lessee, lienor, or otherwise . . . ." (emphasis added)).

The Commission's approach was sound. It valued the property before the taking of the IRS lien without regard to any diminution in value attributable to the easement negotiated with Engelbert. In that fashion, the award properly recognized the impact of the taking on the IRS lien and was in accord with fundamental principles of Michigan condemnation law. "A guiding principle when awarding just compensation in a condemnation suit is to neither enrich the individual at the expense of the public nor the public at the expense of the individual but to leave him in as good a position as if his lands had not been taken." Michigan Dep't of Transp. v. Tomkins, 749 N.W.2d 716, 725 (Mich. 2008) (internal marks omitted). The Commission's award is consistent with that "guiding principle."

Rover's first two objections are overruled.

### 2. Objection Three

In its third objection, Rover argues that if there is a just compensation award, it must be apportioned to other entities possessing interests in the 60 Property, including the Washtenaw County Water Resources Commissioner, Enbridge Pipelines (Toledo), and Wolverine Pipe Line Company. Obj. at 6. However, the other property interest holders have apparently resolved whatever impact the taking might have on their interests. See Stipulated Orders of Dismissal of Enbridge Pipelines (Toledo) (Dkt. 399), Wolverine Pipeline Company (Dkt. 655), and Washtenaw County Water Resources Commissioner (Dkt. 803).

Additionally, the entities Rover argues should share in the just compensation proceeds are not in the same position as Engelbert or the IRS. The entities appear to have easements on the 60 Property, entitling them to a limited possessory interest. Because they are not interested in the value of the property—rather, only undisturbed access—they are not in the same position as a title holder, such as Engelbert, or a lienor, such as the IRS. There has been no suggestion or theory advanced that Rover's pipeline has somehow interfered with any other entities' easement on the 60 Property such that just compensation is due. Therefore, there is no basis for this Court to make an allocation of the just compensation award as between them and the IRS.

In a separate argument set out in the same Objection, Rover contends that the IRS should not be entitled to the award because the IRS has liens on other properties in which Engelbert has an interest, which Rover asserts will be more than sufficient to cover Engelbert's tax liability. Obj. at 7-8. The Court previously rejected this "over-security" argument. See 4/25/19 Order on Federal Tax Liens at 3 (Dkt. 951). There is no reason to reconsider that ruling.

Rover cites general authority for a so-called "impairment" rule, under which a lienor is entitled to receive "'only so much of the award as will compensate for the impairment of the

7

mortgagee's security.'" Obj. at 7 (quoting 26 Am. Jur. 2d Eminent Domain § 193). But there is controversy whether that is the majority rule. At least one court has noted that some commentators opine that the majority rule is that "the lienholder is held entitled to all of the condemnation award up to the amount of the secured indebtedness." People Ex Rel Dep't. of Trans. v Redwood Baseline, Ltd., 84 Cal. App. 3d 662, 670 n.5 (Cal. Ct. App. 1978). And even where an "impairment" rule is applied, courts have utilized various definitions of "impairment," with some courts considering whether indebtedness will not actually be repaid and others considering whether the lienor has lost its original "margin of safety" between value and debt. Id.

Michigan courts have not spoken definitively on the subject of a lienor's rights in a just compensation award when there has been a taking. The few cases to consider the issue have not engaged in the kind of analysis demanded by Rover, under which a court must determine whether the remaining value in partially taken property or other collateral would continue to fully secure the lienor. Indeed, the pronouncements made in Michigan cases are at odds with such a principle.

In Detroit, B.C. & W.R. Co. v. First Nat. Bank, 163 N.W. 97, 99 (Mich. 1917), a railway condemnation appeal addressing whether to let stand a jury's decision not to award any compensation to a mortgagee, the court split equally into two camps of four justices each. The group voting to reverse was convinced that the jury had accepted an improper argument that the benefits from the improvements outweighed any diminution in value. The group voting to affirm said that was pure speculation. However, neither group disputed that had there been any diminution in the value of the property, the mortgagee would have been entitled to compensation. The affirming justices wrote the following:

> The jury found that the mortgagee's security was not impaired by the taking of the 2.87 acres of land of the mortgagor. Whether in arriving at this conclusion they recognized the claim as to benefits or decided for other reasons that the changed conditions did not impair the value of the mortgagee's security is conjectural. If

8

<u>the jury, after carefully viewing the premises and hearing the testimony, became satisfied that the value of the security in dollars and cent remained equal to what it was before, the mortgagee is in no respects injured</u>, and the jury would not be warranted in awarding damages or compensation under such circumstances.

<u>Id.</u> at 99 (emphasis added). Those voting to reverse agreed that diminution in value entitled the mortgagee to compensation, stressing that courts may not deprive a lienor of the full value of its collateral:

> <u>Every mortgagee has a right to have all the property covered by his mortgage brought to sale for the satisfaction of his debt.</u> The courts cannot appraise the property, and say to the mortgagee: 'You may have so much, which, in our judgment, is enough to satisfy you.'

<u>Id.</u> at 99 (quoting <u>Long v. Kaiser</u>, 46 N.W. 19, 20 (Mich. 1890)) (emphasis added). Notably, neither group of justices even hinted that the compensation to the mortgagee should have been limited or denied if there had been sufficient remaining value in the untaken portion of the property or other collateral through which the mortgagee would be secured.

A later case confirms that the just compensation award should endeavor to protect the entirety of lienor's security interest to the extent possible. In <u>In re Dillman</u>, 267 N.W. 623, 625 (Mich. 1936), the condemnation award was shared by the land contract vendor and vendee, to the exclusion of the mortgagee. On appeal, the Michigan Supreme Court ordered that the mortgagee be allowed to participate, stressing that the mortgagee is entitled to "the benefit of all the security [it] contracts for":

> The underlying theory of the right of a mortgagee to part or all of the award is that, as the parties are powerless to prevent the taking of the property by the public and the mortgagee loses his lien upon the part taken, the award equitably stands in the place of the land taken; and, as the mortgage does not cover the award in law, it is held to operate as an equitable lien thereon. This results in two separate encumbrances, the legal mortgage lien on the remainder of the land and the equitable mortgage lien on the award.
>
> . . .

> <u>This is no more than common justice to the mortgagee, who is entitled to the benefit of all the security he contracts for.</u> . . .

<u>Id.</u> at 625 (emphasis added). Again, there is no suggestion that the mortgagee's portion of the award should depend on whether there is sufficient value in the untaken portion of the property or other collateral through which the mortgagee might be secured.

<u>State Highway v. Gibson</u>, 13 N.W.2d 617 (Mich. 1944), follows this same path. There, the court held that land contract vendors of property condemned in full were entitled to the full awards, with none going to the vendees, reasoning that the vendors shared the same status as a mortgagee. Because "his security was lessened," the vendor was entitled to the award to compensate for the loss of security. <u>Id.</u> at 619. Again, the court did not suggest that it was necessary or appropriate to determine whether the remaining value or other collateral would be sufficient to cover indebtedness.

These cases strongly suggest that Rover's argument that the IRS has suffered no loss because there is sufficient remaining value in other collateral has no basis in Michigan law.

Nor does Rover's argument conform to principles of equity, which are supposed to undergird a condemnation award. <u>Tomkins</u>, 749 N.W.2d at 725. Why should a lienor suffer any diminution in its security when the condemnor can make it whole? Why should a lienor assume the risk of future depreciation of a diminished property? Why should a lienor be put to the expense of proving the value of other property that it holds, a costly effort that would multiply the expense of condemnation proceedings? Why should this Court reward Rover by allowing it to retain the just compensation dollars that it would otherwise have to pay the IRS, when neither the property owner nor other interest holders seek to share in the award, and whose standing to do so would be questionable given that they have settled with Rover? Why should the Court reward Rover when it failed to follow the statutory mandate of a pre-taking negotiation with the IRS? There is no

reasonable response to these questions that favors Rover's position. Equity counsels that Rover's argument be rejected.[2]

This objection is also overruled.

### 3. Objection Four

Finally, Rover argues that if there is a just compensation award, it should not exceed the debt owed by Engelbert to the IRS. Obj. at 8. This is not strictly speaking an objection to the Commission's report. Nonetheless, as this Court has previously recognized, the IRS is not entitled to be paid more than it is owed. See 4/25/19 Order on Federal Tax Liens at 7 ("[O]nce it becomes necessary for the Court to fashion a judgment that awards a specific amount of the just compensation proceeds to the IRS for the 59.50 Property and the 60 Property, a mechanism will have to be developed for ensuring that the IRS is not paid more than Engelbert's outstanding liabilities. Such a mechanism may involve discovery but that is a matter than can be addressed at a later stage."). To effectuate this, the IRS must file on or before December 12, 2019 an ex parte affidavit under seal setting forth the amount of Engelbert's tax indebtedness to the IRS as of the date of the taking. The Court will reduce the award to the extent the tax lien is less than $27,400.

This objection, to the extent that it is an objection, is overruled.

---

[2] Rover also makes an argument based on practicality, i.e. the IRS will be rewarded as "last party standing," when all other claimants have resolved their differences, a process that Rover claims will impede settlements if followed in other condemnation proceedings. Obj. at 7. There is no support for this theory. Nor does it seem troubling, even if true. Condemnation proceedings often are complex, involving intersecting interests that must be accommodated or litigated in one fashion or another. Recognizing that a lienor's security interest should not be diminished to the extent feasible will not materially complicate an already complicated proceeding. It will simply recognize an equitable parameter that the parties must consider in addressing all interests impacted by a taking.

**B. IRS Objections (Dkt. 960)**

The IRS makes six objections to the R&R: (i) the Commission inappropriately considered objections not raised at the hearing; (ii) the Commission failed to follow Federal Rule of Evidence 103(a)(1); (iii) the Commission erred by relying on a 2018 order that did not concern the IRS related to arms-length negotiations; (iv) even if the 2018 arms-length order does apply, Engelbert and the IRS's negotiations were arms-length negotiations; (v) the Commission misapplied Department of Transportation v. Frankenlust Lutheran Congregation, 711 N.W.2d 453 (Mich. Ct. App. 2006); and (vi) the Commission's interpretation of Frankenlust is inconsistent with the Court's bar to discovery.

In response to the IRS' objections, Rover argues that the Commission's evidentiary rulings were procedural and, therefore, reviewed under the abuse of discretion standard. Resp. at 2 (Dkt. 961). "An abuse of discretion exists when the court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." First Tech. Safety Sys., Inc. v. Depinet, 11 F.3d 641, 647 (6th Cir. 1993). Rover argues that the IRS does not present any argument or evidence that the Commission's exclusion decisions constituted an abuse of discretion. Resp. at 2. Rover has the better part of the argument.

**1. Objections One and Two**

In its first two objections, the IRS argues that because Rover did not object to the certain evidence at the just compensation hearing, Rover has waived its admissibility under Federal Rule of Evidence 103. Rule 103 sets forth the principles of harmless error and plain error, and the mechanics for making objections. See Fed. R. Evid. 103 advisory committee's note to 1972 proposed rules. "It is well established that a party who fails to make a timely objection to the admission of evidence is precluded from raising the issue for the first time on appeal." Bldg. Serv.

Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway, 46 F.3d 1392, 1396 (6th Cir. 1995). The Rule is also one of efficiency. See Johnston v. Reily, 160 F.2d 249, 250 (D.C. Cir. 1947) ("Enormous confusion and interminable delay would result if counsel were permitted to appeal upon points not presented to the court below. Almost every case would in effect be tried twice under any such practice."). But these concerns are not raised in this case.

The Commission made clear that in order to conduct the just compensation hearings in an expeditious manner, it would freely admit evidence, subject to the parties' objections. Hr'g Tr. 16-17, June 27, 2019 (Dkt. 973-3). The weight and admissibility of the evidence would be determined, if necessary, during deliberations. See id. at 17, 97-99, 111 (instructing the parties that they would be given a chance to address matters such as admissibility in post-hearing briefing). Although this approach would cause problems in a jury trial, where the fact-finders would be exposed to inadmissible evidence, the Commission must decide questions of both law and fact. In determining admissibility, the Commission is not bound by evidence rules, see Fed. R. Evid. 104(a), and postponing ruling on a complicated admissibility issue does not implicate any of the concerns raised in Rule 103. The evidentiary rulings have all been preserved for appeal and there is no threat of this matter being tried a second time. The matter will be reviewed for any abuse of discretion.[3]

The IRS's first two objections are overruled.

---

[3] The IRS also argues that it was not allowed to respond to Rover's post-hearing brief, because the parties submitted their post-hearing brief simultaneously. Objs. at 4. However, the IRS has responded to Rover's arguments in its objections. Therefore, the IRS has been afforded an opportunity to make its arguments.

**2. Objections Three, Four, and Five**

The IRS argues that the Commission erred by relying on the Court's July 6, 2018 opinion (Dkt. 868) that does not concern the IRS, and relates to arms-length negotiations; and even if the 2018 arms-length opinion does apply, the IRS argues that Engelbert and the IRS's negotiations were arms-length negotiations. Objs. 6-13. Additionally, the IRS argues that the Commission misapplied Department of Transportation v. Frankenlust Lutheran Congregation, 711 N.W.2d 453 (Mich. Ct. App. 2006). Objs. at 13. The IRS is wrong on all counts.

The Commission did not abuse its discretion by relying on the Court's July 6, 2018 Opinion. Indeed, the Commission Instructions required the Chairperson to ensure that the Court's prior rulings were followed. See Commission Instructions ¶ D (Dkt. 947).

In the July 6, 2018 Opinion, the Court said the following:

> "The traditional rule is that '[t]he price paid by a condemnor in settlement of condemnation proceedings or in anticipation of such proceedings is inadmissible to establish value of comparable land as such payments are in the nature of compromise to avoid the expense and uncertainty of litigation and are not fair indications of market value.'" Rockies Express Pipeline, LLC v. 4.895 Acres of Land, More or Less, In Butler Cty., Ohio, No. 2:08-CV-554, 2009 WL 1163054, at *1 (S.D. Ohio Apr. 28, 2009) (quoting United States v. 10.48 Acres of Land, 621 F.2d 338, 339 (9th Cir. 1980)). However, courts have held that such evidence may be admitted where the proponent of the evidence makes a preliminary showing that the purchase was actually voluntary. Id. There is also an exception if "the fact that parties were condemnor and condemnee either was not known or had no influence because the sale was not in connection with, or in anticipation of condemnation proceedings." Id. (quoting Transwestern Pipeline Co. v. O'Brien, 418 F.2d 15, 19 (5th Cir. 1969)). Defendants have also offered a ruling by the Southern District of Ohio in a suit concerning the Rover pipeline, in which the court allowed for the admission of prior easement purchases where the proponent lays a foundation establishing that the transaction was voluntary and conducted at arms-length. See 2/26/2018 Order, Ex. A to Defs. Resp. (Dkt. 834-1).
>
> The Court believes this approach, rather than a wholesale exclusion of all prior easement purchases, as argued by Rover, is appropriate. As a result, evidence of these purchases will only be admitted if the proponent lays an adequate foundation establishing that the transaction was voluntary, including that the transaction was

> conducted at arms-length, i.e., not influenced by the fact of the impending condemnation. See Rockies Express, 2009 WL 1163054, at *1.

7/6/2018 Op. & Order at 32-33.

Although the IRS did not have an opportunity to be heard on the issues addressed in the July 6, 2018 Opinion, it has had an opportunity to do so in its objections. In its objections, the IRS argues that the opinion excluded evidence of settlement discussions between Rover and Defendants, which is unlike the IRS evidence of settlement discussions between Rover and non-party Engelbert. Obj. at 7. This is a distinction without a difference. Rover applied for a Federal Energy Regulatory Commission ("FERC") Certificate of Public Convenience and Necessity in February 2015. See FERC Certificate, Ex. B to Compl. (Dkt. 1-11). Shortly thereafter, Rover approached Engelbert to begin settlement discussions. See R&R at 4-6. Engelbert testified that he had been through this process before and that he understood the end result would be condemnation proceedings. See R&R at 10. Therefore, the discussions occurred in anticipation of condemnation proceedings, and the Court's July 6, 2018 Opinion addresses such situations. The only question is whether the IRS laid an adequate foundation that the settlement discussions were voluntary.

To that point, the IRS argues that the discussions were voluntary, arms-length negotiations. However, that position cannot be reconciled with Engelbert's testimony. Rover's pipeline is the fourth pipeline to cross Engelbert's land. R&R at 10. Based on his previous experience, Engelbert testified that he knew there was nothing that he could do to stop Rover's pipeline from running through his property. Id. at 10. To avoid having his property condemned, Engelbert settled with

15

Rover. Id. This was not, as the IRS argues, a voluntary, arms-length transaction involving "a willing buyer and a willing seller for an easement on the Engelbert property." Obj. at 7.[4]

Finally, the Commission did not misapply Frankenlust when it excluded the IRS's just compensation evidence. In Frankenlust, the Michigan Department of Transportation ("MDOT") sought to condemn property to widen a section of highway. 711 N.W.2d at 455. The MDOT hired a real estate appraiser to determine the fair market value of the property and made a written offer to purchase the property for the appraised amount. Id. at 456. The property owner rejected the offer. Id. At the just compensation hearing, the MDOT provided an appraisal from a new real estate appraiser who valued the property significantly lower than the original appraisal. Id. The land owner sought to exclude the second, lower appraisal, and the MDOT sought to exclude the original appraisal and its written pre-take offers. The Frankenlust panel concluded that both appraisals and the pre-take offers were admissible to assist in determining the fair market value of the property, and that such a result is consistent "with the liberal manner in which evidence in condemnation cases has traditionally been received in Michigan." Id. at 462.

Here, however, the Commission noted that the contested exhibits were not the written pre-take offers described in Frankenlust. Instead, as noted above, the contested exhibits reflected a settlement amount reached between Rover and Engelbert in order to avoid anticipated condemnation proceedings. The Commission's exclusion of the content of the contested exhibits, and Engelbert's testimony based on those exhibits, is consistent with Frankenlust "because they are not statements of fair market value or just compensation as determined by Rover and because

---

[4] The IRS also argues that its evidence is not the price paid by other condemning authorities prior to this litigation. Obj. at 7. This argument is not developed further, and it is not clear why this is a distinction that makes a difference.

they were executed under the threat of condemnation." R&R at 10. Therefore, the Commission applied Frankenlust correctly.

The Commission did not apply the wrong legal standard, misapply the correct legal standard, or rely on clearly erroneous findings of fact. See First Tech., 11 F.3d at 647. Therefore, the Commission did not abuse its discretion in making its evidentiary rulings.

The IRS's third, fourth, and fifth objections are overruled.

### 3. Objection Six

In its sixth objection, the IRS argues that it was prevented it from conducting the discovery needed to obtain Rover's good faith written offers, which may have been admissible under Frankenlust. Objs. at 17. The IRS objection actually rests on a claim that the Court improperly barred the IRS from necessary discovery—not that the Commission erred. In any event, the IRS was not improperly barred from this discovery; in fact, it never pursued this matter explicitly with the Court. The primary focus of the IRS's brief on the issue of pre-hearing discovery was aimed at discovery regarding challenges to the IRS liens under 26 U.S.C. § 6323. See IRS Br. Re Federal Tax Liens at 1-6 (Dkt. 935). At the end of its brief, the IRS made the following cursory argument:

> The focus of the litigation is on the appropriate amount of just compensation for the easements. The amount that Rover paid to Engelbert for the properties at issue is highly relevant to the determination of just compensation for the MI-WA-060.000 property, and therefore the United States seeks a response to Interrogatory No. 2 (which seeks information regarding the sale of easements from Engelbert to Rover).

Id. at 5 (emphasis added).

As discussed above, the amount Rover paid to Engelbert is not relevant to this just compensation award. Rover's written offers to Engelbert, on the other hand, may have been

admissible. The IRS asserts that it sought this information in Interrogatory 2(d) to Rover.[5] Rover answered the Interrogatory by representing that "Information responsive to [Interrogatory 2(d)] is contained within the expert reports/appraisals being produced concurrently with these Responses." See Objs. at 18-19. If the IRS was not satisfied with Rover's response, it could have moved to compel Rover to turn over the written offers, or brought the issue to the Court's attention in its briefing on federal tax liens. It did neither. In failing to pursue any inadequacy in Rover's response, the IRS has not preserved any objection that it was barred from seeking necessary discovery. See Butler v. Pettigrew, 409 F.2d 1205, 1207 (7th Cir. 1969) (finding that where the plaintiffs did not raise the insufficiency of the defendants' discovery responses until after trial, the plaintiffs waived their right to have the issue reviewed on appeal).

Therefore, the IRS's sixth objection is overruled.

## IV.    CONCLUSION

For the above reasons, Rover's objections (Dkt. 958) and the IRS's objections (Dkt. 960) are overruled. The Court adopts the Commission's R&R (Dkt. 956). The IRS is entitled up to $27,400 in just compensation to be applied to Engelbert's outstanding tax liability. By December 12, 2019, the IRS must file ex parte and under seal an affidavit regarding Engelbert's outstanding tax liabilities as of the date of Rover's taking (March 10, 2017). After review of the IRS's affidavit,

---

[5] INTERROGATORY 2: Identify all properties owned by Engelbert that were the subject of any settlement discussions and/or settlement between Engelbert and Rover, and for each property, identify:
. . .
d. the position of Rover regarding the valuation of the easement.

18

the Court will issue a separate order setting forth the amount Rover owes to the IRS for just compensation.

SO ORDERED.

Dated: December 4, 2019  
       Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 4, 2019.

s/Amanda Chubb  
Case Manager